UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.  1:19-cv-21551

EUCLID FISH COMPANY.,

    Plaintiff,

vs.

Mowi ASA (fka Marine Harvest ASA), Marine Harvest USA, LLC, Marine Harvest Canada, Inc., Ducktrap River of Maine LLC, Grieg Seafood ASA, Grieg Seafood BC Ltd., Bremnes Seashore AS, Ocean Quality AS, Ocean Quality North America Inc., Ocean Quality USA Inc., Ocean Quality Premium Brands, Inc., SalMar ASA, Leroy Seafood Group ASA, Leroy Seafood USA Inc., and Scottish Sea Farms Ltd.,

    Defendant.

_____/

**PLAINTIFF'S MOTION FOR APPROVAL OF PLAN FOR
ALTERNATIVE SERVICE OF PROCESS ON NORWEGIAN DEFENDANTS
AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff Euclid Fish Company, pursuant to Federal Rule of Civil Procedure 4(e) and 4(f)(3), requests entry of an Order authorizing alternative service of process on six Norwegian defendants, Mowi ASA ("Mowi"), Grieg Seafood ASA ("Grieg"), Bremnes Seashore AS ("Bremnes"), Ocean Quality AS ("OQ"), SalMar ASA ("SalMar") and Leroy Seafood Group ASA ("Leroy") (collectively, the "Norwegian Defendants") pursuant to the "Service Plan" discussed below.

    **I.**    **Introduction**

This civil antitrust action arises from the alleged unlawful coordination of the prices charged to direct purchasers of farm-raised salmon and salmon products derived therefrom (such

as salmon fillets or smoked salmon) that were sold directly by multiple defendants. (DE # 1 at 1). According to the European Commission, Defendants are "participat[ing in] or have participated in anti-competitive agreements and/or concerted practices related to different ways of price coordination in order to sustain and possibly increase the prices for Norwegian salmon." (*Id*. at 2). The complaint names 15 defendants; five U.S. companies, three Canadian companies, one United Kingdom company, and the six Norwegian Defendants.[1] (*Id*. at 3-9). As an antitrust action, this case falls under the purview of Section 12 of the Clayton Act, which authorizes worldwide service. 15 U.S.C. § 22.

## II. Domestic Service on Norwegian Entities is Warranted and Permissible

This motion addresses service of process on the Norwegian Defendants. Norway is a signatory to The Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention"). Norway, however, has objected to the more liberal Section 10 of the Hague Convention, under which section Plaintiff intends to serve the Canadian and United Kingdom defendants via direct service on those defendants in Canada and the United Kingdom. However, service under the Hague Convention in Norway, which must proceed through Norway's Central Authority, will take too long for the speedy and inexpensive determination of this case. The Service Plan will fulfill the mandate of FRCP 1 "to secure the just, speedy, and inexpensive determination of every action and proceeding." *See, e.g. Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for S. Dist.*, 482 U.S. 522, 542-3 (1987) ("A rule of first resort [to the Hague Evidence Convention] in all cases would therefore be

---

[1] Plaintiff has already served four of the U.S. defendants; Marine Harvest USA, LLC (Florida), Ocean Quality Premium Brands, Inc. (Delaware), Ocean Quality USA, Inc. (Delaware), and Mowi Ducktrap, LLC (Maine). The only U.S. defendant not yet served is Leroy Seafood USA, Inc. (North Carolina), which is anticipated to be served in coming days.

inconsistent with the overriding interest in the 'just, speedy, and inexpensive determination' of litigation in our courts") (citing FRCP 1); *Marks v. Alfa Grp.*, 615 F. Supp. 2d 375, 379 (E.D. Pa. 2009) (authorizing alternative service under FRCP 4(f)(3) and citing the policy of FRCP 1).

Service in Norway via the Hague Convention will result in extensive and unnecessary delay and expense. First, it will require translation of the summonses, cover sheet and complaint. The complaint alone is 44 pages and the cost of translation will exceed $1,000. *See* Declaration of Daniel Tropin attached as Ex. A.

Once translated, the documents will have to be transmitted to Norway's Central Authority, which will then serve them. This will take months. In Norway, "[t]he average time from receipt at the Central Authority to execution of the request varies between 3-5 months." *See* https://www.hcch.net/en/states/authorities/details3/?aid=246, Tropin Decl. Ex. 12. The Hague Law Blog gives an even longer estimate of five to six months. *See* https://www.haguelawblog.com/2017/04/serve-process-norway/, Tropin Decl. Ex. 13. The federal rules of civil procedure give courts the discretion in situations precisely like this to approve reasonable alternatives to the costly, time consuming and potentially fruitless procedure of attempting service through the Hague Convention. *See Cincinnati Ins. Co. v. Belkin Corp.*, 2008 WL 60402, at *1 (S.D. Ala. Jan. 2, 2008) ("service of process . . . pursuant to the Hague Convention will take between four and six months").

This extended wait is unnecessary in this case because the Norwegian Defendants are all major companies with strong U.S. connections, including wholly-owned subsidiaries in several cases with business emails listed on their websites. If approved, Plaintiff plans to serve each of the Norwegian Defendants except SalMar[2] in two separate ways to satisfy the Constitutional notice

---

[2] SalMar does not have an identifiable U.S. subsidiary or office. Nonetheless, it holds itself out as

3

requirement. This Service Plan will also not violate any strictures of international law, the federal rules, or any other applicable law.

### III. The Service Plan is Permissible Under the Federal Rules of Procedure and Courts Have Authorized Such Plans in Similar Circumstances

Service of process *outside* the United States is governed by FRCP 4(f), which provides that such service may be made by means that include international agreements such as the Hague Convention or, under FRCP 4(f)(3), "by other means not prohibited by international agreement, as the court orders." *See Brookshire Bros., Ltd. v. Chiquita Brands Inter., Inc.*, No. 05-CIV-21962, 2007 U.S. Dist. LEXIS 39495, 2007 WL 1577771, at * 2 (S.D. Fla. May 31, 2007) (citations omitted) (finding that Rule 4(f)(3) includes no qualifiers or limitations indicating its availability only after attempting service of process by other means). "Rule 4(f)(3), Fed. R. Civ. P., allows a district court to order an alternate method for service to be effected upon foreign defendants, provided that it is not prohibited by international agreement, and is reasonably calculated to give notice to the defendants." *Abercrombie & Fitch Trading Co. v. 2cheapbuy.com*, No. 14-60250-CIV-ROSENBAUM, 2014 U.S. Dist. LEXIS 188877, at *3-4 (S.D. Fla. Mar. 5, 2014).

According to the Ninth Circuit, the situs of many antitrust cases involving foreign defendants:

> As obvious from its plain language, service under Rule 4(f)(3) must be (1) directed by the court; and (2) not prohibited by international agreement. No other limitations are evident from the text. In fact, as long as court-directed and not prohibited by an international agreement, service of process ordered under Rule 4(f)(3) may be accomplished in contravention of the laws of the foreign country.

*Rio Properties, Inc. v. Rio Intern. Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002).[3]

---

selling salmon in the United States. Therefore, service upon it via email at its designated email address, salmar@salmar.no, is sufficient notice. *See* https://www.salmar.no/en/contact-us/, Tropin Decl. Ex. 8.

[3] "Federal Rule of Civil Procedure 4(h)(2) authorizes service of process on a foreign business entity

4

The Hague Convention Outline prepared by the Hague Conference on Private International Law explains that the Hague Convention is an optional or "non-mandatory" method of effecting service on foreign defendants. *See* Tropin Decl., Ex. 11. In fact, the international agreements set forth in the Hague Convention *only* come into play if the local law of the forum where the civil action is pending requires that service of process to a foreign defendant physically take place within a foreign country. *Id*. ("the law of the forum State determines whether or not a document has to be transmitted abroad for service in the other State."). Florida's rules of civil procedure do not have any such requirement. Accordingly, the Hague Convention does not prohibit service of the Norwegian Defendants through other means. *See LDK Solar Securities Litg.*, 2008 WL 2415186, *3 (N.D. Cal. June 12, 2008) ("Plaintiffs are therefore correct that nothing in the Convention bars the requested means of service."); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2008 WL 4104341 (N.D. Cal. Sept. 3, 2008) ("The Hague Convention therefore does not prohibit service on Defendants under Rule 4(f)(3).").

Courts have rejected the argument that plaintiffs must use the other methods of overseas service authorized by FRCP 4(f), such as the Hague Convention, before asking a court to authorize service by "other means." These subsections are not mutually exclusive and "there is no indication" they "are meant to be read as a hierarchy." *TracFone Wireless, Inc. v. Bitton*, 278 F.R.D. 687, 692 (S.D. Fla. 2012); *see also Atlas One Fin. Group, LLC v. Alarcon*, 12-CV-23400, 2014 WL 12571403, at *4 (S.D. Fla. Feb. 28, 2014) (FRCP 4(f)(3) "is not considered as a last resort or as extraordinary relief."); *Rio Props.*, 284 F.3d at 1015. In *Rio Props.*, the court explained:

> We find no support for [the defendant's] position. No such requirement is found in the Rule's text, implied by its structure, or even hinted at in the advisory committee

---

in the manner prescribed by Rule 4(f) for individuals." *Rio Properties*, 284 F.3d at 1014.

> notes.  By all indications, court-directed service under Rule 4(f)(3) is as favored as service available under Rule 4(f)(1) or Rule 4(f)(2).  Indeed, Rule 4(f)(3) is one of three separately numbered subsections in Rule 4(f), and each subsection is separated from the one previous merely by the simple conjunction "or."  Rule 4(f)(3) is not subsumed within or in any way dominated by Rule 4(f)'s other subsections; it stands independently, on equal footing. Moreover, no language in Rules 4(f)(1) or 4(f)(2) indicates their primacy, and certainly Rule 4(f)(3) includes no qualifiers or limitations which indicate its availability only after attempting service of process by other means.

*Id.* (footnote and citations omitted); *see also Bank Julius Baer & Co. Ltd. v. Wikileaks*, 2008 WL 413737, at *2 (N.D.Cal. Feb. 13, 2008) ("a plaintiff is not first required to attempt service under Rule 4(f)(1) or Rule 4(f)(2)" before seeking court approval to serve under rule 4(f)(3)).

Any "method of service crafted by the district court [pursuant to FRCP 4(f)(3)] must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"  *Rio Props.,* 284 F.3d at 1016-17 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)); *see also Nanya Technology Corp. v. Fujitsu Ltd.*, 2007 WL 269087, *5 (D. Guam Jan. 25, 2007) ("[w]e should not lose sight of what service of process is about, it is about giving a party notice of the pendency of an action and the opportunity to respond"); *Seiko Epson Corp. v. Glory South Software Manufacturing, Inc.*, 2007 WL 219944, at *2 (D. Or. Jan. 24, 2007) (noting that the federal rule "stresses actual notice, rather than strict formalism").

Service under FRCP 4(f)(3) also "must comport with constitutional notions of due process."  *U.S. Commodity Futures Trading Commc'n v. Aliaga*, 272 F.R.D. 617, 620 (S.D. Fla. 2011).  It must provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  While notice must only be "reasonably calculated to give notice to the defendants," Plaintiff's Service Plan for

the Norwegian Defendants goes well beyond that bar, consisting of two parts: service on email addresses created by the Norwegian Defendants themselves, as well as service on U.S. subsidiary offices (except SalMar, which has no U.S. office or subsidiary).

### A. Email Service is Permissible and Practical

Email service is permissible and practical and is not violative of international law. *Stat Med. Devices, Inc. v. HTL-Strefa, Inc.*, No. 15-20590-CIV 2015 U.S. Dist. LEXIS 122000, at *6-12 (S.D. Fla. Sep. 14, 2015) is instructive as to why email service is permissible here. In that case, the plaintiff sought permission under rule 4(f)(3) for alternative service where the defendant was located in a jurisdiction (Poland) that was a signatory to the Hague Convention, but objected to Section 10. The plaintiff argued that alternative service was warranted on the ground that "properly serving the Foreign Defendant [] could require substantial additional time if international agreements and protocol are strictly followed... These methods ... would serve to expedite the service of process on the Foreign Defendant ... so that this case may proceed on the merits without sacrificing adequate notice or due process." *Id*. at *6-7. The district court agreed, found that email service to a defendant in Poland was not prohibited by the international agreement and accepted plaintiff's argument that it is widely used within the Eleventh Circuit and comports with due process. *Id*. at *7 (citing *Lexmark Int'l, Inc. v. Ink Techs Printer Supplies*, LLC, 295 F.R.D. 259, 261 (S.D. Ohio 2013)) (citations omitted); *see also e.g. Chanel, Inc. v. PVBAG.com*, No. 13-23896-CIV-ALTONAGA/Simonton, 2013 U.S. Dist. LEXIS 196159, at *5 (S.D. Fla. Nov. 6, 2013); *Fru Veg Mktg. v. Vegfruitworld Corp*., 896 F. Supp. 2d 1175, 1182-83 (S.D. Fla. 2012); *TracFone Wireless,* 278 F.R.D. at 694; *U.S. Commodity Futures Trading Comm'n v. Aliaga*, 272 F.R.D. 617, 621 (S.D. Fla. 2011); *Prewitt Enter., Inc. v. Organization of Petroleum Exporting Countries*, 353

F.3d 916, 921, 927 (11th Cir. 2003).[4]

Each of the Norwegian Defendants is a major international business that conducts substantial business by email and maintains well-kept webpages in the English language. *See e.g.* Leroy - post@leroyseafood.com (https://www.leroyseafood.com/en/contact/our-offices/); Bremnes - bremnes@seashore.no (https://www.seashore.no/en/); OQ - jo@oceanquality.com (https://oceanquality.com/contact/); Mowi - norway@mowi.com (https://mowi.com/contact/); Grieg - info@griegseafood.com (https://www.griegseafood.no/en/); SalMar - salmar@salmar.no (https://www.salmar.no/en/contact-us/).

        **B.    Subsidiary/Local Office Service is Permissible and Plaintiff Seeks Court Permission in an Abundance of Caution**

Service on a subsidiary of a foreign corporation is often permissible as an independent means of accomplishing service, if that subsidiary is an agent. *See, e.g. CRT*, 2008 WL 4104341 (service of foreign defendant through domestic subsidiary and counsel); *LDK Solar*, 2008 WL 2415186 (authorizing service on local subsidiary); *Volkswagenwerk AG v. Schlunk*, 486 U.S. 694, 707-08 (1988*)* (Hague Convention need not be used to serve process on a foreign corporation when service can be made on a U.S. subsidiary with a sufficiently close relationship to overseas parent); *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 513-15 (D.N.J. 2008) (service upon Volkswagen of America ("VWoA") was effective upon Volkswagen AG because agency relationship existed but service upon VWoA was not effective against Audi AG and Volkswagen De Mexico, S.A. de C.V. because neither of those entities had an agency relationship with VWoA); *Lamb v. Volkswagenwerk AG*, 104 F.R.D. 95, 97-101 (S.D. Fla. 1985) (control exercised

---

[4] *See also, e.g. Bank Julius Baer,* 2008 WL 413737 at *2 (approving email service pursuant to Rule 4(f)(3)); *Jenkins v. Pooke*, 2009 WL 412987 (N.D. Cal. Feb. 17, 2009) (email service); *Williams-Sonoma Inc. v. Friendfinder Inc.*, 2007 WL 1140639 (N.D. Cal. April 17, 2007) (email service permitted where foreign defendants refused to accept service).

8

by German parent corporation over wholly owned U.S. subsidiary was sufficient basis for finding that parent transacted business in Florida or that subsidiary acted as parent's agent; objection of Federal Republic of Germany to direct mail service pursuant to Hague Service Convention inapplicable when service accomplished upon alter ego within United States); *Zisman v. Sieger*, 106 F.R.D. 194, 199-200 (N.D. Ill. 1985) (service accomplished within United States on local agent of foreign defendant renders Hague Service Convention inapplicable).

> Florida's long-arm statute likewise provides for service on a foreign corporation:
>
> > (2) If a foreign corporation has a resident agent or officer in the state, process shall be served on the resident agent or officer.
> >
> > (3) Any person, firm, or corporation which sells, consigns, or leases by any means whatsoever tangible or intangible personal property, through brokers, jobbers, wholesalers, or distributors to any person, firm, or corporation in this state is conclusively presumed to be both engaged in substantial and not isolated activities within this state and operating, conducting, engaging in, or carrying on a business or business venture in this state.

Fla. Stat. § 48.181. Further, sections 48.181(3) and 48.181(1) provide that if a nonresident defendant does business in the forum through "brokers, jobbers, wholesalers, or distributors," service through such an entity is proper as service on an agent of process." *See Glen v. Club Mediterranee, S.A.*, 359 F. Supp. 2d 1352, 1356 (S.D. Fla. 2005) (finding plaintiffs failed to allege sufficient facts to show agency.). Fla. Stat. § 48.081 states in pertinent part:

> (1) Process against any private corporation, domestic or **foreign**, may be served:
>
> > (a) On the president or vice president, or head of the corporation;
> > (b) In the absence of any person described in paragraph (a), on the cashier, treasurer, secretary, or **general manager**;
> > (c) In the absence of any person described in paragraph (a) or paragraph (b), on any director; or
> > (d) In the absence of any person described in paragraph (a), paragraph (b), or paragraph (c), on any officer **or business agent** residing in the state.

>   (2) If a foreign corporation has none of the foregoing officers or agents in this state, **service may be made on any agent transacting business for it in this state**.

*Id*.  (emphasis added).  *See also* FRCP 4(e)(1) (service may be accomplished "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made").  Thus, service on a subsidiary or local office need not be "alternative service" under FRCP 4(f)(3); rather, it qualifies as standard service of process under FRCP 4(e).  Nonetheless, Plaintiff includes it as part of the Service Plan. *See, e.g. LDK Solar,* 2008 U.S. Dist. LEXIS 90702, at *3 (authorizing service of certain foreign defendants via service upon California office of corporation in which they served as officers pursuant to 4(f)(3), notwithstanding that Hague Convention service had not yet been attempted).

Based on the foregoing rules and authorities, Plaintiff seeks authorization to serve the following Norwegian Defendants through their domestic agents:

### 1. Mowi ASA (fka Marine Harvest ASA)

Mowi is a Norwegian seafood company with operations in several countries around the world.  Mowi has at least two-wholly owned subsidiaries in the United States, Marine Harvest USA in Florida and Ducktrap in Maine.  Mowi's website advertises that "Mowi USA is located in sunny Florida where salmon are flown in daily from Canada, Chile, Norway and other fish farms around the world."  *See* Tropin Decl., Ex. 1.  Mowi's website also provides a postal address in Medley, Florida.  *Id*.  News articles have described the Miami-based entity as the "US downstream division" of Mowi ASA.[5]  Tropin Decl., Ex. 2.  Finally, Marine Harvest ASA recently changed its name to Mowi ASA. In lockstep, Marine Harvest USA, LLC filed a change of name to change its

---

[5] https://www.undercurrentnews.com/2018/01/26/marine-harvest-to-more-than-double-miami-production-with-new-plant/, Tropin Decl. Ex. 2.

name to Mowi USA, LLC.  Tropin Decl., Ex. 3.  The Mowi website also lists three high-level employees as contacts in the United States:

- Robert Clark, Sales Director Consumer Products. Robert Clark's Linkedin page lists him as the "Sales Directors, Consumer Products US at Marine Harvest Group."
- Diana Dumet, Marketing Director.
- Greg Dumais, Sale Manager (Ducktrap). Ducktrap is another Mowi subsidiary based in Maine.

Tropin Decl. at ¶¶ 4-9.

Further, the 2018 Mowi Integrated Annual Report, hosted on its website, boasts of the extent of their Miami ties: "In March, Mowi moved its operations to a new plant twice the existing site."[6]  Clearly, Mowi holds the Miami headquarters out as a part of Mowi ASA.

Thus, Marine Harvest USA is a wholly-owned subsidiary of Mowi and a mere "downstream division" of Mowi, and when Mowi recently changed its name, Marine Harvest USA followed suit.  Therefore, service on Mowi via Marine Harvest USA is constitutionally sufficient and permissible.

### 2.  OQ

OQ is a foreign corporation engaged in the salmon distribution business, with its headquarters in Bergen, Norway.  Among the entities it operates through is OQ USA, a Delaware corporation headquartered in Dallas, Texas.  That same Dallas office is listed as a "Sales Office" of OQ on its website, staffed by a General Manager, Dennis Bryant.  *See* Tropin Decl., Ex. 4.  Dennis Bryant is likewise the General Manager listed as the sales manager of OQ USA.  Therefore,

---

[6] Mowi 2018 Annual Report at p. 140 https://issuu.com/hg-9/docs/mowi_annual_report_2018_4e0dacb83168e4?e=19530043/68703955.

service upon Dennis Bryant in his capacity as General Manager of OQ and OQ USA is sufficient to serve OQ.

### 3. Grieg and Bremnes

Service upon OQ at its Dallas sales office is also sufficient to accomplish service on Grieg and Bremnes, each of which are Norwegian companies, either by itself or as a component of the Service Plan.  As noted on the front page of OQ's website, "Ocean Quality is the sales organisation [sic] of Grieg Seafood and Bremnes Seashore."  *See* https://oceanquality.com/?pageID=28.  Thus, OQ holds itself out as a subdivision and an agent of Grieg and Bremnes.  Bremnes reciprocates, stating on its web page that OQ is "the sales organization of Grieg Seafood and Bremnes Seashore[.]"  *See* Tropin Decl. Ex. 7.  Grieg's webpage likewise confirms on its "Sales" page that "Ocean Quality AS is the sales organisation of Grieg Seafood and Bremnes Seashore (60% owned by Grieg Seafood ASA and 40% owned by Bremnes Fryseri AS)."  *See* Tropin Decl. Ex. 6.  Grieg then lists contact information for OQ for those that wish to buy Grieg products.  *Id*.  Further, Grieg owns 60% of OQ and Bremnes owns 40% of OQ, demonstrating their effective control over OQ.  *See* https://oceanquality.com/about-us/.  Clearly, Grieg and Bremnes use OQ to sell and distribute its product around the globe, including in the United States.

In sum, OQ is the business agent of both Bremnes and Grieg and it may properly receive service of the summons and complaint on behalf of both companies.

### 4. Leroy

Leroy, while based in Norway, has a sales office in the United States.  Leroy USA, a North Carolina corporation with its principal place of business in Chapel Hill, is a distribution subsidiary of Leroy which exists to distribute Leroy products in the United States and thus may properly receive service of the summons and complaint on behalf of Leroy. *See* Tropin Decl. Ex. 9.

### IV. <u>Conclusion</u>

For the reasons set forth above, Plaintiff respectfully requests that the Court enter an Order authorizing alternative service of process on the six Norwegian Defendants pursuant to the two-part Service Plan.

Respectfully submitted,

By: */s/ Robert C. Gilbert*
Robert C. Gilbert, FBN 561861
Daniel E. Tropin, FBN 100424
**KOPELOWITZ OSTROW FERGUSON
WEISELBERG GILBERT**
2800 Ponce de Leon Boulevard, Suite 1100
Coral Gables, FL 33134
Tel: 305/384-7269
*gilbert@kolawyers.com*
*tropin@kolawyers.com*

Michael P. Lehmann (*pro hac vice pending*)
Christopher L. Lebsock (*pro hac vice pending*)
**HAUSFELD LLP**
600 Montgomery St. #3200
San Francisco, CA 94111
Tel: (415) 633-1908
*mlehmann@hausfeld.com*
*clebsock@hausfeld.com*

Reena A. Gambhir (*pro hac vice pending*)
**HAUSFELD LLP**
1700 K Street, N.W.
Suite 650
Washington D.C. 20006
Tel: (202) 540-7200
*rgambhir@hausfeld.com*


*Counsel for Plaintiff and the Proposed Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of May 2019, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

By: */s/ Robert C. Gilbert*
Robert C. Gilbert, FBN 561861