# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

## CASE NO. 19-CV-21551-ALTONAGA

IN RE: FARM-RAISED SALMON AND SALMON
PRODUCTS ANTITRUST LITIGATION

## PLAINTIFFS' MOTION TO COMPEL
## THE PRODUCTION OF DOCUMENTS
## IN ACCORDANCE WITH THE COURT'S ORDER

Plaintiffs respectfully seek an order, pursuant to Federal Rule of Civil Procedure 37, compelling Defendants[1] to comply with the Court's Third Scheduling Order (ECF No. 207), which required Defendants to produce to Plaintiffs, upon request, records already produced to foreign and domestic government entities.

Even though the Court's directive could not have been clearer, Defendants have refused to produce to Plaintiffs pre-existing documents already obtained by foreign governments.  In an effort to reach an agreement, Plaintiffs offered to narrow the scope of their document requests to lessen any purported burden.  Defendants still refused.

Defendants have voiced two primary objections to complying with the Court's Order, in effect seeking reconsideration of the Court's decision.  First, Defendants claim that producing the documents will be unduly burdensome, because the European Union's General Data Protection Regulation ("GDPR") will require Defendants to redact a substantial amount of personally

---

[1] Defendants are Mowi ASA; Mowi USA, LLC; Marine Harvest Canada, Inc.; Mowi Ducktrap, LLC; Grieg Seafood ASA; Grieg Seafood BC Ltd.; Ocean Quality AS; Ocean Quality North America Inc.; Ocean Quality USA Inc.; Ocean Quality Premium Brands, Inc.; SalMar ASA; Lerøy Seafood AS; and Lerøy Seafood USA Inc.

identifiable information from most, if not all, foreign documents. ████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
███████████████████████████████████████████████ Neither

objection has merit, and reconsideration of the Court's prior decision is unwarranted.

Defendants' redaction-based claim of burden rests on the mistaken assumption that the GDPR controls the discovery process in this Court. The overwhelming weight of authority, however, establishes that foreign privacy laws should not impede U.S. discovery. Redacting information from every document would be beyond disruptive to the discovery process here. It would seriously jeopardize Plaintiffs' ability to understand Defendants' documents. More importantly, it would substantially delay discovery, as redactions often must be made manually. Because it is contrary to the law and will unquestionably impede and delay discovery in this action, Defendants should not be permitted to rely on the GDPR to redact information from the documents they produce, or to justify their refusal to comply with the Court's production Order.

████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████

This Court's Order requiring Defendants to produce a discrete set of documents that they have already collected is entirely consistent with prevailing law. *See Cabrera v. Progressive Behavioral Science, Inc.*, 331 F.R.D. 185, 186 (S.D. Fla. 2019) (denying a motion to stay discovery pending a motion to dismiss because "[a] stay of discovery pending the determination of a motion to dismiss [] is the exception rather than the rule"). Defendants offer no valid reason to reconsider the Court's prior decision. Defendants objections should be overruled.

## BACKGROUND

As the Court is aware, this action arises from allegations that Defendants, the world's major farm-raised Atlantic salmon producers and distributors, unlawfully coordinated the prices charged to Plaintiffs, direct purchasers of farm-raised Atlantic salmon. (ECF No. 168, ¶ 1.) Defendants include several companies headquartered in Norway, where a substantial amount of unlawful conduct affecting prices charged to Plaintiffs in the United States occurred. (*Id.*, ¶¶ 19-76, 82-88.) The EC is investigating Defendants' alleged anticompetitive conduct and has raided and collected documents from Defendants' offices and plants in Norway. (*Id.*, ¶¶ 82-88.)

In the Joint Scheduling Report filed on April 3, 2020, the parties previewed their arguments concerning whether and the extent to which discovery should proceed during the pendency of Defendants' motion to dismiss. (ECF No. 205, ¶¶ 5-7.) Plaintiffs contended that written discovery and document production should proceed, and that at a minimum, Defendants should be required to produce documents that they had already produced to domestic and foreign government entities

relating to the conduct alleged in the complaint.  (*Id.*, ¶ 6.)  Defendants, in turn, generally argued that discovery should be stayed entirely until the Court rules on their motion to dismiss and announced their intention to file a motion to stay discovery, but they neither addressed Plaintiffs' position concerning documents already produced to government entities nor raised any of the objections upon which they now rely.  (*Id.*, ¶ 7.)

On April 6, 2020, the Court issued the Third Scheduling Order, ruling that "Records already produced by Defendants to . . . foreign and domestic government entities will be produced to Plaintiffs upon request.  All other discovery is stayed pending resolution of the forthcoming motion to dismiss."  (ECF No. 207 at 2.)  In accordance with the Court's Order, on April 9, 2020, Plaintiffs served Defendants with requests to produce documents they had already produced to domestic or foreign governmental agencies or authorities.  *See* Ex. A (Requests for Production). On April 17, 2020, counsel for Defendants contacted Plaintiffs' counsel to request a meet-and-confer call to discuss "potential objections" to Plaintiffs' requests for production.

The parties held a meet-and-confer call on April 23, 2020, during which Defendants raised the purported GDPR-redaction issue as their primary objection to producing documents already obtained by foreign entities, and also briefly mentioned t███████████████████████████████ ████████████████████████████████[2]  Plaintiffs asked numerous questions of Defendants regarding the status, nature, and volume of such foreign documents, as well as Defendants' views of the GDPR and EU law, to gain an understanding of Defendants' potential

---

[2] Defendants also indicated that they would produce to Plaintiffs documents already produced to domestic government entities, subject to the entry of a protective order, although Defendant Salmar indicated that it had not produced any documents to domestic government entities yet.  Defendants sent Plaintiffs a proposed protective order on April 29, 2020, which the parties are negotiating.  If the parties are unable to reach an agreement or if Defendants refuse to produce to Plaintiffs in a timely manner documents already produced to domestic government entities, Plaintiffs will notify the Court.

objections.   Defendants were unable or unwilling to provide answers to most of Plaintiffs' questions, but Defendants indicated that they would investigate the information Plaintiffs sought, so the parties agreed to schedule a follow-up call the next week.

The parties held their second meet-and-confer call on April 30, 2020, during which Defendants notified Plaintiffs ███████████████████████████████████ ███████████  ████████████████████████████████████████ ████████████████████████████████████████ During the call, Defendants ████████████████████████████████████ largely refused to provide Plaintiffs additional information regarding the documents already obtained by foreign government entities, aside from confirming that Defendants possessed copies or sets of such documents.  ███████ ████████████████████████████████████████████ ███████████████████████████████████████

The parties held a final meet-and-confer call on May 7, 2020.  During the call, Plaintiffs narrowed the scope of their current requests for production to *exclude* two categories of documents ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████ Defendants, however, continued to refuse to comply with the Court's Order and indicated that they would move for reconsideration or a protective order.

## **ARGUMENT**

Defendants should be compelled to comply with the Court's lawful directive to produce to Plaintiffs the pre-existing documents already obtained by foreign government entities. Defendants' claim that it would be burdensome to produce such documents rests on the flawed

premise that the GDPR requires Defendants to redact information from the documents.   As discussed below, federal courts have rejected Defendants' view of the interaction between the GDPR and federal discovery procedure.  Defendants should not be permitted to redact information from the documents, and thus there is no unique burden to producing them. ██████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████ Federal courts have routinely overruled similar objections, which ultimately rest on an impermissible attempt to supplant federal discovery rules with those of foreign jurisdictions.

## I.     The GDPR Does Not Justify Defendants' Refusal To Comply With The Court's Order.

Defendants' claim that the production of documents obtained by the EC would be burdensome rests on their assumption that the GDPR requires substantial redactions in those documents.  But that assumption is inconsistent with prevailing law.  "It is well settled that [foreign] statutes do not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that statute." *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court for the S. Dist. of Iowa*, 482 U.S. 522, 544 n.29 (1987).  Following the Supreme Court's decision in *Aérospatiale*, which held that a French statute could not block discovery and need not be "adhere[d] [to] blindly" in a U.S. Court, *id.*, federal courts employ a two-step inquiry when considering a litigant's reliance on another nation's laws to resist discovery.

First, the party resisting discovery must prove that the foreign law in fact proscribes production.  *See, e.g.*, *S.E.C. v. Gibraltar Glob. Sec., Inc.*, No. 13 Civ. 2575, 2015 WL 1514746, at *2 (S.D.N.Y. Apr. 1, 2015) (stating that "where the alleged obstacle to production is foreign law, the burden of proving what that law is and demonstrating why it impedes production falls on

6

the party resisting discovery"); *see also Finjan, Inc. v. Zscaler, Inc.*, No. 17-cv-06946, 2019 WL 618554, at *3 (N.D. Cal. Feb. 14, 2019) (stating that "[t]he party relying on foreign law has the burden of showing that such law bars production") (quoting *United States v. Vetco Inc.*, 691 F.2d 1281, 1289 (9th Cir. 1981)); *BrightEdge Techs., Inc. v. Searchmetrics, GmbH.*, No. 14–cv–01009, 2014 WL 3965062, at *2 (N.D. Cal. Aug. 12, 2014) (stating that "[i]n determining whether the documents at issue are protected from disclosure under German and European Union law, the Court notes that the party relying on foreign law has the burden of showing such law bars production of documents") (internal quotation marks omitted).

Once a litigant has established that a foreign statute precludes production, the court then performs a five-factor balancing test "to determine the weight to be given to the foreign jurisdiction's law." *Tiffany (NJ) LLC v. Qi Andrew*, 276 F.R.D. 143, 151 (S.D.N.Y. 2011). As articulated in *Aérospatiale*, courts balance "(1) the importance to the . . . litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located." 482 U.S. at 544 n.28 (internal quotation marks omitted).

Employing this five-factor test, courts routinely hold that foreign privacy laws, including the GDPR specifically, cannot impede discovery in U.S. Courts. *In re Mercedes-Benz Emissions Litig.*, No. 16-CV-881, 2020 WL 487288, at *8 (D.N.J. Jan. 30, 2020) (prohibiting defendants from redacting personally identifiable information from responsive documents based on the GDPR); *Finjan*, 2019 WL 618554, at *3 (holding that defendant's email production must be

produced without pseudonymization and rejecting defendant's reliance on GDPR); *Henry Zoch II v. Daimler, A.G.*, No. 4:17-CV-578, 2017 WL 5177959, at *6 (E.D. Tex. Nov. 8, 2017) (ordering Daimler, A.G. "to produce any and all relevant documents, in unredacted format" to plaintiff, over Daimler's objections based on the BDSG, a precursor of the GDPR); *Burrow v. Forjas Taurus S.A.*, No. 16-21606-CIV, 2017 WL 2620067, at *7 (S.D. Fla. June 16, 2017) (compelling discovery over defendant's objection that it would violate Brazilian law and reasoning that "[d]efendant was unable to show any material precedent substituting the Federal Rules with international law to conduct discovery"); *Knight Capital Partners Corp. v. Henkel Ag & Co., KGaA*, 290 F. Supp. 3d 681, 689 (E.D. Mich. 2017) (compelling discovery from German defendant over objections that it violated BDSG).

Here, the GDPR does not require Defendants to redact personally identifiable information from responsive documents before producing them to Plaintiffs, and even if it did, the *Aérospatiale* balancing test dictates that the GDPR should not be given controlling weight.

## A. The GDPR Does Not Require Defendants To Redact Information From Responsive Documents.

The GDPR recognizes a right "to the protection of personal data." Regulation (EU) 2016/679 of the European Parliament and the Council of 27 April 2016 on the Protection of Natural Persons with Regard to the Processing of Personal Data and on the Free Movement of Such Data, and Repealing Directive 95/46/EC (General Data Protection Regulation), 2016 O.J. L 119/1 (hereinafter GDPR), art. 1(2). The statute defines personal data to include "any information relating to an identified or identifiable natural person . . . in particular by reference to an identifier such as a name . . . ." GDPR, art. 4(1).

The GDPR, however, allows for disclosure that would otherwise be prohibited so long as the disclosure is "necessary for the purposes of the legitimate interests pursued by . . . a third

party." GDPR, art. 6(1)(f). This exception includes disclosure when the information to be produced "is necessary for the establishment, exercise or defense of legal claims." GDPR, art. 49(1)(e). The GDPR also provides that the disclosure shall be "limited to what is necessary in relation to the purposes for why they are processed." GDPR, art. 5(1)(c).

Here, disclosure of the personally identifiable information contained in Defendants' responsive documents—such as the names of Defendants' employees with knowledge of the facts giving rise to Plaintiffs' claims—is necessary to establish Plaintiffs' claims. If Defendants were permitted to redact the names of individuals from documents, such redactions would undoubtedly interfere with the progress of these proceedings. Replacing the names of individuals with pseudonyms, as defendants in other cases have proposed—and courts have rejected—would be unworkable, because the number of pseudonyms would be far too great to conduct any practical discovery, given the number of documents to be produced and the number of individuals employed by Defendants. In addition, the produced material's potential for leading to further discoverable material, and admissible evidence in turn, would be hampered by redactions or pseudonymization; each document would lose practically all value outside of its four corners, and Plaintiffs would not be able to adequately link documents from different productions together to build a case.

The GDPR clarifies that the amount of disclosure must be "what is necessary in relation to the purposes for why they are processed." GDPR, art. 5(1)(c). The requested disclosure here is for the purpose of adequately and efficiently conducting discovery in an action alleging significant unlawful conduct causing widespread economic harm across the globe, including within the United States, regardless of where that conduct occurred. The requested disclosure is thus tied to and necessary to advance its purpose. It therefore would not violate the GDPR for Defendants to produce to Plaintiffs documents already obtained by foreign entities without redactions.

**B.  Even If The GDPR Applies, It Must Give Way To U.S. Discovery Rules.**

The vast majority of decisions applying the Supreme Court's *Aérospatiale* five-factor test refuse to block discovery based on foreign privacy laws.  Many such decisions rest on a finding that three or four of the factors favor discovery in accordance with U.S. rules.  *See, e.g., In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-SC, 2014 WL 5462496, at *6 (N.D. Cal. Oct. 23, 2014); *In re Air Cargo Shipping Servs. Antitrust Litig.*, 278 F.R.D. 51, 54 (E.D.N.Y. 2010); As explained below, four of the five *Aérospatiale* factors favor requiring Defendants to produce documents without redactions here as well.

Defendants cannot evade the countless authorities supporting Plaintiffs' position by arguing that the GDPR is somehow different.  It is not.  Its privacy protections track those of a predecessor law, the BDSG, which numerous federal courts have specifically refused to enforce to impede U.S. discovery.  *E.g.*, *Henry Zoch II*, 2017 WL 5177959, at *6; *Knight Capital Partners Corp.*, 290 F. Supp. 3d at 689.  And in a decision just a few months ago, another federal court addressing the GDPR in particular refused to permit the defendant to redact and pseudonymize email discovery, rejecting the same arguments the Foreign Defendants advance here.  *See In re Mercedes-Benz Emissions Litig.*, 2020 WL 487288, at *8; *Finjan,* 2019 WL 618554, at *3.  The result should be no different here.

### i.    The Information Is Crucial To The Litigation.

This first factor favors production when the information sought furthers a viable legal theory.  *See Consejo*, 2010 WL 2162868, at *4 ("It is sufficient . . . that the discovery being sought furthers a viable defense theory.").  Here, there is little question that the information sought by Plaintiffs furthers a viable legal claim.  The documents already obtained by foreign government entities concern the same unlawful, anticompetitive conduct alleged in Plaintiffs' complaint.  Defendants' communications with each other, moreover, may provide key evidence demonstrating

that Defendants conspired together to set prices.  In addition, the names of employees who have knowledge of the facts underlying Plaintiffs' claims, as well as the names of individuals mentioned in the discovery materials, are critical to the discovery process; Plaintiffs will not be able to connect the pseudonymized individuals to their appearances in other discoverable materials where their real names are used.  Accordingly, the first factor favors disclosure.

### ii.     The Request Is Specific.

Plaintiffs have requested a specific, discrete set of documents.  The documents have been requested precisely because they relate to Plaintiffs' claims.  As a result, the requested documents—and the names of individuals mentioned in the documents—will be specific and limited to the subject matter of the litigation and Plaintiffs' claims.  This is not a situation in which sensitive, personal information unrelated to the case will be produced.  This second factor therefore favors full disclosure.

### iii.    The Information Originated Outside The United States.

This factor, which considers whether the information originated outside the U.S., is the only one that even arguably favors Defendants.  *See Burrow v. Forjas Taurus S.A.*, No. 16-21606-Civ-TORRES, 2017 WL 2620067, at *6 (S.D. Fla. June 16, 2017) (holding that since the information resides in Brazil "[t]his factor does weigh in favor of Defendant"). This factor, however, is given little weight in most instances; in fact, courts often decide against the party which it favors. *See, e.g.*, *Burrow*, 2017 WL 2620067, at *6–7 (granting Plaintiff's motion to compel where the information was located in Brazil); *Laydon v. Mizuho Bank, Ltd*., 183 F.Supp.3d 409, 421, 427 (S.D.N.Y. 2016) (ordering production where the information sought was located in the United Kingdom).  Additionally, although the documents may have originated outside the U.S., they relate to allegations of misconduct that directly impacted and damaged people and businesses

11

in the U.S.  Thus, while this factor may support Defendants' position, it is the only one and far from dispositive of the issue.

### iv.     There No Alternative Means Of Securing The Information.

Courts have clarified that "the alternative means must be substantially equivalent to the requested discovery." *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1475 (9th Cir. 1992) (internal quotation marks omitted). This factor normally favors production if the information cannot "***easily*** be obtained elsewhere." *Id.* (emphasis added).  This factor is clearly satisfied here, as the entire purpose of redacting or pseudonymizing information is to prevent Plaintiffs from obtaining it.

### v.     Preventing Disclosure Would Significantly Undermine Important Interests Of The U.S., While Allowing Disclosure Would Not Undermine Important Interests Of Norway or the EU.

The balance of national interests is "ordinarily the most important factor."  *In re Commodity Exch., Inc., Gold Futures and Options Trading Litig.*, No. 14-MD-2548 (VEC), 2019 WL 1988525, at *5 (S.D.N.Y. May 6, 2019). Courts have repeatedly noted that the balancing of national interests "is of the greatest importance in determining whether to defer to the foreign jurisdiction." *British Int'l Ins. Co. v. Seguros La Republic, S.A.*, No. 90Civ.2370 (JFK)(FM), 2000 WL 713057, at *9 (S.D.N.Y. June 2, 2000). Consequently, courts will often decide the dispute in favor of the party which this factor supports. *See, e.g.*, *Consejo*, 2010 WL 2162868, at *2 (addressing the final factor first as it was "particularly significant" and dispositive of the issue); *see also Burrow*, 2017 WL 2620067, at *2 (granting Plaintiff's motion to compel responses from Defendant after determining that the United States' interest in production was greater than Brazil's interest in withholding discovery).

"When balancing national interests, the federal interest in full development of the facts should be given material weight." *Consejo*, 2010 WL 2162868 at *2.  Indeed, "the United States

12

undoubtedly has a substantial interest in fully and fairly adjudicating matters before its courts, which is only possible with ***complete*** discovery." *Id.* (emphasis added). Moreover, the U.S. also "has a substantial interest in 'vindicating the rights of American plaintiffs.'" *BrightEdge Techs., Inc. v. Searchmetrics, GmbH.*, No. 14–cv–01009–WHO (MEJ), 2014 WL 3965062, at *5 (N.D. Cal. Aug. 13, 2014) (quoting *In re Air Crash at Taipei, Taiwan on October 31, 2000*, 211 F.R.D. 374, 379 (C.D. Cal. 2002)). Courts in this District have also mentioned that the "possibility that [a] case could be class certified further increases the United States' interest." *Burrow*, 2017 WL 2620067, at *7.

In short, the U.S. interest in compelling the Defendants' production of documents without meddlesome redactions is substantial. This is a dispute involving foreign corporations conspiring to fix prices paid by U.S. direct purchasers for a staple product in clear violation of U.S. antitrust laws. The U.S.'s substantial interest in adjudicating actions involving consumer safety cannot seriously be questioned. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-SC, 2014 WL 5462496, at *6 (N.D. Cal. Oct. 23, 2014) ("As the Supreme Court has recognized, enforcement of the antitrust laws through private civil actions is an important part of encouraging compliance with those laws.").

Moreover, if Defendants are permitted to redact information from responsive documents, it will be extremely burdensome for Plaintiffs to "adequately build a case." *Burrow*, 2017 WL 2620067, at *7. As there is a significant "federal interest in full development of the facts[,]" *Consejo*, 2010 WL 2162868, at *2, the Court should act in accordance with the spirit of the Federal Rules of Civil Procedure and "employ a liberal and broad scope of discovery[,]" *Query v. Lexington Ins. Co.*, No. 15-21951-Civ, 2015 WL 12434326, at *1 (S.D. Fla. Nov. 19, 2015). Indeed, it would only waste the time and resources of Plaintiffs, Defendants, and the Court to allow

13

Defendants to redact or substitute pseudonyms for employee names appearing on discoverable documents.

Norway's or the EU's interest in preventing disclosure, on the other hand, is minimal. For one, the identities of document custodians are likely to be revealed through depositions eventually. Additionally, the identities of other individuals mentioned in discovery materials will need to be revealed in advance of depositions, so that Plaintiffs can effectively question witnesses about the materials. Hence, it is likely that any redaction or pseudonymization process will ultimately not serve any privacy interests, while it will undoubtedly waste enormous amounts of time and resources.

Moreover, the parties are in the process of negotiating a stipulated protective order, which would permit Defendants to apply a heightened level of protection to certain sensitive data. Thus, only individuals who truly require the information will have access to it. These restrictions effectively achieve the objectives of the foreign privacy laws upon which Defendants rely.

On balance, it is clear that the interest of the U.S. in the normal, full production of discovery materials easily outweighs those of Norway or the EU in impeding discovery through a delayed, inefficient pseudonymization or redaction process. This final factor therefore supports full disclosure.

\*       \*       \*

As four of the five factors specified in *Aérospatiale*, 482 U.S. at 544 n.28, including the most important factor—the balance of competing interests—favor the complete production of documents in accordance with U.S. law, Defendants should not be permitted to invoke the GDPR to redact any information from the documents already obtained by foreign government entities.

And if such redactions are prohibited, Defendants cannot seriously claim that producing such documents would impose any unique or undue burden on them.

**II.** ████████████████████████████████████████████
███████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

15

███████████████████████████████████████████████████

██████████████████████████

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask this Court to enter an order compelling

Defendants to comply with the Court's prior Order and produce to Plaintiffs all pre-existing

documents already obtained by foreign government entities.

Dated: May 7, 2020.                                   Respectfully submitted,

**PODHURST ORSECK, P.A.**
By: */s/ Peter Prieto*
Peter Prieto, FBN 501492
John Gravante, III, FBN 617113
Matthew P. Weinshall, FBN 84783
Alissa Del Riego, FBN 99742
SunTrust International Center
One S.E. 3rd Ave, Suite 2300
Miami, FL 33131
Tel: (305) 358-2800
pprieto@podhurst.com
jgravante@podhurst.com
mweinshall@podhurst.com
adelriego@podhurst.com

*Interim Co-Lead Counsel for Direct Purchaser Plaintiff Class*

**HAUSFELD LLP**
Michael P. Lehmann (*pro hac vice*)
Christopher L. Lebsock (*pro hac vice*)
600 Montgomery St. #3200
San Francisco, CA 94111
Tel: (415) 633-1908
*mlehmann@hausfeld.com*
*clebsock@hausfeld.com*

**HAUSFELD LLP**
Reena A. Gambhir (*pro hac vice*)
1700 K Street, N.W., Suite 650
Washington D.C. 20006
Tel: (202) 540-7200
*rgambhir@hausfeld.com*

*Interim Co-Lead Counsel*
*for Direct Purchaser Plaintiff Class*

**KOPELOWITZ OSTROW FERGUSON**
**WEISELBERG GILBERT**
Robert C. Gilbert, FBN 561861
Daniel E. Tropin, FBN 100424
2800 Ponce de Leon Boulevard, Suite 1100
Coral Gables, FL 33134
Tel: (305) 384-7269
*gilbert@kolawyers.com*
*tropin@kolawyers.com*

*Direct Purchaser Plaintiffs' Liaison Counsel*

19

**FREED KANNER LONDON & MILLEN, LLC**
Kimberly A. Justice, (*pro hac vice*)
923 Fayette Street
Conshohocken, PA 19428
Tel: (610) 234-6487
*kjustice@fklmlaw.com*

**FREED KANNER LONDON & MILLEN, LLC**
Steven A. Kanner, (*pro hac vice*)
Douglas A. Millen, (*pro hac vice*)
Brian M. Hogan, (*pro hac vice*)
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Tel: (224) 632-4500
*skanner@fklmlaw.com*
*dmillen@fklmlaw.com*
*bhogan@fklmlaw.com*

**PRETI, FLAHERTY, BELIVEAU & PACHIOS, LLP**
Gregory P. Hansel, FBN 607101
Randall B. Weill (*pro hac vice*)
Michael S. Smith (*pro hac vice*)
One City Center
P.O. Box 9546
Portland, ME 04112-9546
Tel: (207) 791-3000
*ghansel@preti.com*
*rweill@preti.com*
*msmith@preti.com*

**STEYER LOWENTHAL BOODROOKAS ALVAREZ & SMITH, LLP**
Allan Steyer (*pro hac vice*)
Jill M. Manning (*pro hac vice*)
D. Scott Macrae (*pro hac vice*)
235 Pine Street, 15th Floor
San Francisco, CA 94104
Tel: (415) 421-3400
*asteyer@steyerlaw.com*
*jmanning@steyerlaw.com*
*smacrae@steyerlaw.com*

**WOLLMUTH MAHER & DEUTSCH LLP**
Ronald J. Aranoff (*pro hac vice*)
Ryan J. Keenan (*pro hac vice*)
Scott C. Ferrier (*pro hac vice*)
500 Fifth Avenue, 12th Floor
New York, NY 10110
Tel: (212) 382-3300
*raranoff@wmd-law.com*
*rkeenan@wmd-law.com*
*sferrier@wmd-law.com*

*Members of Direct Purchaser Plaintiffs' Executive Committee*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on May 7, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify the foregoing document is being served this day on all counsel of record via transmission of notice of Electronic Filing generated by CM/ECF.

By: *<u>/s/ Peter Prieto</u>*

Peter Prieto