UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 19-21551-CIV-ALTONAGA

IN RE FARM-RAISED SALMON
AND SALMON PRODUCTS
ANTITRUST LITIGATION,
                                                      /

**DEFENDANTS' MOTION TO RECONSIDER THIRD
SCHEDULING ORDER BASED ON NEW INFORMATION, OR IN THE
ALTERNATIVE FOR A PROTECTIVE ORDER**

Defendants Mowi ASA (f/k/a Marine Harvest ASA), Mowi USA, LLC (f/k/a Marine Harvest USA, LLC), Mowi Canada West, Inc. (f/k/a Marine Harvest Canada, Inc.), Mowi Ducktrap, LLC (an assumed name of Ducktrap River of Maine, LLC), Grieg Seafood ASA, Grieg Seafood BC Ltd., Leroy Seafood AS, Leroy Seafood USA Inc., Ocean Quality AS, Ocean Quality North America Inc., Ocean Quality USA Inc., Ocean Quality Premium Brands, Inc., and SalMar ASA respectfully move the Court to reconsider in part its April 6, 2020, Third Scheduling Order (the "Scheduling Order") [ECF No. 207].  Specifically, on the basis of concerns raised by the European Commission ("EC" or the "Commission") in letters issued to Defendants during the past week, Defendants ask that the Court include within the existing stay of discovery those documents that Defendants have produced to the European Commission (the "EC Documents").  Alternatively, Defendants respectfully request that the Court issue a protective order precluding production of the EC Documents because principles of comity weigh heavily against production of that set of documents at this stage of the litigation.

Pursuant to the Scheduling Order, discovery in this case is stayed pending resolution of Defendants' motion to dismiss, with the limited exception of documents already produced to the United States Department of Justice ("DOJ") and other foreign and domestic government

entities. The only government entities to which Defendants have produced documents are the DOJ and the EC, and Defendants notified Plaintiffs after receiving Plaintiffs' First Requests for Production of Documents that Defendants will be producing the more than 150,000 documents that Defendants have already produced to the DOJ. Defendants are working with Plaintiffs on a confidentiality order and protocol for production of electronic information so that these materials can be timely produced.

Just last week, however, each Defendant received a substantively identical letter from the EC (the "Administrative Letters") articulating its opposition to Defendants' production of the EC Documents in this litigation. The Commission explained that European law protects against disclosure of the EC's investigative process and strategy, including in the selection of documents sought from the subjects of its investigations. Thus, Defendants (like all parties to any EC investigation) are prohibited from viewing the full set of documents obtained by the Commission, until such time as the Commission has issued a statement of objections challenging any conduct, which has not occurred. Likewise, during an active EC investigation, national courts in Europe are restricted from ordering disclosure of materials in the Commission's file that would reveal investigative matters. According to the Commission, premature access to its file would subvert important interests of the Commission by undermining its investigative process and revealing its investigative strategy. Defendants' production of the EC Documents in this litigation would raise these same concerns.

The Commission had not expressed these concerns when the parties filed their Joint Scheduling Report, and the Court had not been apprised of the Commission's concerns when it issued the Scheduling Order. The Commission's opposition to production is thus new information that implicates issues of comity and burdens associated with production of the EC

Documents. The Court, parties, and, potentially, the Commission can avoid incurring the costs of resolving these issues if the Court's stay is extended to include the EC Documents.

Further, the serious comity concerns raised by the Commission far outweigh any interest of Plaintiffs in obtaining the EC Documents at this stage of this litigation. If the case proceeds beyond the motion to dismiss, Plaintiffs will be entitled to seek the underlying business documents produced to the Commission in a manner that would not infringe on the Commission's interests—i.e., through requests for production of documents relating to substantive issues, rather than simply as the set of documents produced to the EC. In the meantime, as noted above, Plaintiffs will soon have access to the more than 150,000 documents produced by Defendants to the DOJ.

In short, Defendants now find themselves in an untenable position. The European Commission's Administrative Letters make clear that Defendants' production of the EC Documents in response to Plaintiffs' requests would run afoul of the E.U. legal framework and the Commission's investigative interests. For these reasons, and the additional reasons set forth below, Defendants request that the Court reconsider its Scheduling Order and include the EC Documents within the Court's stay of discovery, or alternatively issue a protective order precluding production of the EC Documents.

## I. BACKGROUND

On April 3, 2020, the parties submitted a Joint Scheduling Report [ECF No. 205] in accordance with the Court's Orders of March 13 and March 27, 2020. In that report, Defendants explained their intention to seek a stay of discovery during the pendency of their motion to dismiss because Defendants should not be subject to costly discovery until the Court has had the opportunity to determine the validity of Plaintiffs' claim. [*Id.* at ¶ 7.] Defendants anticipated

discovery here to be particularly burdensome because most Defendants are foreign entities with documents and deponents located overseas. Plaintiffs argued against the stay, reasoning that Defendants at least should be required to produce to Plaintiffs "records already produced to the United States Department of Justice and other foreign and domestic government entities." [*Id.* at ¶ 6.]

On April 6, 2020, the Court issued the Third Scheduling Order, in which it stayed all discovery pending resolution of Defendants' motion to dismiss, with the exception of records already produced by Defendants to the DOJ and other foreign and domestic government entities. [ECF No. 207 at ¶ 5.] In reaching its decision, the Court noted that the parties had previewed their arguments with regard to the motion for stay. [*Id.*] The Court then ordered Defendants to produce those records to Plaintiffs upon request. The Court also set forth a briefing schedule for the motion to dismiss. [*Id.*] In accordance with that schedule, Defendants filed their motion to dismiss on April 20, 2020. [ECF No. 220.] Plaintiffs' response is due on June 8, 2020 [ECF No. 207 at ¶ 3], and Defendants' reply is due on June 26, 2020, after which briefing on the motion to dismiss will be complete. [*Id.* at ¶ 4.]

Shortly after the Court's decision, on April 9, 2020, Plaintiffs served their first document requests on each Defendant. (See Exhibits 1-13.) Each set of requests contains an identical request for:

> All documents produced by you to any government or government agency outside of the United States, including but not limited to representatives of the European Commission and the European Union, in connection with any investigation relating to alleged anticompetitive or antitrust activities or conduct in the salmon market. (*Id.*)

Defendants promptly asked Plaintiffs to schedule a meet and confer to discuss concerns about the substantial burden associated with the production of the EC Documents, particularly

4

given the limitations imposed by COVID-19.[1] Among other things, Defendants would be required to re-review the documents to redact any confidential personal information in accordance with the European Union's General Data Protection Regulation ("GDPR").[2] The parties met and conferred on the issue on April 23, 2020.

In the meantime, the various European counsel representing each Defendant notified the Commission of Plaintiffs' document requests. A Commission official responded to Defendants' European counsel that the Commission had concerns about production of the EC Documents, and that the Commission was considering next steps.

Defendants explained these issues to Plaintiffs during the parties' first meet and confer on April 23, 2020. Defendants also explained that they are prepared promptly to produce over 150,000 documents that they collectively produced to the DOJ, subject to entry of an appropriate confidentiality order.[3] In response, Plaintiffs requested that Defendants provide more

---

[1] In order to avoid any delay, and cognizant of Local Rule 26.1(g), Defendants raised these issues with Plaintiffs promptly rather than waiting the thirty days allowed under Federal Rule of Civil Procedure 34 for responding to documents requests.

[2] The General Data Protection Regulation (EU) 2016/679 "lays down rules relating to the protection of natural persons with regard to the processing of personal data and rules relating to the free movement of personal data." Art. 1(1). The regulation governs both data protection within and the transfer of personal data outside of the European Union and the European Economic Area ("EEA"), which includes Norway. GDPR enforces "data minimization," which requires personal data be "adequate, relevant and limited to what is necessary in relation to the purposes for which they are processed." Art. 5(1). Data transfer may only take place when "transfer is necessary for the establishment, exercise or defence of legal claims." Art. 49(1)(e). The European Data Protection Board has elaborated that transfer entails application of a "necessity test" that "requires a close and substantial connection between the data in question and the specific establishment, exercise or defense of the legal position." Guidelines 2/2018 on derogations of Article 49 under Regulation 2016/679 at 12 (May 25, 2018).

[3] All Defendants received subpoenas from the DOJ requesting documents within the United States related to Defendants' salmon sales. Three of the Defendant corporate groups have

*(cont'd)*

information to assess the concerns expressed by Defendants regarding the EC Documents. The parties scheduled a second meet and confer for the following week.

On April 29, 2020, the Commission sent the Administrative Letters to the Norwegian Defendants. (*See* Exhibits 14-17.)[4] These Letters—identical in substance—explain their purpose is to inform Defendants and the Court of the Commission's "serious concerns regarding the disclosure of the Requested Documents in the proceedings before the Court." Administrative Letters at 5. The Commission describes the European Union law limiting the ability of national courts in the EU to order disclosure of documents in the Commission's file that were seized from or produced by investigated parties, as such disclosure "risks unravelling the Commission's investigation strategy by revealing which documents are part of its file and also risks having a negative effect on the way in which the Defendants cooperate with the Commission[.]" *Id.* at 5. The Commission explains that it has intervened in U.S. proceedings previously when these policy concerns are implicated, and it requests that these "limitations be accorded recognition by non-EU courts in the light of the principle of international comity," as a number of U.S. courts have done when the Commission has invoked these concerns. *Id.* at 2-3. And the Commission states that it similarly may seek to intervene here and "present[] its interests and concerns directly to the Court[.]" *Id.* at 5.

The parties met and conferred for a second time on April 30, 2020, at which time Defendants apprised Plaintiffs of the Administrative Letters. Defendants provided Plaintiffs with

---

produced approximately 150,000 responsive documents. The fourth Norwegian Defendant has no responsive documents to produce because it has no U.S. operations.

[4] The Commission stated that it had no objection to Defendants submitting its letter to this Court (Administrative Letters at 6), but requested that the full contents of Administrative Letters remain non-public. Defendants are therefore filing a motion to seal the Exhibits.

the Administrative Letters, and the parties agreed to meet and confer a third time after Plaintiffs considered the concerns articulated therein.

On May 7, 2020, the parties met and conferred for a third time to discuss Plaintiffs' reactions to the Administrative Letters. Plaintiffs persisted in requesting production of the EC Documents, resulting in the parties reaching impasse and forcing Defendants to file this motion.

## II. ARGUMENT

### A. The Recently-Raised Concerns of the Commission Warrant Reconsideration of the Scheduling Order.

A party may request that a court reconsider and revise "any order or other decision . . . at any time before the entry of a judgment." Fed. R. Civ. P. 54(b). "The decision to grant a motion for reconsideration is within the sound discretion of the trial court." *Cuevas v. Verizon Wireless Pers. Commc'ns, LLP*, No. 2:18-cv-371-FtM-99CM, 2018 WL 6011876, at *1 (M.D. Fla. Nov. 16, 2018) (*citing Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 806 (11th Cir. 1993)). A movant may justify reconsideration of a prior order through either "(1) an intervening change in controlling law; (2) the availability of new evidence; [or] (3) the need to correct clear error or manifest injustice." *Reiseck v. Universal Commc'ns of Miami, Inc.*, 141 F. Supp. 3d 1295, 1301 (S.D. Fla. 2015) (Altonaga, J.); *Inetianbor v. CashCall, Inc.*, 962 F. Supp. 2d 1303, 1309 (S.D. Fla. 2013) ("Plaintiff has provided new evidence showing . . . that reconsideration [of the Court's motion to compel] is appropriate."), *aff'd*, 768 F.3d 1346 (11th Cir. 2014); *Cuevas*, 2018 WL 6011876, at *1 (granting reconsideration "because [defendant] has submitted new evidence").

Here, the EC's Administrative Letters opposing Defendants' production of the EC Documents represent new information that bears directly on whether, at this stage of the litigation, Defendants should be required to produce to Plaintiffs the documents that they have

7

produced to, or that have been seized by, the Commission. The Commission's opposition to production of the EC Documents creates additional burdens for the parties and Court associated with the production of those documents, and raises important comity issues that weigh against production of the EC Documents. *See infra* Section II.B. Moreover, the Commission's letter states that to "protect its interests," the Commission itself may seek to intervene and "present[] its interests and concerns directly to the Court[.]" Administrative Letters at 5.

Under these circumstances, Defendants respectfully submit that the discovery stay already entered by the Court should be extended also to cover the EC Documents. This would avoid the burdens on the Court and the parties (and, potentially, the Commission) of addressing and resolving the broader policy concerns raised by the Commission before a determination is made whether this case even merits proceeding to discovery. As the Eleventh Circuit has recognized, dismissing a nonmeritorious claim before discovery has begun avoids "unnecessary costs to the litigants and to the court system." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367-68 (11th Cir. 1997). Thus, "courts have held good cause to stay discovery exists wherein 'resolution of a preliminary motion may dispose of the entire action.'" *Nankivil v. Lockheed Martin Corp.*, 216 F.R.D. 689, 692 (M.D. Fla. 2003) (citation omitted), *aff'd*, 87 F. App'x 713 (11th Cir. 2003).

Plaintiffs would not be harmed by the limited relief Defendants seek, as that relief will not render the underlying business documents produced to the Commission non-discoverable. Plaintiffs will have the opportunity to request and receive relevant underlying business documents through additional, substantive discovery requests if Defendants' motion to dismiss is denied (which will be fully briefed in a mere seven weeks). Instead, the relief sought by Defendants simply prevents Plaintiffs from receiving documents in a manner that would

prejudice the Commission (i.e., as the set of documents actually produced to the Commission). In addition, Plaintiffs have no immediate need for the EC Documents, especially when Defendants have already agreed to produce to Plaintiffs all documents produced to the DOJ— more than 150,000 business records. *See In re Rubber Chems. Antitrust Litig.*, 486 F. Supp. 2d 1078, 1083 (N.D. Cal. 2007) (noting the Court "fail[s] to see the importance or relevance of the EC documents" when plaintiff "already has the documents relating to the DOJ investigation of a conspiracy in the U.S."). Because Plaintiffs' interests would not be undermined, extending the discovery stay to include the EC Documents would best serve the interests of the parties, the Court and the Commission by avoiding burdensome discovery disputes related to international comity while the motion to dismiss is pending.

      **B.    Alternatively, a Protective Order is Warranted in the Interests of Comity.**

In the absence of a stay, good cause exists for the Court to issue a protective order precluding production of the EC Documents at this stage of the litigation. A court may "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). "Courts have 'broad discretion' to decide when a protective order is appropriate and what degree of protection is required," including discretion to limit or preclude discovery based on international comity. *Wreal LLC v. Amazon.com, Inc.*, No. 14–21385–CIV, 2014 WL 7273852 (S.D. Fla. Dec. 19, 2014) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)); *see also Chems. Antitrust Litig.*, 486 F. Supp. 2d at 1081 ("Rule 26 grants the court discretion to limit discovery on several grounds, including international comity." (citing *Société Nationale Industrielle Aerospatiale v. U.S. District Court,* 482 U.S. 522, 546 (1987))). In deciding whether to issue a protective order, a court must balance the respondent's interest in obtaining discovery against the movant's need for

9

a protective order and the harm that will be suffered without one. *See Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985).

In the spirit of comity, courts "should not take such action as may cause a violation of the laws of a friendly neighbor or, at the least, *an unnecessary circumvention of its procedures*." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720 (JG)(JO), 2010 WL 3420517, at *5 (E.D.N.Y. Aug. 27, 2010) (citation omitted). *Cf. Sovereign Bonds Exch. LLC v. Fed. Republic of Germany*, CASE NO. 10–21944–CIV-ALTONAGA/Brown, 2010 WL 11442753, at *2 (S.D. Fla. Sept. 13, 2010) (Altonaga, J.) ("When foreign litigants are brought before U.S. courts, federal courts should be sensitive to matters of comity."). In the discovery context, international comity demands "a more particularized analysis of the respective interests of the foreign nation and the requesting nation." *Aerospatiale*, 482 U.S. at 543-44. In performing this analysis, a court must balance the following factors:

> (1) the importance to the . . . litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

*Id.* at 544 n.28. These factors weigh heavily in favor of precluding production of the EC Documents at this stage of the litigation.

> 1. *Production of the EC Documents would undermine broader Commission interests that outweigh any competing interests.*

It is well settled that "[t]he fifth factor, the balancing of national interests, is the most important factor" in the comity analysis. *Sun Grp. U.S.A. Harmony City, Inc. v. CRRC Corp. Ltd.*, Case No. 17-cv-02191-SK, 2019 WL 6134958, at *4 (N.D. Cal. Nov. 19, 2019) (citing *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1476 (9th Cir. 1992)). Here, the interests outlined by the Commission far exceed any competing interests.

In the Administrative Letters, the Commission explains that production of the EC Documents in this litigation would provide access to confidential documents in the Commission's file in a manner that reveals its investigative strategy, contravening its fundamental policy of confidential investigative processes and subverting the EU legal and procedural framework. *See* Administrative Letters at 3-4. Because the Commission has yet to open formal proceedings through the adoption of a statement of objections, European Union law prevents the investigated parties themselves from accessing the investigation file, which contains all documents seized by, or produced to, the Commission from all parties. *See id.* at 3; Art. 15 of Reg. 773/2004 ("Access [to the file] shall be granted after the notification of the statement of objections.").

According to the Commission, production of the EC Documents in this case would circumvent this prohibition and thereby "would unduly interfere with the ongoing Commission proceedings . . . indicating which questions the Commission asked to the investigated parties and which documents it requested from them." Administrative Letters at 3-4. The Commission further explains that such production would "risk[] unravelling the Commission's investigation strategy by revealing which documents are part of its file," *id.* at 5, which is the very reason Defendants are barred from early access to the Commission's file. This rationale applies to materials prepared in the context of the Commission proceedings as well as pre-existing business documents when disclosure would reveal underlying investigative strategy. *See id.* at 4-5; *Commission Staff Working Paper accompanying the Report on the functioning of Regulation No.1/2003*, (SEC(2009) 574 final), §7.1, European Commission (Apr. 29, 2009) ("[P]re-existing documents should be shielded from discovery, insofar as it could reveal the Commission's investigative strategy."). The Commission also cites the EU Directive on Antitrust Damages

11

Actions, which restricts EU national courts as a matter of course from ordering the disclosure of evidence included in the file until after the Commission has closed its proceedings. *See* Administrative Letters at 3 (citing Article 6.5.(a)).

In addition, the Commission states that production of the EC Documents "also risks having a negative effect on the way in which the Defendants cooperate with the Commission." *Id.* at 5. As the Commission explains, cooperation is "matter of serious concern" where, as here, the Commission is in very early stages of its investigation and is continuing to engage with parties regarding additional information. *Id.* The Commission has therefore expressed concern that production of the EC Documents would create a precedent that would discourage cooperation and undermine the efficacy not only of the Commission's ongoing investigation, but future investigations as well. As the Commission explains, it has intervened in a number of U.S. proceedings based on these same policy concerns in order to safeguard its interests as an enforcement authority. *See id.* at 3 n.3, 6.

Courts have recognized the concerns expressed in the Administrative Letters and have denied discovery that would reveal sensitive investigation details, undermine confidentiality, and disincentivize confidential communications with the Commission. *See, e.g.*, *Chems. Antitrust Litig.*, 486 F. Supp. 2d at 1084 (denying motion to compel because "production of the EC documents would undermine [the Commission's] ability to initiate and prosecute future investigations by creating disincentives to cooperate with the Commission and would prejudice future investigations"); *Interchange Fee*, 2010 WL 3420517, at *9 (denying discovery of European litigation documents because the Commission established that "confidentiality plays a significant role in assisting the effective enforcement of European antitrust law"). This is particularly true where, as here, the Commission has "taken a clear position and articulated

reasons why it believes production of the requested documents would harm its interests." *Chems. Antitrust Litig.*, 486 F. Supp. 2d at 1084 (noting "the Commission's letter is a strong objection to the production of the [discovery] sought" and "any marginal benefit that the plaintiff would gain from disclosure is outweighed by the impact that disclosure will have on the Commission's interests").

While Defendants' production of the EC Documents would contravene an important European Union policy and undermine the interests of the Commission, precluding production now would not undermine any U.S. interests. Of course, the United States has a "generalized interest in 'fully and fairly adjudicating matters before its courts,'" but that would not be undermined as the underlying business documents produced to the Commission would still be discoverable. *CE Int'l Res. Holdings, LLC v. S.A. Minerals Ltd. P'ship*, No. 12-CV-08087 (CM)(SN), 2013 WL 2661037, at *14 (S.D.N.Y. June 12, 2013) (citation omitted); *Sun Grp.*, 2019 WL 6134958, at *4 (recognizing U.S. interests are "not undermine[d]" if plaintiff "is able to obtain documents necessary to litigate its claims" through alternate means). As explained above, if a protective order is issued now, Plaintiffs would still have ample opportunity to request relevant business documents if Defendants' motion to dismiss is denied, and to receive those documents in a manner that would not prejudice the Commission. *See supra* Section II.A.

2. *The remaining comity factors weigh against production.*

The remaining four factors to the comity analysis similarly weigh against requiring Defendants to produce the EC Documents.

*First*, Plaintiffs' request for the EC Documents lacks the requisite degree of specificity, as all the EC Documents are not necessarily relevant to Plaintiffs' claims. Courts generally seek to "limit foreign discovery to information [that is] necessary to the action . . . and directly relevant and material," Restatement (Third) of Foreign Relations Law § 442, cmt. a (1987), and

13

"[g]eneralized searches are discouraged." *Sun Grp.*, 2019 WL 6134958, at *3 (finding specificity factor weighs in movant's favor when "discovery requests are very broad and go beyond what is necessary to litigate the disputed issues in this case"); *see also Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 314 F. Supp. 3d 931, 940 n.4 (N.D. Ill. 2018) (denying discovery because "exceedingly broad" request lacked "relevance and proportionality"). Plaintiffs have served each Defendant with an overbroad request for *all* documents produced "to *any* government or government agency . . . including . . . the European Commission and the European Union, in connection with *any* investigation relating to alleged anticompetitive or antitrust activities or conduct in the salmon market." (*See* Exhibits 1-13 (emphasis added).); *see also* Administrative Letters at 4 ("[W]e note that the Plaintiffs' Production Request is framed in very broad terms[.]"). But Plaintiffs' claims are brought on behalf of U.S. consumers in the United States, while the EC Documents were seized by, or produced to, the Commission in connection with its investigation into producers and conduct in Europe. Plaintiffs' request is therefore not reasonably tailored to identify information that is relevant to Plaintiffs' claims.

*Second*, the EC Documents all originated and are currently located in Europe, weighing against their production. *See CE Int'l Res. Holdings*, 2013 WL 2661037, at *10 ("[T]he documents and communications sought in the subpoena *duces tecum* all originated outside the United States . . . . [which] weighs in favor of non-enforcement."). That is especially so here because prior to production, Defendants would face the additional burden of reviewing the EC Documents to redact personal data as required by GDPR. Under GDPR, transfer of personal data[5] generated within the EEA to a non-EEA state such as the United States may only take place

---

[5] "'[P]ersonal data' means any information relating to an identified or identifiable natural person ('data subject'); an identifiable natural person is one who can be identified, directly or indirectly, in particular by reference to an identifier such as a name, an identification number, location data,

*(cont'd)*

under select circumstances, such as when the personal data itself is "necessary for the establishment, exercise or defence of legal claims." Art. 49(1)(e) of Reg. 2016/679 (General Data Protection Regulation). Accordingly, personal data's "relevance to the particular matter should be assessed before the transfer," including, "[a]s a first step, […] a careful assessment of whether anonymized data would be sufficient in the particular case." Guidelines 2/2018 on derogations of Article 49 under Regulation 2016/679, at 12 (May 25, 2018). Because all the EC Documents originated in the EEA, Defendants can only disclose personal data within those documents in a manner compliant with GDPR, meaning Defendants would be obligated to undertake this assessment before those documents could be produced in this litigation.

*Third*, Plaintiffs have an alternate means of securing documents produced to the Commission, as the protective order Defendants seek would not render those documents non-discoverable. Should Plaintiffs' complaint survive Defendants' motion to dismiss, Plaintiffs would have the opportunity to obtain in discovery relevant underlying business documents that were produced to the Commission. *See supra* Section II.A.

*Fourth*, courts should "be cautious about requiring disclosure in the face of comity objections" if production of documents would not be "outcome-determinative" or "directly relevant." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, CASE NO. M:07-cv-01827-si, 2011 WL 13147214, at *4 (N.D. Cal. Apr. 26, 2011) (citing *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1475 (9th Cir. 1992)). The EC Documents here are of little importance at this stage of the litigation, and certainly are not outcome determinative, as the pending motion to dismiss is to be decided on the basis of the pleadings. Furthermore, as

---

an online identifier or to one or more factors specific to the physical, physiological, genetic, mental, economic, cultural or social identity of that natural person[.]" Art. 4(1).

demonstrated above, many of the EC Documents Plaintiffs seek through their broad requests may not be relevant to the claims here at all.

The principles of comity—in particular the need to preserve the Commission's interests in the integrity of its investigation—thus require a protective order precluding production of the EC Documents.

### III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court reconsider the Third Scheduling Order, and extend the existing stay of discovery to include the EC Documents. In the alternative, Defendants respectfully request that the Court issue a protective order precluding production of the EC Documents based on the comity concerns raised by the Commission.

### LOCAL RULE 7.1(a)(3) CERTIFICATION

In compliance with Rule 7.1(a)(3) of the Local Rules of the United States District Court for the Southern District of Florida, undersigned counsel hereby certify that Karen Hoffman Lent, on behalf of Defendants, has conferred with Peter Prieto, counsel for Plaintiffs, by electronic mail and by telephone (on May 7, 2020) in a good faith effort to obtain agreement on the relief sought. Plaintiffs' counsel objects to the requested relief.

Dated: May 7, 2020

Respectfully submitted,

By: */s/ Lawrence D. Silverman*
Lawrence D. Silverman
Florida Bar No: 7160
Diane O. Fischer
Florida Bar No: 994560
AKERMAN LLP
Three Brickell City Centre
98 SE 7th Street, Suite 1100
Miami, Florida 33131
lawrence.silverman@akerman.com
deedee.fischer@akerman.com

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
Karen Hoffman Lent *(pro hac vice)*
Matthew M. Martino *(pro hac vice)*
One Manhattan West
New York, NY 10001
karen.lent@skadden.com
matthew.martino@skadden.com

*Counsel for Defendants Mowi ASA (f/k/a Marine Harvest ASA), Mowi USA, LLC (f/k/a Marine Harvest USA, LLC), Mowi Canada West, Inc. (f/k/a Marine Harvest Canada, Inc.), and Mowi Ducktrap, LLC (an assumed name of Ducktrap River of Maine, LLC)*

By: */s/ John C. Seipp*
John C. Seipp
Florida Bar No: 289264
Christine L. Welstead
Florida Bar No: 970956
BOWMAN AND BROOKE, LLP
Two Alhambra Plaza, Suite 800
Miami, Florida 33134
john.seipp@bowmanandbrooke.com
christine.welstead@bowmanandbrooke.com

CLEARY GOTTLIEB STEEN &
HAMILTON LLP
David I. Gelfand *(pro hac vice)*
Matthew Bachrack *(pro hac vice)*
2112 Pennsylvania Avenue, NW
Washington, D.C. 20037
dgelfand@cgsh.com
mbachrack@cgsh.com

*Counsel for Defendants Leroy Seafood AS and Leroy Seafood USA Inc.*

17

By: */s/ Sara L. Salem*
Sara L. Salem
Florida Bar No: 1011429
Eric J. Mahr *(pro hac vice)*
FRESHFIELDS BRUCKHAUS
DERINGER US LLP
700 13th Street NW, 10th Floor
Washington, D.C. 20005
sara.salem@freshfields.com
eric.mahr@freshfields.com

*Counsel for Defendants Grieg Seafood ASA, Grieg Seafood BC Ltd., Ocean Quality AS, Ocean Quality North America Inc., Ocean Quality USA Inc., and Ocean Premium Brands, Inc.*

By: */s/ Adam L. Schwartz*
Adam L. Schwartz
Florida Bar No: 0103163
HOMER BONNER JACOBS ORTIZ, P.A.
1200 Four Seasons Tower
1441 Brickell Avenue
Miami, Florida 33131
aschwartz@homerbonner.com

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Stephen R. Neuwirth *(pro hac vice)*
Sami H. Rashid *(pro hac vice)*
Christopher Tayback *(pro hac vice)*
51 Madison Avenue, 22nd Floor
New York, New York 10010
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
stephenneuwirth@quinnemanuel.com
samirashid@quinnemanuel.com
christayback@quinnemanuel.com

*Counsel for Defendant SalMar ASA*