# Exhibit 14



EUROPEAN COMMISSION
Competition DG

**Cartels**

Brussels, 29 April 2020
COMP/G/ChRD/jve *D/2020/053711**

**Mowi ASA**
Sandviksboder 77 AB
5035 Bergen
Norway

<u>**Via**</u>:

**Wiersholm Advokatfirmaet AS**
Dokkveien 1
0250 Oslo
Norway

**For the attention of:**

**Mr. Håkon Cosma Størdal**, Partner
**Ms. Elisabeth Lian Haugsdal**,
Associate

**By e-mail:**
hcst@wiersholm.no,
elha@wiersholm.no

Subject:  **European Commission Case AT.40606** *Farmed Atlantic Salmon:*
Court Order of 6 April 2020 and Production Request of 9 April 2020 in
the *Farm-raised salmon and salmon products antitrust litigation* before
the United States District Court Southern District of Florida

Dear Ms Haugsdal, dear Mr Størdal,

1. I refer to your email of 21 April 2020 whereby you informed the European
Commission (the "Commission"), through its services at the Directorate-General
Competition in charge of applying European Union competition law ("DG
Competition"), of an order issued by Judge Cecilia M. Altonaga of the United States
District Court Southern District of Florida (the "Court") on 6 April 2020 (the
"Order") in the context of the *Farm-raised salmon and salmon products antitrust*

---

Commission européenne, DG COMP GREFFE ANTITRUST,  B-1049 Bruxelles, Belgique
Europese Commissie, DG COMP GREFFE ANTITRUST, B-1049 Brussel,  België

Tel: (32-2) 299 11 11, Fax: (32-2) 295 01 28, e-mail: COMP-GREFFE-ANTITRUST@ec.europa.eu.

*litigation* before that Court[1].  This antitrust litigation involves as Defendant your client *Mowi ASA* ("your Client") who at the same time is an undertaking investigated under European Union ("EU") competition rules by the Commission in its on-going proceedings in case AT.40606 *Farmed Atlantic Salmon.*

2. Point 5. of the Order stipulates that "*Records already produced by Defendants to the Department of Justice and other foreign and domestic government entities will be produced to Plaintiffs upon request.*"  Based on this Order, the Plaintiffs on 9 April 2020 requested from your Client to produce *"All documents produced by you to any government or government agency outside of the United States, including but not limited to representatives of the European Commission and the European Union, in connection with any investigation relating to alleged anticompetitive or antitrust activities or conduct in the salmon market"* (the "Production Request") within 30 days after service of this request.  Moreover, we understand from the Plaintiffs' Production Request of 9 April 2020 and in particular point 17 of its Instructions that the Production Request is continuing in nature and requires your Client to provide to the Plaintiffs supplemental responses if, in the time between its original response and the time set for trial, your Client would produce further documents to the Commission.

3. Depending on the meaning of the term 'documents *produced* to the European Commission', the material and temporal scope of the Production Request could possibly include (i) all documents of your Client which the Commission would have possibly copied during inspections, and (ii) all documents your Client would have already submitted, or would possibly in future submit, to the Commission.  This would include your Client's possible replies to Commission requests for information, as well as possible leniency statements and possible settlement submissions (hereinafter referred to altogether as the "Requested Documents").

4. In this connection, the purpose of this letter is to inform you about of the concerns of the Commission's services at DG Competition regarding the disclosure of the Requested Documents in proceedings before the Court.

5. This letter describes the relevant EU law framework as set out in the EU Directive on Antitrust Damages Actions[2] and other legal texts, which informs the position of the Commission's services at DG Competition on the Order and the Production Request.

6. The concerns set out below are based on the relevant EU law framework, as it applies to disclosure in damages actions before the national courts of the EU Member States ("EU national courts").  We would respectfully request that these principles and limitations should be accorded recognition by non-EU courts in the light of the

---

[1] Case No. 19-21551-CIV-ALTONAGA/Goodman.

[2] Directive 2014/104/EU of the European Parliament and of the Council of 26 November 2014 on certain rules governing action for damages under national law for infringements of the competition law provisions of the Member States and of the European Union, OJ L 349, 5.12.2014, p. 1-19 (the "EU Directive on Antitrust Damages Actions").

principle of international comity.  These concerns have been successfully invoked by the Commission, by reference to principles of international comity, in a number of interventions[3] before courts in the United States or in connection with proceedings before US courts.

7.  Of particular relevance for the case at hand are those rules and principles laid down in the EU Directive on Antitrust Damages Actions which are applicable when parties ask EU national courts to order the disclosure of evidence included in the file of a competition authority (i.e. a competition authority of an EU Member State or the European Commission as European competition authority).  Those rules and principles aim at striking the appropriate balance between the interest of antitrust damages claimants to obtain the disclosure of evidence relevant to their claim and the interest of the competition authority in protecting the effectiveness of its law enforcement procedures in particular where an enforcement procedure is still on-going.  In the present case, the Commission's procedure in case AT.40606 *Farmed Atlantic Salmon*, in which your Client is being investigated under EU competition rules, is still on-going.

8.  According to Article 6.5.(a) of the EU Directive on Antitrust Damages Actions, in case information included in a competition authority's file was prepared by a natural or legal person specifically for the proceedings of a competition authority, EU national courts may order the disclosure of this evidence only after a competition authority, by adopting a decision or otherwise, has closed its proceedings.  This rule is also reflected in Article 16a.3 of Regulation (EC) 773/2004, which was introduced[4] to align the rules on the proceedings of the Commission with the rules of the EU Directive on Antitrust Damages Actions, restricting the use of information by parties to the Commission proceedings.  Applied to the present case, in which the Commission's proceedings are still on-going, the provisions of EU law would e.g. prevent disclosure of the replies your Client, in relation to possible Commission requests for information, would have already submitted and would in future submit to the Commission as long as the Commission has not, by adopting a decision or otherwise, closed its proceedings.  This understanding of Article 6.5.(a) is also confirmed by recital 25 of the EU Directive on Antitrust Damages Actions with specific reference to replies to competition authorities' requests for information.  The rationale behind this rule is that early disclosure of documents specifically created for the purposes of the Commission's proceedings would unduly interfere with the on-going Commission proceedings.  Disclosure of the investigated parties' replies to Commission requests for information would also contribute to revealing the

---

[3] Most recently, the Commission's services have intervened in re Jeffrey Laydon v. Mizuho Bank, Ltd.; Case No. 12-CV-3419 (S.D.N.Y. 2014). See also Commission's interventions in (i) re Air Cargo Shipping Services Antitrust Litigation, M.D.L. No. 1775 (E.D.N.Y), (ii) re TFT-LCD (Flat Panel) Antitrust Litigation, No. M: 07-1827 (N.D. Cal. 2011), Special Master's Order Denying Motion of Direct Purchaser Plaintiffs to Compel Hitachi to Produce Foreign Regulatory Documents, No. M:07-cv-01827-si (April 26, 2011) (iii) Re Vitamins Antitrust Litigation, Mise. No. 99-197, Docket No. 3079 (D.D.C. May 20, 2002) or (iv) Re: Methionine Antitrust Litigation, No. C-99-3491, MDL no. 1311 (N.D. Cal. June 17, 2002).

[4] Commission Regulation (EU) 2015/1348 of 3 August 2015 amending Regulation (EC) No 773/2004 relating to the conduct of proceedings by the Commission pursuant to Articles 81 and 82 of the EC Treaty, OJ L 208, 5.8.2015, p. 3–6.

Commission's investigative strategy by indicating which questions the Commission asked to the investigated parties and which documents it requested from them.

9. According to Article 6.6. of the EU Directive on Antitrust Damages Actions, for the purpose of actions for damages, EU courts cannot at any time order a party or a third party to disclose leniency statements[5] or settlement submissions[6]. Indeed, the Commission considers that the disclosure of leniency statements and settlement submissions is liable to have detrimental effects on the effectiveness of the enforcement of the EU competition rules by the Commission by deterring undertakings from cooperating with the Commission. Leniency programs and settlement procedures are considered to be of utmost importance for the work of the Commission in detecting and sanctioning cartel infringements[7].

10. Apart from leniency statements, settlement submissions and other documents specifically created for the purposes of a competition authority's proceedings, another category under EU law are pre-existing documents, which exist independently from competition authorities' proceedings and which are contemporaneous to the behaviour a competition authority is investigating. The category of pre-existing documents includes documents copies of which a competition authority, such as the Commission, obtained through inspections it conducted at the investigated parties.

11. Under EU law, pre-existing documents are not, as such, protected from disclosure. Nevertheless, proportionality criteria that apply to any orders and requests for the disclosure of any type of documents remain applicable in their regard, and, in particular, to orders and requests concerning documents included in the file of a competition authority. In this context, we note that the Plaintiffs' Production Request is framed in very broad terms, as it simply seeks disclosure of "*All documents produced by you to any government or government agency outside of the United States, including but not limited to representatives of the European Commission and the European Union, in connection with any investigation relating to alleged anticompetitive or antitrust activities or conduct in the salmon market*". In this respect, we would draw your attention to Article 6.4.(a) of the Directive on Antitrust Damages Actions and its recital 23. Article 6.4.(a) requires an EU national court, which is seized of a damages action, when assessing the proportionality of an order to disclose information, to consider "*whether the request has been formulated specifically with regard to the nature, subject matter or contents of documents*

---

[5] Article 2(16) of the EU Directive on Antitrust Damages Actions defines 'leniency statement' as "*an oral or written presentation voluntarily provided by, or on behalf of, an undertaking or a natural person to a competition authority or a record thereof, describing the knowledge of that undertaking or natural person of a cartel and describing its role therein, which presentation was drawn up specifically for submission to the competition authority with a view to obtaining immunity or a reduction of fines under a leniency programme, not including pre-existing information*".

[6] Article 2(18) of the EU Directive on Antitrust Damages Actions defines 'settlement submission' as "*a voluntary presentation by, or on behalf of, an undertaking to a competition authority describing the undertaking's acknowledgement of, or its renunciation to dispute, its participation in an infringement of competition law and its responsibility for that infringement of competition law, which was drawn up specifically to enable the competition authority to apply a simplified or expedited procedure*".

[7] See also recital 26 of the EU Directive on Antitrust Damages Actions.

*submitted to a competition authority or held in the file thereof, rather than by a non-specific application concerning documents submitted to a competition authority".*  In this context, recital 23 explains that *"The requirement of proportionality should be carefully assessed when disclosure risks unravelling the investigation strategy of a competition authority by revealing which documents are part of the file or risks having a negative effect on the way in which undertakings cooperate with the competition authorities. ... Disclosure requests should therefore not be deemed to be proportionate where they refer to the generic disclosure of documents in the file of a competition authority relating to a certain case, or the generic disclosure of documents submitted by a party in the context of a particular case.  Such wide disclosure requests would not be compatible with the requesting party's duty to specify the items of evidence or the categories of evidence as precisely and narrowly as possible."*

12. With regard to its investigation in case AT.40606 *Farmed Atlantic Salmon*, the Commission considers that the very broad scope of the Production Request risks unravelling the Commission's investigation strategy by revealing which documents are part of its file and also risks having a negative effect on the way in which the Defendants cooperate with the Commission in that case.  This is a matter of serious concern, particularly because the Commission's investigation is still on-going.

13. In conclusion, as a matter of international comity, the Commission's services at DG Competition have serious concerns regarding the disclosure of the Requested Documents in proceedings before the Court, in so far as, and subject to the meaning of 'documents *produced* to the European Commission'[8], the Production Request:

   - does not exclude leniency statements and settlement submissions; and

   - relates to other documents that your Client would already have specifically created, or would in future specifically create, for the proceedings of the Commission in case AT.40606 *Farmed Atlantic Salmon* before these proceedings are closed; and

   - is generically and unspecifically formulated by reference to all pre-existing documents copies of which the Commission would already have obtained from your Client, or would in future obtain from your Client, in its proceedings in case AT.40606 *Farmed Atlantic Salmon.*

14. I would request you to keep DG Competition duly informed of any developments in the above referenced antitrust litigation as regards any documents submitted by your Client to the Commission in the context of its on-going investigation in case AT.40606 *Farmed Atlantic Salmon.*

---

[8] See point 3. above.

15. If necessary, DG Competition wishes to have the opportunity to consider proposing to the Commission that it takes whatever action may be warranted to protect its interests, including presenting its interests and concerns directly to the Court, as it has done before a number of courts in the past[9].

16. Finally, please note that this letter is not a Decision of the Commission, but simply represents the views of the services of the Commission at DG Competition. DG Competition has no objection to this letter being formally submitted to the Court in the above-mentioned pending antitrust litigation before Judge Altonaga. However, this letter should not be construed as being in support of any particular party in that antitrust litigation before the Court. Its sole purpose is to safeguard the interests of the Commission as an anti-cartel enforcement authority. The considerations set out in this letter therefore apply equally to other parties subject to the Commission proceedings in case AT.40606 *Farmed Atlantic Salmon*.

Yours sincerely,

(e-signed)

**Cecilio MADERO VILLAREJO**
Acting Director Cartels
Deputy Director General DG
Competition

---

[9] See footnote 3 above.