

EUROPEAN COMMISSION
Competition DG

**Director General**

Brussels, 18/05/2020
COMP/G3/ChRD/lko * **D/2020/062195**

**Honourable Cecilia M. ALTONAGA**
**United States District Judge**
United States District Court
Southern District of Florida
Wilkie D. Ferguson, Jr. United States
Courthouse, 400 North Miami Avenue,
Room 12-2,
Miami, Florida 33128
USA

**Via email:**
**altonaga@flsd.uscourts.gov**

Subject:   In *Farm-raised salmon and salmon products antitrust litigation*
Case No. 19-21551-CIV-ALTONAGA/Goodman

European Commission Case AT.40606 *Farmed Atlantic Salmon*

Dear Judge Altonaga,

1. Concerning the above-mentioned antitrust litigation before the United States District Court Southern District of Florida (the "Court") and the European Commission case AT.40606 *Farmed Atlantic Salmon*, I refer to the letter of Mr Cecilio Madero Villarejo of 29 April 2020 which, I understand, was meanwhile submitted by the Defendants to you. The four Defendants in the antitrust litigation before you are at the same time parties investigated under European Union ("EU") competition rules by the European Commission (the "Commission") in its on-going proceedings in case AT.40606 *Farmed Atlantic Salmon*.

2. Prior to Mr Madero's letter of 29 April 2020, the Defendants had informed the Commission, through its services at the Directorate-General Competition in charge of applying EU competition law ("DG Competition"), of an order issued by you on 6 April 2020 (the "Order") in the context of the *Farm-raised salmon and salmon products antitrust litigation*. Point 5 of the Order stipulates that "*Records already*

Commission européenne, DG COMP GREFFE ANTITRUST,  B-1049 Bruxelles, Belgique
Europese Commissie, DG COMP GREFFE ANTITRUST, B-1049 Brussel, België

Tel: (32-2) 299 11 11, Fax: (32-2) 295 01 28, e-mail: COMP-GREFFE-ANTITRUST@ec.europa.eu.

*produced by Defendants to the Department of Justice and other foreign and domestic government entities will be produced to Plaintiffs upon request."* Based on this Order, the Plaintiffs had on 9 April 2020 requested from the Defendants to produce *"All documents produced by you to any government or government agency outside of the United States, including but not limited to representatives of the European Commission and the European Union, in connection with any investigation relating to alleged anticompetitive or antitrust activities or conduct in the salmon market"* (the "Production Request") within 30 days after service of this request. Moreover, we understand from the Plaintiffs' Production Request of 9 April 2020 and in particular point 17 of its Instructions that the Production Request is continuing in nature and requires the Defendants to provide to the Plaintiffs supplemental responses if, in the time between its original response and the time set for trial, the Defendants would produce further documents to the Commission.

3. Subject to the meaning of the term 'documents *produced* to the European Commission', the material and temporal scope of the Production Request appears to include (i) all documents of the Defendants which the Commission would have possibly copied during its antitrust inspections at the Defendants, and (ii) all documents the Defendants would have already submitted, or would possibly in future submit, to the Commission. This would include the Defendants' possible replies to Commission requests for information, as well as possible leniency statements and possible settlement submissions (hereinafter referred to altogether as the "Requested Documents").

4. In accordance with point 14 of Mr Madero's letter of 29 April 2020, the Defendants have continued to keep DG Competition informed about developments in the antitrust litigation before your Court. I understand that the Defendants on 7 May 2020 filed with you a motion for reconsideration, requesting a stay in the discovery order with regard to the documents produced by them to the Commission. As an alternative, the Defendants on 7 May 2020 also requested a protective order which would preclude production of the documents produced by them to the Commission at this stage of the proceedings in the interests of international comity. I also understand that the Plaintiffs reacted on the same day by filing a motion to compel production of the Requested Documents which was turned into a response to the Defendants' motion for reconsideration, that thereafter the Defendants had time until Friday 15 May 2020 to file a reply to the Plaintiffs' response and that the Plaintiffs now have time until Wednesday 20 May 2020 to file a sur-reply.

5. In light of the above, it seems that your final decision is imminent as to whether and, if so, to what extent to order discovery of the documents produced by the Defendants to the Commission or to issue a protective order such as for example to allow disclosure only to a confidentiality ring of external counsels. This is why at this point in time, I would like to take up the opportunity, in my capacity as Director General and head of DG Competition of the European Commission, to further underline and formalise the statement of concerns of DG Competition regarding the disclosure of the Requested Documents in the proceedings before you. At the same time, I would like to offer my availability to answer any questions you might have or to give any further explanations you might need with regard to the following statement of our concerns.

6. The following paragraphs describe the relevant EU law framework as set out in the EU Directive on Antitrust Damages Actions[1] and other legal texts, which informs the position of DG Competition on the Order and the Production Request.

7. The concerns set out below are based on the relevant EU law framework, as it applies to disclosure in damages actions before the national courts of the EU Member States ("EU national courts"). We would respectfully request that these principles and limitations should be accorded recognition by non-EU courts in the light of the principle of international comity. These concerns have been successfully invoked by the Commission, by reference to principles of international comity, in a number of interventions[2] before courts in the United States or in connection with proceedings before US courts.

8. Of particular relevance for the case at hand are those rules and principles laid down in the EU Directive on Antitrust Damages Actions which are applicable when parties ask EU national courts to order the disclosure of evidence included in the file of a competition authority (i.e. a competition authority of an EU Member State or the European Commission as European competition authority). Those rules and principles aim at striking the appropriate balance between the interest of antitrust damages claimants to obtain the disclosure of evidence relevant to their claim and the interest of the competition authority in protecting the effectiveness of its law enforcement procedures in particular where an enforcement procedure is still on-going. In the present case, the Commission's procedure in case AT.40606 *Farmed Atlantic Salmon*, in which the Defendants are being investigated under EU competition rules, is still on-going.

9. According to Article 6.5.(a) of the EU Directive on Antitrust Damages Actions, in case information included in a competition authority's file was prepared by a natural or legal person specifically for the proceedings of a competition authority, EU national courts may order the disclosure of this evidence only after a competition authority, by adopting a decision or otherwise, has closed its proceedings. This rule is also reflected in Article 16a.3 of Regulation (EC) 773/2004, which was introduced[3] to align the rules on the proceedings of the Commission with the rules of the EU

---

[1] Directive 2014/104/EU of the European Parliament and of the Council of 26 November 2014 on certain rules governing action for damages under national law for infringements of the competition law provisions of the Member States and of the European Union, OJ L 349, 5.12.2014, p. 1-19 (the "EU Directive on Antitrust Damages Actions").

[2] Most recently, the Commission's services have intervened in re Jeffrey Laydon v. Mizuho Bank, Ltd.; Case No. 12-CV-3419 (S.D.N.Y. 2014). See also Commission's interventions in (i) re Air Cargo Shipping Services Antitrust Litigation, M.D.L. No. 1775 (E.D.N.Y), (ii) re TFT-LCD (Flat Panel) Antitrust Litigation, No. M: 07-1827 (N.D. Cal. 2011), Special Master's Order Denying Motion of Direct Purchaser Plaintiffs to Compel Hitachi to Produce Foreign Regulatory Documents, No. M:07-cv-01827-si (April 26, 2011) (iii) Re Vitamins Antitrust Litigation, Misc. No. 99-197, Docket No. 3079 (D.D.C. May 20, 2002) or (iv) Re: Methionine Antitrust Litigation, No. C-99-3491, MDL no. 1311 (N.D. Cal. June 17, 2002).

[3] Commission Regulation (EU) 2015/1348 of 3 August 2015 amending Regulation (EC) No 773/2004 relating to the conduct of proceedings by the Commission pursuant to Articles 81 and 82 of the EC Treaty, OJ L 208, 5.8.2015, p. 3–6.

Directive on Antitrust Damages Actions, restricting the use of information by parties to the Commission proceedings. Applied to the present case, in which the Commission's proceedings are still on-going, the provisions of EU law would e.g. prevent disclosure of the replies the Defendants, in relation to possible Commission requests for information, would have already submitted and would in future submit to the Commission as long as the Commission has not, by adopting a decision or otherwise, closed its proceedings. This understanding of Article 6.5.(a) is also confirmed by recital 25 of the EU Directive on Antitrust Damages Actions with specific reference to replies to competition authorities' requests for information. The rationale behind this rule is that early disclosure of documents specifically created for the purposes of the Commission's proceedings would unduly interfere with the on-going Commission proceedings. Disclosure of the investigated parties' replies to Commission requests for information would also contribute to revealing the Commission's investigative strategy by indicating which questions the Commission asked to the investigated parties and which documents it requested from them.

10. According to Article 6.6. of the EU Directive on Antitrust Damages Actions, for the purpose of actions for damages, EU courts cannot at any time order a party or a third party to disclose leniency statements[4] or settlement submissions[5]. Indeed, the Commission considers that the disclosure of leniency statements and settlement submissions is liable to have detrimental effects on the effectiveness of the enforcement of the EU competition rules by the Commission by deterring undertakings from cooperating with the Commission. Leniency programs and settlement procedures are considered to be of utmost importance for the work of the Commission in detecting and sanctioning cartel infringements.[6]

11. Apart from leniency statements, settlement submissions and other documents specifically created for the purposes of a competition authority's proceedings, another category under EU law are pre-existing documents, which exist independently from competition authorities' proceedings and which are contemporaneous to the behaviour a competition authority is investigating. The category of pre-existing documents includes documents copies of which a competition authority, such as the Commission, obtained through inspections it conducted at the investigated parties.

12. Under EU law, pre-existing documents are not, as such, protected from disclosure. Nevertheless, proportionality criteria that apply to any orders and requests for the

---

[4] Article 2(16) of the EU Directive on Antitrust Damages Actions defines 'leniency statement' as *"an oral or written presentation voluntarily provided by, or on behalf of, an undertaking or a natural person to a competition authority or a record thereof, describing the knowledge of that undertaking or natural person of a cartel and describing its role therein, which presentation was drawn up specifically for submission to the competition authority with a view to obtaining immunity or a reduction of fines under a leniency programme, not including pre-existing information"*.

[5] Article 2(18) of the EU Directive on Antitrust Damages Actions defines 'settlement submission' as *"a voluntary presentation by, or on behalf of, an undertaking to a competition authority describing the undertaking's acknowledgement of, or its renunciation to dispute, its participation in an infringement of competition law and its responsibility for that infringement of competition law, which was drawn up specifically to enable the competition authority to apply a simplified or expedited procedure"*.

[6] See also recital 26 of the EU Directive on Antitrust Damages Actions.

disclosure of any type of documents remain applicable in their regard, and, in particular, to orders and requests concerning documents included in the file of a competition authority. In this context, we note that the Plaintiffs' Production Request is framed in very broad terms, as it simply seeks disclosure of *"All documents produced by you to any government or government agency outside of the United States, including but not limited to representatives of the European Commission and the European Union, in connection with any investigation relating to alleged anticompetitive or antitrust activities or conduct in the salmon market"*. In this respect, I would draw your attention to Article 6.4.(a) of the Directive on Antitrust Damages Actions and its recital 23. Article 6.4.(a) requires an EU national court, which is seized of a damages action, when assessing the proportionality of an order to disclose information, to consider *"whether the request has been formulated specifically with regard to the nature, subject matter or contents of documents submitted to a competition authority or held in the file thereof, rather than by a non-specific application concerning documents submitted to a competition authority"*. In this context, recital 23 explains that *"The requirement of proportionality should be carefully assessed when disclosure risks unravelling the investigation strategy of a competition authority by revealing which documents are part of the file or risks having a negative effect on the way in which undertakings cooperate with the competition authorities. ... Disclosure requests should therefore not be deemed to be proportionate where they refer to the generic disclosure of documents in the file of a competition authority relating to a certain case, or the generic disclosure of documents submitted by a party in the context of a particular case. Such wide disclosure requests would not be compatible with the requesting party's duty to specify the items of evidence or the categories of evidence as precisely and narrowly as possible."*

13. With regard to its investigation in case AT.40606 *Farmed Atlantic Salmon*, the Commission considers that the very broad scope of the Production Request risks unravelling the Commission's investigation strategy by revealing which documents are part of its file and also risks having a negative effect on the way in which the Defendants cooperate with the Commission in that case. This is a matter of serious concern, particularly because the Commission's investigation is still on-going.

14. In conclusion, as a matter of international comity, DG Competition has serious concerns regarding the disclosure of the Requested Documents in the proceedings before the Court, in so far as, and subject to the meaning of 'documents *produced* to the European Commission'[7], the Production Request:

    - does not exclude leniency statements and settlement submissions; and

    - relates to other documents that the Defendants would already have specifically created, or would in future specifically create, for the proceedings of the Commission in case AT.40606 *Farmed Atlantic Salmon* before these proceedings are closed; and

---

[7] See point 3. above.

- is generically and unspecifically formulated by reference to all pre-existing documents copies of which the Commission would already have obtained from the Defendants, or would in future obtain from the Defendants, in its proceedings in case AT.40606 *Farmed Atlantic Salmon.*

15. Finally, as a matter of international comity, I do not think that our above-described concerns could be accommodated by a protective order allowing disclosure to a confidentiality ring of external counsels only. This would mean that documents already produced by the Defendants to the Commission and in future to be produced by them to the Commission would still be disclosed (in this case to the Plaintiffs' external counsels) in the ongoing antitrust litigation before the Court. In fact, as above described, our concerns about the disclosure of the Requested Documents relate to the effectiveness of the Commission's competition law enforcement powers and exist independently from the confidential or non-confidential content of these documents. A confidentiality ring would therefore not accommodate the Commission's concerns that

    - leniency statements and settlement submissions shall never be disclosed (see above point 10);

    - documents that the Defendants would already have specifically created, or would in future specifically create, for the proceedings of the Commission in case AT.40606 *Farmed Atlantic Salmon* shall not be disclosed before these proceedings are closed (see above point 9);

    - disclosure by a generic and unspecific reference to all pre-existing documents, copies of which the Commission would already have obtained from the Defendants, or would in future obtain from the Defendants, in its proceedings in case AT.40606 *Farmed Atlantic Salmon,* would not be proportionate and risk unravelling the Commission's investigation strategy by revealing which documents are part of its file (see above point 12).

    Such disclosure to a confidentiality ring of external counsels only would also be liable to have a negative effect on the Defendants' willingness to cooperate with the Commission in case AT.40606 *Farmed Atlantic Salmon* and would thus also from this perspective again be a matter of serious concern for the effectiveness of the Commission's competition law enforcement powers, particularly because the Commission's investigation is still on-going.

16. As mentioned, together with my services at DG Competition, I am available to answer any questions you might have or to give any further explanations you might need with regard to the above statement of our concerns. In particular, if you considered taking steps which might affect the Commission`s interests as antitrust enforcement authority and its concerns about the investigation in case AT.40606 *Farmed Atlantic Salmon* as above described, I would appreciate if you informed DG Competition beforehand.

17. Please note that this letter is not a formal Decision of the Commission, but represents the views of DG Competition, which is in charge of pursuing the Commission's antitrust investigations. This letter should not be construed as being in support of any particular party in the pending antitrust litigation before your Court. Its sole purpose is to safeguard the interests of the Commission as an antitrust enforcement authority.

18. For the avoidance of doubt, please note that I am not requesting to keep this letter under seal. Moreover, in accordance with what we understand to be the normal practice in civil litigation procedures before courts in the United States, we will also send a copy of this letter to the external counsels of the Plaintiffs and the Defendants for their information only.

Yours sincerely,

*(e-signed)*

**Olivier GUERSENT**
Director General
DG Competition