**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 19-21551-CIV-ALTONAGA/Louis**

In re:

**FARM-RAISED SALMON AND**
**SALMON PRODUCTS ANTITRUST**
**LITIGATION**.

_____/

**ORDER**

**THIS CAUSE** came before the Court on Defendants' Motion to Reconsider Third Scheduling Order Based on New Information, or in the Alternative for a Protective Order ("Mot. Recons.") [ECF No. 221], filed on May 8, 2020. Defendants ask the Court to reconsider its April 6, 2020 Third Scheduling Order [ECF No. 207] that both stays discovery while Defendants challenge the sufficiency of the Consolidated Amended Direct Purchaser Class Action Complaint [ECF No. 168] and allows Plaintiffs the ability to obtain documents already produced by Defendants to the United States Department of Justice ("DOJ") and other foreign and domestic government entities. Plaintiffs filed a Motion to Compel the Production of Documents in Accordance with the Court's Order [ECF No. 220-1], which the Court converted into a response to the Motion to Reconsider (*see* May 8, 2020 Order [ECF No. 218]). Defendants thereafter filed their Reply Memorandum [ECF No. 226]; and Plaintiffs filed a Sur-Reply [ECF No. 228], as they were permitted to do by the May 8, 2020 Order. The Court has reviewed the many exhibits accompanying the parties' written submissions, a May 18, 2020 Letter from the European Commission ("EC" or "Commission") expressing the Commission's concerns about allowing discovery of documents ("EC Documents") Defendants produced to the Commission (*see* May 18, 2020 EC Letter [ECF No. 227-1]), and applicable law.

After the Third Scheduling Order, and upon being contacted by Defendants, the EC notified Defendants that the disclosure to Plaintiffs of documents in its file, seized from or produced by Defendants, "risks unravelling the Commission's investigative strategy by revealing which documents are part of its file and also risks having a negative effect on the way in which the Defendants cooperate with the Commission." (Mot. Recons. 6 (internal quotation marks, citation, and alteration omitted)). As reasons militating in favor of reconsideration of the Third Scheduling Order, Defendants emphasize: (1) the Commission's opposition, which they say creates additional burdens for the parties and raises important comity issues weighing against production of the EC Documents; (2) Defendants' extant production to Plaintiffs of more than 150,000 documents previously produced to the DOJ; and (3) Plaintiffs' ability to obtain the EC documents through subject-based document requests rather than as a request for the set of documents produced to the EC. (*See id.* 1–9). One of the described burdens of production, according to Defendants, is that they will have to review the EC documents and redact personal data as required by the General Data Protection Regulation ("GDPR") (EU) 2016/679. (*See id.* 5 n.2; 14–15). Alternatively, Defendants suggest good cause exists for the Court to issue a protective order precluding production of the EC Documents at this stage of the litigation under Federal Rule of Civil Procedure 26(c) and upon a balancing of the five international comity factors recognized in *Société Nationale Industrielle Aérospatiale v. U.S. District Court*, 482 U.S. 522 (1987). (*See id.* 9–16).

Plaintiffs oppose reconsideration, presenting several countervailing arguments, several of which are addressed in this Order.[1] First, Plaintiffs state they have agreed to exclude from their requests for production documents prepared by Defendants specifically for the EC's investigation, such as Defendants' written replies to EC requests for information; and leniency statements of

---

[1] The Court elects not to address whether Defendants satisfy the standard for reconsideration — which Plaintiffs insist they do not meet (*see* Sur-Reply 4–11) — and proceeds directly to the merits.

settlement submissions. (*See* Resp. 2, 5; Sur-Reply 2).[2] Plaintiffs' requests are now limited to pre-existing documents, such as business records, that exist independently from the EC's investigation and that the EC has already obtained from Defendants. (*See* Resp. 2; Sur-Reply 2). Plaintiffs point out the EC has acknowledged this latter category of documents is not protected from disclosure, and the EC does not explain how producing the pre-existing business records impedes the EC investigation or somehow reveals its strategy. (*See* Resp. 2; Sur-Reply 2–3). The Court agrees with Plaintiffs their narrowing of the scope of document requests, combined with the nature of the business records sought, alleviate the EC's concerns expressed in its May 18, 2020 EC Letter.

Plaintiffs next argue there is no true conflict between EU law and the Third Scheduling Order, and thus no need to undertake the *Aérospatiale* five-factor comity analysis. (*See* Sur-Reply 7–8). In this, too, they are correct. "A district court only reaches the issue of comity if it finds a true conflict exists, that is, when the laws of one country 'require conduct that violates the laws of the other.'" *Yukos Capital S.A.R.L. v. Oao Samaraneftegaz*, 592 F. App'x 28, 29 (2d Cir. 2015) (alteration adopted; quoting *In re Maxwell Commc'n Corp. plc by Homan*, 93 F.3d 1036, 1050 (2d Cir. 1996)). Here, the EU has conceded "[u]nder EU law, pre-existing documents are not, as such, protected from disclosure[]" (May 18, 2020 EC Letter ¶ 12 (alterations added)); and while the EC cites to rules of procedure such as Article 6.4.(a) and recital 23 of the Directive on Antitrust Damages Actions, those rules are restricted to orders of EU courts (*see id.*; Sur-Reply 7).

Plaintiffs explain the GDPR does not require Defendants to redact information from responsive documents, as the GDPR allows for disclosure that would otherwise be prohibited so long as the disclosure is "necessary for the purposes of the legitimate interests pursued by . . . a

---

[2] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

third party." (Resp. 8–9 (alteration in original; internal quotation marks omitted; quoting GDPR, art. 6(1)(f))). The exception includes disclosure when the information to be produced "is necessary for the establishment, exercise or defense of legal claims." (*Id.* 9 (internal quotation marks omitted; quoting GDPR, art. 49(1)(e))). Certainly, Plaintiffs will need and want disclosure of personally identifiable information in Defendants' documents, such as the names of Defendants' employees with knowledge of the relevant facts. The Court agrees with Plaintiffs it would not appear to violate the GDPR for Defendants to produce documents already obtained by foreign entities without redaction.

Finally, assuming an international comity analysis should be performed, Plaintiffs assert the Third Scheduling Order satisfies the five-factor *Aérospatiale* comity analysis. (*See* Resp. 10–14; Sur-Reply 8–11). The *Aérospatiale* comity analysis requires a court balance the following factors:

> (1) the importance to the litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

482 U.S. at 544 n.28 (alteration adopted; internal quotation marks and citation omitted).

The information Plaintiffs seek is crucial to the litigation, as the EC Documents presumably contain information concerning the same allegedly unlawful, anticompetitive conduct described in the Amended Complaint, including names of employees with knowledge of the facts underlying Plaintiffs' claims. The document request is specific, as Plaintiffs seek a discrete set of documents tied directly to Plaintiffs' claims, which include allegations that Defendants' anticompetitive conduct in Norway and across the world damaged direct purchasers of salmon products in the United States. (*See* Am. Compl. ¶¶ 82–114; 126–27). The third factor favors Defendants, as

4

admittedly the information Plaintiffs seek originated outside the United States. While Defendants insist an alternative means to secure the information exists by Plaintiffs serving subject-based document requests, having Defendants turn over documents already obtained by the EC is a far more inexpensive and efficient avenue by which to deliver to Plaintiffs this initial set of relevant documents. *See, e.g.*, *In Sovereign Bonds Exch. LLC v. Fed. Rep. of Ger.*, No. 10-21944-Civ, 2010 WL 11442753, at *2 (S.D. Fla. Sept. 13, 2010).

Balancing the national interests is the last factor to consider and is "ordinarily the most important factor[.]" *In re Commodity Exch., Inc., Gold Futures and Options Trading Litig.*, No. 14-MD-2548, 2019 WL 1988525, at *5 (S.D.N.Y. May 6, 2019) (alteration added). Indeed, "[w]hen balancing national interests, the federal interest in full development of the facts should be given material weight." *Consejo De Defensa Del Estado De La Republica de Chile v. Espirito Santo Bank*, No. 09-20613-Civ, 2010 WL 2162868, at *2 (S.D. Fla. May 26, 2010) (alteration added; citation omitted). The U.S. interest in requiring that Defendants produce documents previously given to the EC without unnecessary redactions is substantial, as this case concerns allegations of foreign companies conspiring to fix prices paid by U.S. purchasers for a product in violation of U.S. antitrust laws. "Every violation of the antitrust laws is a blow to the free-enterprise system envisaged by Congress." *Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 262 (1972) (citation omitted). Norway's and the EU's interests in preventing disclosure of the narrowed category of documents at issue appear minimal; any sensitive data meriting protection may be addressed by a protective order, if necessary.

In sum, the Court agrees balancing the five *Aérospatiale* factors favors the complete production of documents in accordance with U.S. law. While the Court appreciates the EC's concerns, given the categories of documents Plaintiffs have now eschewed in their written briefing

5

(and of which the EC may not have been aware), the Court sees little, if any, risk to the EC's investigative strategies from Defendants' production of business records that pre-existed the EC investigation. *See, e.g.*, *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720, 2010 WL 3420517, at *10 (E.D.N.Y. Aug. 27, 2010) (while finding the Commission's interest in confidentiality prevailed and denying the plaintiffs production of Statement of Objections and Oral Hearing, the court stated "the plaintiffs are entitled to discovery of the defendants' existing business documents, including those that were disclosed to the European Commission."); *Emerson Elec. Co. v. Le Carbone Lorraine, S.A.*, Civ. A. No. 05-6042, 2008 WL 4126602, at *8 (D.N.J. Aug. 27, 2008) (in ordering production of documents, the court noted "as [p]laintiffs are seeking only information [the defendant] was already compelled to turn over to the European Commission in a case about this same conspiracy, it does not appear that the scope of the discovery is so broad as to offend the EC or French tribunals." (alterations added)).

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Defendants' Motion to Reconsider Third Scheduling Order Based on New Information, or in the Alternative for a Protective Order **[ECF No. 221]** is **DENIED**.

**DONE AND ORDERED** in Miami, Florida, this 3rd day of June, 2020.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record