**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 19-21551-CIV-ALTONAGA/LOUIS

In re:

FARM-RAISED SALMON
AND SALMON PRODUCTS
ANTITRUST LITIGATION
_____/

**STIPULATED ORDER GOVERNING DISCOVERY**
**OF ELECTRONICALLY STORED INFORMATION**

This Order will govern discovery of electronically stored information as a supplement to the Federal Rules of Civil Procedure and any other applicable orders, rules, and guides, including this Court's ESI Checklist. All disclosures and productions made pursuant to this Stipulated Order Governing Discovery of Electronically Stored Information ("ESI Protocol") will be subject to the Stipulated Protective Order ("Protective Order").

**I.     DEFINITIONS**

For purposes of this Protocol and these Actions, aside from the following definitions, all technical terms used herein shall be interpreted according to their usual and customary meaning, and understanding, of those terms in the eDiscovery field.

**A.**     "Custodial data source" means any document source used by a custodian to store documents or information and includes, but is not limited to, personal computers, laptop computers, work stations, email (whether stored locally or centrally), calendars, mobile devices (such as cellphones, pagers, blackberries, or tablets), shared network servers, shared storage systems, shared or individual network folders (excluding network folders used by departments, business units, or divisions included under non-custodial data sources) that are controlled or

managed by a single individual, and structured data systems if maintained or used by a single individual.

      **B.**      "Documents" shall have the same definition as set forth in Federal Rule of Civil Procedure 34, and when used herein, refer to both ESI (including, but not limited to, loose documents/unstructured data, email, structured data, and data compilations) and hard copy documents.

      **C.**      "Document family" refers to the association between an attachment and its parent document, *e.g.*, an email and all associated attachments and any files embedded in those attachments (the email being the "parent" and the attachments and embedded files being the "children") or a PowerPoint presentation with embedded files (the PowerPoint being the "parent" and the embedded files being the "children").

      **D.**      "Electronically stored information" or "ESI," as used herein, means and refers to computer generated information or data of any kind, stored in or on any storage media located on computers, cellular telephones, file servers, disks, tape or other real or virtualized devices or media.

      **E.**      "Metadata" means and refers to data about data, and includes without limitation (i) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, usage and/or validity of the electronic file and/or (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted or otherwise manipulated by a user of such system.

      **F.**      "Media" means an object or device, including but not limited to a disc, tape, computer or other device.

**G.**     "Native Format" means and refers to the format of ESI in which it was generated and/or as used by the Producing Party in the usual course of its business and in its regularly conducted activities (in contrast to a representation of ESI produced by converting a native file into a standard image format capable of being viewed and printed on standard computer systems, such as .tiff or .pdf).

**H.**     "Non-custodial data source" means any data source that is not kept, maintained, or used exclusively by any particular agreed or potential custodian. These sources will typically include those sources used by multiple individuals, by any department, business unit, or division of a Producing Party, or that are kept or maintained by such departments, business units, or divisions. For purposes of clarity, a non-custodial data source includes, but is not limited to, shared storage systems or other shared information sources (such as collaboration software, cloud-based sources, shared network folders or electronic mail folders used by, or assigned or allocated to, any relevant department, business unit, or division of a party); structured data sources; or shared hard copy repositories.

**I.**     "OCR" means the optical character recognition file that is created by software used in conjunction with a scanner that is capable of reading text-based documents and making such documents searchable using applicable software.

**J.**     "Parties" means or refers to the named plaintiffs and defendants in the above-captioned matter, as well as any later added plaintiffs and defendants.

**K.**     "Producing Party" refers to a party or non-party that produces Discovery Material or otherwise discloses information through discovery.

**L.**     "Receiving Party" refers to a party that possesses or receives Discovery Material from a Producing Party.

**M.**     "Search Term" means a word or a string of words or phrases joined by proximity and Boolean connectors and other syntax designed to capture potentially relevant ESI.

**N.**     "Structured Data" means data that resides in a fixed field within a record or file, or stored in a structured format, such as databases (such as Oracle, SQL, Access) or data sets, according to specific form and content rules as defined by each field of the database.

**O.**     "TAR" (Technology-Assisted Review) means a process for prioritizing or coding a collection of ESI using a computerized system, using algorithms or systematic rules, that harnesses human judgments on a smaller set of Documents and then extrapolates those judgments to the remaining Documents in the collection.

**P.**     "Unstructured Data" refers to free-form data which either does not have a data structure or has a data structure not easily readable by a computer without the use of a specific program designed to interpret the data, including but not limited to, word processing Documents, PowerPoint and comparable presentations, email, PDFs, Excel spreadsheets and comparable spreadsheets, webpages, blogs, image files, audio and video files, instant messages, text messages, and others of similar variable format.

## II.     **COOPERATION**

The Parties are familiar with the December 1, 2015, amendments to the Federal Rules of Civil Procedure governing discovery, and they are aware of the corresponding importance the Court places on cooperation. The Parties commit to cooperate in good faith throughout the matter consistent with the Federal Rules of Civil Procedure and any other applicable orders and rules.

## III.    **SCOPE**

The production specifications in this Order apply to documents that are processed (an eDiscovery workflow where collected raw documents are ingested into a program designed to

extract metadata and searchable text in a normalized format) in the first instance in this litigation. To the extent any Party is required to or agrees to produce documents in this litigation that originally were processed as part of a response to a government investigation, historical litigation, or other matter, such documents may be produced in a manner and form consistent with how the documents were originally processed.

## IV.     PRESERVATION AND DOCUMENT RETENTION

The Parties agree that they shall continue to take reasonable steps to preserve relevant ESI that may exist in accordance with their obligations under applicable law. The Parties will meet and confer regarding custodians, data sources, date ranges, and categories of information that are potentially relevant to this litigation.

## V.     SEARCH PROTOCOL

**A.     Duty to Meet and Confer**. The Parties agree that in responding to requests pursuant to Federal Rules of Civil Procedure, they will meet and confer about the methodology to be used to search for ESI containing potentially discoverable information in advance of producing documents, including but not limited to the use of search terms and TAR. A Producing Party that intends to use search terms shall describe (a) the criteria used to identify the universe of ESI to which search terms will be applied (*e.g.*, custodians, date range), and (b) the search terms applied. A Producing Party who intends to use TAR to determine responsiveness shall describe (a) the TAR technology and system to be used, (b) the criteria used to identify the universe of ESI to which TAR will be applied (*e.g.*, custodians, date range), (c) the methodology for training the TAR model, and (d) the reporting that will be provided regarding TAR, to provide a means of assessing the veracity of the TAR Process.

**B.** **Search Methodology for Unstructured Data (including Use of Search Terms).**

Where potentially responsive ESI, unstructured data, and documents shall be searched using search terms, the Parties agree that the Producing Party will investigate what search terms and source files will be reasonably likely to uncover responsive information and then disclose those search terms and source files to the Receiving Party. Specifically, a Producing Party shall disclose the custodians or other non-custodial sources, date range, and search terms or queries, if any, and methodology that it proposes to use to locate ESI likely to contain discoverable information. Use of narrowing search criteria (*e.g.*, "and," "but not," "w/[#]") is encouraged to tailor the production. The Parties agree to meet and confer, in good faith, on matters of document collection and review. The Producing Party will consider in good faith proposals from the Receiving Party regarding custodians, search methodology, and/or search terms. Any disputes may be brought to the Court for resolution.

The Parties acknowledge that there may be subsequent instances where potential modification to a previously agreed upon search protocol may be warranted. Should such an instance arise, either the Producing Party will disclose such modification or the Requesting Party may request the Producing Party consider modification. The Parties agree to meet and confer about modifications to a search methodology. Similarly, the Parties acknowledge that new claims or defenses, rulings on dispositive motions, further inquiry, and newly acquired information may impact the custodians and data sources to be searched. If that occurs, the Parties will meet and confer concerning whether to add or eliminate key data sources or custodians from their agreed lists.

The Producing Party will make good faith and reasonable efforts to confirm that its production includes any specific documents known to be within the scope of the Producing Party's

offer of production in response to the document requests, notwithstanding the application of the search methodologies described herein that may not capture such materials.

C.    **Search Methodology for Structured Data**. If ESI responsive to discovery requests is located in Structured Data sources (such as ESI contained in, but not limited to, enterprise databases or database management systems such as Oracle, SQL server, DB2, or comprehensive electronic accounting systems), the Parties shall meet and confer regarding the production format, content, and scope of structured data to be produced. The Producing Party shall make reasonable efforts to disclose information necessary to facilitate the meet and confer discussions, including data dictionaries and samples of data containing data fields and other similar information. To the extent information is not available in its native form, the Parties agree to meet and confer regarding what format would be reasonably usable.

D.    **Inaccessible ESI**. If the Receiving Party intends to seek discovery of ESI that the Producing Party contends is not reasonably accessible because of undue burden or cost pursuant to Federal Rule of Civil Procedure 26(b)(2)(B), the Parties shall promptly meet and confer in an attempt to resolve any dispute as to whether and how the Producing Party will proceed with the retrieval and production.

E.    **Review for Responsiveness and/or Privilege**. Irrespective of any search methodology utilized by the Parties, the Producing Party, at its election, may review ESI for responsiveness, privilege, and confidentiality prior to producing documents to another Party. The Parties acknowledge their obligation to produce privilege logs pursuant to Southern District of Florida Local Rule 26.1, and that the Rule also permits the Parties to modify any practice or procedure governing discovery. For ESI, the Parties agree to produce privilege logs within 30 days after a document (or portion thereof) is withheld from production due to privilege and to produce

privilege logs containing the metadata set forth in Appendix A in Excel spreadsheets for each such document. The Producing Party shall create an additional field in the privilege log that identifies the privilege asserted. The Producing Party shall provide a key identifying all of the individuals whose names appear in the privilege log that are asserted to be attorneys. The Producing Party shall also provide a key that links email addresses to individual names and company title. Metadata that is itself asserted to be privileged may be redacted. The Receiving Party may request the justification for the asserted privilege on a document-by-document basis after reviewing the initial privilege logs. Non ESI must be logged in the manner provided in the local rules, with the exception of the time required for logging, which shall be within 30 days after a document (or portion thereof) is withheld from production due to privilege. This provision may be further modified by the agreement of the parties or by order of the Court on a showing of good cause.

F.    **Continuing Obligations**. The Parties will continue to meet and confer regarding search methodologies as necessary and appropriate, including agreeing to modifying this ESI Protocol as appropriate. This ESI Protocol does not address or resolve any other objection to the scope of the Parties' respective discovery requests.

G.    **Production Format For ESI**. The Parties agree to produce electronic documents in the format(s) and manner described below:

1.    **Native Files**. The Producing Party will produce in Native Format all non-privileged audio, video, PowerPoint, and spreadsheet-type files, including but not limited to Microsoft Excel and CSV. Any native files that are produced shall be produced with all agreed-to extracted text and applicable metadata fields. Where native files are produced but not TIFF images, each native file will be assigned a unique Bates number. The Producing Party will produce a placeholder (a single-page TIFF slip

8

sheet indicating that the native item was produced and complying with the Bates numbering and confidentiality identifying requirements below) along with the file itself in Native Format. To the extent that either Party believes that native files should be produced for a specific document or class of documents not required to be produced in Native Format pursuant to this protocol, the Parties should meet and confer in good faith. If documents requested in Native Format require redactions, the Parties will produce TIFF images for those documents.

2.   **Document Image Format/TIFF**. All other responsive non-privileged documents, excluding structured data, shall be produced electronically as a single-page, black and white, Group IV, 300 dots per inch ("DPI") TIFF image. The document's original orientation shall be maintained (*i.e.*, portrait-to-portrait and landscape-to-landscape).

3.   **Text Files**. For each document produced, a single text file shall be provided along with the image files and the metadata discussed below. Electronic text must be extracted directly from the native electronic file unless the document requires redaction, is an image file, or is any other native electronic file that does not contain text to extract (*e.g.*, non-searchable PDFs). In these instances, a text file shall be created using OCR and shall be produced in lieu of extracted text. Extracted text shall be provided in UTF-8 format text format.

4.   **Document Unitization**. For files produced as TIFF images, each page of a document shall be electronically saved as an image file. If a document consists of more than one page, the unitization of the document and any attachments shall be maintained as it existed in the original when creating the image files.

5.      **Duplicates**. Removal of duplicate documents will only be done on exact duplicate documents at the family level (based on MD5, SHA-1, or Body SHA hash values). The Parties shall de-duplicate exact duplicates of ESI horizontally (*i.e.*, across the entire collection and across custodians). Deduplication must be done only at the family level (*i.e.*, if there are identical child documents that have unique parents, they are not duplicates; an attachment to a document is not a duplicate of the same document maintained as a standalone document). An email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in the BCC or other blind copy field, even if all remaining content in the email is identical. Exact duplicates of emails retrieved from different storage locations (*i.e.*, desktop vs. laptop vs. smart phone) shall not be considered unique based solely on the originating storage location. For exact duplicate documents, the Producing Party will produce a single copy of the family of responsive documents ("Single Production Copy"), as well as the metadata described herein for the Single Production Copy. The Producing Party shall populate a field of data that identifies each custodian who had a copy of the produced document in addition to a separate field of data identifying the custodian whose document is produced. Any document that contains an alteration, marking, or addition to the original document shall be treated as a distinct version and shall be produced as such. These alterations include, but are not limited to, handwritten notes, electronic notes/tabs, edits, highlighting or redlining. If the Producing Party becomes aware of any responsive file that was incorrectly filtered during the de-duplication process, the Producing Party shall promptly notify the other Party and

produce or privilege log the incorrectly filtered file. Absent agreement, thread suppression of emails is not permitted in productions. The Parties agree to meet and confer over any disputes regarding deduplication protocols prior to seeking judicial intervention.

6.    **De-NISTing and Filtering**. Non-user generated files may be removed from review and production using the list of non-user generated files maintained by the National Institute of Standards and Technology (NIST). The Producing Party may also cull system and technical files based on file extension that are unlikely to contain potentially relevant content. Upon request, the Producing Party will disclose the list of filetypes and file extensions removed through this culling.

7.    **Color**. The Producing Party shall produce documents in color where color is necessary to understand the meaning or content of the document. If good cause exists for the Receiving Party to request production of specific documents in color, the Receiving Party may request production of such documents in color by providing (1) a list of the Bates numbers of documents it requests to be produced in color format; and (2) an explanation of the need for production in color format. Documents requiring color should be produced as single-page, JPG images and a high-quality setting as to not degrade the original image.

8.    **Bates Numbering and Other Unique Identifiers**. Bates numbers, confidentiality designations (in accordance with the Protective Order), and redactions (to the extent they are necessary) should be burned into the image in a manner that does not obscure or conceal any non-redacted information. Each TIFF image should have a unique filename, which corresponds to the Bates number of that page. The filename

should not contain any blank spaces and should be zero-padded (*e.g*., ABC-000001), taking into consideration the estimated number of pages to be produced. If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in the cover letter. Bates numbers will be unique across the entire production and prefixes will be consistent across all documents a Party produces in this litigation. Any native files that are produced with a TIFF slip sheet, as referenced above, should burn on the TIFF slip sheet both the Bates number of the document and the confidentiality designation.

9. **Load Files**. Each production of ESI and Documents shall be accompanied by Concordance or comma delimited load files (.dat and .opt). The .dat file shall contain all fielded data for the production, including the beginning bates number for each record, the relative path to the text files for each record, and, for native files, the relative path to the native file for each record. The .dat file shall also provide all metadata fields identified in Appendix A. The .opt files provide image cross reference files for all TIFF images (including native placeholders and placeholder docs for family members withheld for privilege or work-product protection) and shall identify document breaks for an image. The Parties shall adhere to the production delivery requirements for these load files set forth in the next paragraph.

10. **Production Media.** Documents shall be produced secure file transfer site or FTP, on CD-ROM, DVD, external hard drive (with standard PC compatible interface), or such other readily accessible computer or electronic media as the Parties may hereafter agree upon (the "Production Media"). The Producing Party shall

accompany all document productions with a letter identifying the production date and the Bates number range of the materials contained on such Production Media item. The Parties agree, where possible, to produce via file transfer site or FTP. Productions shall have the following four directories: (1) IMAGES for the images; (2) DATA for the .dat and .opt files; (3) TEXT for the extracted text/OCR files; and (4) NATIVES for any native Excel or other files that cannot be understood reasonably unless displayed in native format. The Producing Party shall identify: (a) the Responding Party's name; (b) the production date; and (c) the Bates Number range of the materials contained on the Production Media.

11. **Metadata**. The Parties agree to produce metadata fields (to the extent reasonably available) to accompany each produced ESI file. Appendix A identifies the metadata fields that will be produced. Unless otherwise specified, by producing metadata, the Producing Party affirms that such metadata is consistent with the metadata in its records, with the exception of metadata requiring redaction for attorney-client privilege (or other categories of protected information) and vendor-entered source/custodian and document/production number fields. The Parties will meet and confer in good faith prior to the production of documents, with technical experts as needed, to clarify or resolve any issues (*e.g.*, definitions of metadata fields, inconsistencies, burden) concerning the production of metadata and will modify this order to reflect any changes hereto.

12. **Parent-Child Relationships**: Family documents are to be produced contemporaneously and sequentially, with children immediately after the parent document. If any member of a family is responsive, the entire family shall be

produced, except for any portions of the document family that may be withheld or redacted on the basis of privilege or work-product protection. The Parties shall take reasonable steps to ensure that parent-child relationships within a document family (the association between an attachment and its parent document) are preserved. Each document shall be produced with the Bates number for the first and last page of that document in the "BegDoc" and "EndDoc" fields of the data load file and with the "BegAttach" and "EndAttach" fields listing the Bates number for the first and last page in the document family. The Parties agree to meet and confer to address situations in which a party believes that parent-child relationships have not been adequately preserved.

13. **Track Changes and Comments & Hidden Content**. To the extent that a document contains tracked changes or comments, speaker notes, or hidden text, and may be produced as a TIFF under this protocol, the document should be imaged showing tracked changes and comments, speaker notes, and any other hidden text. The extracted text shall include all non-privileged or protected text from tracked changes and comments, speaker notes, and any other hidden text.

14. **Encrypted Data**. To the extent documents were encrypted, the Producing Party shall make reasonable efforts to decrypt the documents prior to electronic search, review, and production. If the Receiving Party receives a document that is encrypted, upon request, the Producing Party agrees to meet and confer regarding efforts to decrypt the document.

15. **Password Protected Files**. To the extent documents were password protected at the time of collection, prior to electronic search, review, and production, the

Producing Party shall take reasonable efforts to remove the password protection. If the Receiving Party receives a document that is password protected, upon request, the Producing Party agrees to meet and confer regarding efforts to remove the password protection.

16. **Hyperlinked Files**. If the Receiving Party receives a document that contains a hyperlinked file that it reasonably believes contains responsive information, the Receiving Party may request production of such files. The Producing Party will make reasonable efforts to locate the specific hyperlinked file and either identify the file in the existing production or analyze the document for potential production with reference to the originating document.

17. **Embedded Objects**: When documents are produced in non-native form, objects embedded in documents shall, when possible, be extracted and produced as separate documents. The Producing Party will make reasonable and good faith efforts to treat such extracted embedded documents like attachments to the document (with the exception of image logo files in emails which shall not be extracted or produced). Embedded documents will be produced following the parent with a continuous Bates range.

18. **Compressed and Container Files**. Compressed and container file types (*e.g.*, .ZIP, .RAR, etc.) shall be decompressed to ensure that a compressed file within a compressed file are decompressed into the lowest possible compression to ensure all files are searched and produced as separate records. Emails and their attachments shall be extracted separately and shall be produced with the family

relationship intact via the BegAttach and EndAttach fields identified in Appendix A.

19. **Time Zone**. The Producing Parties shall in all instances disclose which time zone was used to process data in the metadata field listed in Annex A, and a Producing Party shall use a consistent time zone to process all of its data. Each Producing Party shall further include a metadata field that standardizes the time zone for all documents to UTC. A Receiving Party may make reasonable requests as to a limited number of specific documents to be reprocessed and produced in UTC for specific purposes, including but not limited to presenting a document at deposition. Except as provided in the preceding sentence, no Party will be required to reprocess any ESI that has been processed prior to the date of this Order for purposes of complying with this provision.

20. **Viruses/Malware**. All Production Media should be scanned for, and free of, viruses or malware.

**H.    Production of Hard Copy Documents**. Responsive documents that were either (i) originally generated as or converted into ESI but now only exist in physical hard copy format, (ii) printed ESI that contains new alterations since printed (*i.e.*, handwritten notes), or (iii) originally generated in hard-copy format shall be converted to single page, black and white, Group IV, 300 DPI TIFF format and produced following the same protocols set forth herein in the prior section, or in the case of any documents already produced in a government investigation, historical litigation, or other matter, in the format(s) and manner as previously produced.

1. The Parties will use reasonable efforts to unitize documents (*i.e.*, distinct documents should not be merged into a single record, and a single document should

16

not be split into multiple records) and should be produced as they are kept in the usual course of business.

2.   Hardcopy document families shall be produced together, so that hardcopy documents attached or appended to another hardcopy document (*e.g.*, through staples or paper clips), shall be produced together and sequentially immediately after the parent document.

3.   If a hard copy document contains color determined to be necessary to understand the meaning or content of the document, the document should be produced as single-page, JPG images and a high-quality setting as to not degrade the original image.

4.   Multi-page OCR text for each document should also be provided and named with the Bates number of the first page of the document to which it corresponds. The OCR software should be set to the highest quality setting. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process. Documents that are redacted will be produced with an accompanying text file containing only OCR text of the unredacted portions of the document.

5.   A text cross reference load file should also be included with the production delivery that lists the beginning Bates number of the document and the relative path to the text file for that document on the Production Media.

6.   A delimited text file that contains available fielded data should also be included and at a minimum include Beginning Bates Number, Ending Bates Number, Custodian, and Number of Pages.

7.      A Producing Party who desires to produce hard copy documents by means of a keyword search shall disclose and discuss the production of hard copy documents by means of keyword search as part of the conferral process outlined above.

## VI.   COSTS

Each party shall bear its own costs in complying with this protocol. The Parties agree that no production expenses or cost shall be considered costs that are taxable under Federal Rule of Civil Procedure 54(d)(1) and 28 U.S.C. § 1920, or any other provision of law.

**IT IS SO ORDERED** that the foregoing Stipulated Order Governing Discovery of Electronically Stored Information is approved.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 16th day of July, 2021.

_____

**LAUREN F. LOUIS**
**UNITED STATES MAGISTRATE JUDGE**

**APPENDIX A:**
**ESI METADATA AND CODING FIELDS**

| Field Name | Field Description | Populated For | Example Values |
|---|---|---|---|
| Subject/E-Subject | Subject line extracted from an e-mail or calendar item. | E-mails Calendar | Text of the subject line |
| To | All recipients that were included on the "To" field extracted from the e-mail. | E-mails | John.Doe@email.com |
| From | From or sender field extracted from the e-mail. | E-mails | Jane.Doe@email.com |
| CC | All recipients that were included on the "CC" line extracted from the e-mail. | E-mails | Bill.Black@email.com |
| BCC | All recipients that were included on the "BCC" line extracted from the e-mail. | E-mails | ceo-gs@email.com |
| BegDoc | Bates number of the first page of the document. | All | Prefix-0000000001 |
| EndDoc | Bates number of the last page of the document. | All | Prefix-0000000002 |
| BegAttach | Bates number of the first page of the first document of the document family. | All | Prefix-0000000001 |
| EndAttach | Bates number of the last page of the last document of the document family. | All | Prefix-0000000004 |
| PageCount | Number of printed pages in the document. | All | Integer |
| Confidential | Confidentiality designation, if any, of the document assigned under the Protective Order. Field should be populated with specific designation. | All | Highly Confidential |
| Custodian | Name of the custodian who possessed the document, in format LastName, FirstName. In the case of deduplicated documents, the natural person or other source that had possession of the production copy is the Custodian. | All | Doe, John |

| Field Name | Field Description | Populated For | Example Values |
|---|---|---|---|
| Duplicate Custodian | Names of all other custodians who possessed a deduplicated document, in format LastName, FirstName. | All | Doe, Jane; Public, John Q. |
| DateSent | Date an e-mail was sent. | E-mails | 2015/01/01 |
| TimeSent | Time an e-mail was sent. | E-mails | 12:30:00 |
| DateModified | Date the document was last modified. | E- attachments; Electronic documents | 2015/01/01 |
| TimeModified | Time the document was last modified. | E- attachments; Electronic documents | 12:30:00 |
| DateCreated | Data extracted from the Date Created metadata field of an E-doc. | E- attachments; Electronic documents | 2015/01/01 |
| TimeCreated | Data extracted from the Time Created metadata field of an E-doc | E- attachments; Electronic documents | 12:30:00 |
| DateReceived | Date email was received. | E-mails | 2015/01/01 |
| TimeReceived | Time email was received. | E-mails | 12:30:00 |
| Importance | Indicator of priority level set for message | E-mails Calendar | High |
| Title/E-Title | Title of document or title field extracted from the Metadata of non-email ESI | E-mails; E-attachments; Electronic documents | Smith Summary |
| Redaction | User-generated field selected from a pre-populated set that will indicate redactions or the basis for redactions if the basis is not provided on the face of the document. | ALL | Redaction |
| FileName | File name of original native document | Electronic documents; E Attachments | 2020-06-30 Mtg Agenda.doc |
| File Type | Application type | ALL | Word |
| NativeLink | Relative file path to each native file in the Natives | All | \Natives\Document 12345.doc |

| Field Name | Field Description | Populated For | Example Values |
|---|---|---|---|
| | Directory on the Production Media. | documents produced in native format | |
| Author | Data extracted from the author metadata field of an E-doc | E- attachments; Electronic documents | John Doe |
| HASH value | MD5 or SHA-1, SHA-256 Hash Value | All | |
| Prod Volume | Production Volume Name | All | Defendant X Volume 1 |
| File Path | The absolute file path to the native file as it existed in its original environment, including the root container or directory name (e.g., folder, drive). This field should be populated for both e-mail and e-files. | All | |
| TextPath | Relative file path to each extracted text/OCR text file on the Production Media. | All | \Text\Document_12345.txt |
| Source | The Producing Party | All | |
| AttachCount | The number of attachments that are indicated in the document metadata. | All | Integer |
| AttachIDs | The IDs of the documents that are attached to the produced document. | All | |
| Attachment Name | File name of the document attachment or embedded document; associated with parent/email which lists any and all filenames of the children/attachments delimited by a semicolon. The field would be populated for parent documents (not for the children). | E-mails; e-docs | |
| Parent ID | Indicates the Parent ID for an attachment or embedded document. The parent document ID field should be set for all attachments | E-mail attachments; embedded documents | |

| Field Name | Field Description | Populated For | Example Values |
|---|---|---|---|
| | (including attachments that are emails) but should not be set for parents. | | |
| ConversationIndex | Unique alphanumeric identifier for an email thread, which may be populated by the email client for each outgoing message. | E-mails | alphanumeric code generated by the email client |
| MessageID | The message ID of an email or other type of electronic message. | E-mails | Microsoft Outlook PST EntryID, the UniqueID (UNID) for Lotus Notes, equivalent value for other proprietary formats |
| ApptStartDate | The start date of a calendar event. | Calendar Events | 2015/01/01 |
| ApptStartTime | The start time of a calendar event. | Calendar Events | 12:30:00 |
| ApptEndDate | The end date of a calendar event. | Calendar Events | 2015/01/01 |
| ApptEndTime | The end time of a calendar event. | Calendar Events | 12:30:00 |
| FileExt | The extension of the file. | All | .xlsx |
| FileSize | The size of the file. | Electronic documents; E-Attachments | 146.6 MB |
| ModifiedBy | The name of the last person who modified the document. | Electronic documents; E Attachments | Doe, John |
| Comments | Comments that metadata extracted from the document. | Electronic documents; E-Attachments | |
| ExceptionReasons | To the extent extracted in processing, populate with exception reasoning from processing software. | All | Encrypted |
| AttachRange | Bates Number of the first page of the parent item to the Bates Number of the last page of the last attachment "child" item. | E-mails | *e.g.*, ABC000000001-ABC000000010 |
| ExtractedText | Relative path to and filename of the extracted text for the | All | |

| Field Name | Field Description | Populated For | Example Values |
|---|---|---|---|
| | produced ESI in the TEXT directory | | |
| DateLastPrinted | The date the document was last printed | Electronic documents | 2015/01/01 |
| DateLastAccessed | The date the document was last accessed | Electronic documents | 2015/01/01 |
| Record Type | To indicate if a Hard Copy Document, e doc, email, calendar appointment | | Hard copy |
| Time Zone | The time zone the document was processed in, | Electronic documents | EST, CST, PST, etc. |

\* As it relates to the Custodian and Duplicate Custodian metadata fields above, the Producing Party reserves the right to produce in a single field (*e.g.*, ALLCUSTODIAN) both the custodian of the production copy of the de-duplicated document as well as the custodians that held the duplicates.

\*\* DATE and TIME Fields can be provided in separate fields or be combined into a single field as long as the required information is produced in the load file.