**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 19-21551-CIV-ALTONAGA/Louis**

**In re:**

**FARM-RAISED SALMON**
**AND SALMON PRODUCTS**
**ANTITRUST LITIGATION**
_____ /

**DIRECT PURCHASER PLAINTIFFS' MOTION FOR**
**AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION**
<u>**EXPENSES AND INCORPORATED MEMORANDUM OF LAW**</u>

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND ......................................................................................... 2

   I.  The Litigation.................................................................................................... 2

   II.  The Settlement ............................................................................................... 4

ARGUMENT ................................................................................................................. 5

   I.  Class Counsel's Request For Attorneys' Fees Should Be Approved ............... 5

      A.  Class Counsel Are Entitled to Fees from the Common Fund Created by
           Their Efforts ............................................................................................ 5

      B.  The *Johnson* Factors Support Class Counsel's Requested Fee ................... 8

          1.  Class counsel demonstrated exceptional skill and devoted significant
              time and labor to address the difficult issues in this complex class
              action. ............................................................................................ 8

          2.  The requested fee is consistent with customary fees awarded in
              comparable cases. ....................................................................... 11

          3.  Class Counsel achieved a successful result, especially considering the
              litigation risks.............................................................................. 13

          4.  The remaining pertinent *Johnson* factors support the requested fee................... 16

   II.  Class Counsel's Request For Reimbursement Of Litigation Expenses Should
       Be Approved. ........................................................................................... 17

CONCLUSION.............................................................................................................. 18

i

Direct Purchaser Plaintiffs ("Plaintiffs"), through their counsel Hausfeld LLP and Podhurst Orseck, P.A. ("Class Counsel"), respectfully move, under Rule 23 of the Federal Rules of Civil Procedure, for an award of attorneys' fees and reimbursement of litigation expenses from the settlement with all Defendants (the "Settlement").[1]

## INTRODUCTION

Subject to this Court's approval, Plaintiffs, on behalf of the Settlement Class, have agreed to resolve claims against all Defendants through a Settlement of $85,000,000. This Settlement was achieved after years of vigorous litigation. While government investigations into Defendants' alleged wrongdoing remain ongoing, thus far ***only*** Class Counsel have recovered any money from Defendants to compensate Class Members.  The Settlement that Class Counsel have secured will provide Class Members with a substantial and meaningful recovery, while at the same time sparing them from the costs and risks of additional litigation.

The exceptional recovery provided by the Settlement is the direct result of Class Counsel's skillful and dedicated work in this complex action. Class Counsel now seek a fair and reasonable fee as compensation for their efforts. Class Counsel respectfully request (1) a fee award representing 30% of the Settlement Amount; and (2) reimbursement of reasonably and necessarily

---

[1] Plaintiffs are: Euclid Fish Company ("Euclid"); Euro USA Inc.; Schneider's Fish and Sea Food Corporation; and The Fishing Line LLC. Defendants are: Mowi ASA (f/k/a Marine Harvest ASA), Mowi USA, LLC (f/k/a Marine Harvest USA, LLC), Mowi Canada West, Inc. (f/k/a Marine Harvest Canada, Inc.), and Mowi Ducktrap, LLC (an assumed name of Ducktrap River of Maine, LLC) (collectively, "Mowi"); Grieg Seafood ASA, Grieg Seafood BC Ltd., Grieg Seafood North America Inc. (f/k/a Ocean Quality North America Inc.), Grieg Seafood USA Inc. (f/k/a Ocean Quality USA Inc.), and Grieg Seafood Premium Brands, Inc. (f/k/a Ocean Quality Premium Brands, Inc.) (collectively, "Grieg"); Ducktrap, LLC ("Sjór"); SalMar ASA ("SalMar"); Lerøy Seafood AS and Lerøy Seafood USA Inc. (collectively, "Lerøy"); and Cermaq Group AS, Cermaq US LLC, Cermaq Canada Ltd., and Cermaq Norway AS. Defendants (collectively, "Cermaq"). Plaintiffs and Defendants are collectively referred to as "Parties". Capitalized terms not defined herein shall have the same definitions ascribed to them in the Settlement Agreement.

1

incurred expenses in the amount of $1,972,768.69. The requested fee award is consistent with precedent from our District and the Eleventh Circuit and is warranted because of the substantial efforts Class Counsel have undertaken, the significant risks they have borne throughout the litigation, and the superb results they have achieved for the Class.

## FACTUAL BACKGROUND

### I.   The Litigation

On April 23, 2019, Euclid filed the first complaint, *Euclid Fish Co. v. Mowi ASA et al.*, 19-cv-21551 (S.D. Fla. Apr. 23, 2019).  (ECF No. 1 ("*Euclid*").)  *Euclid* was premised upon counsel's review of publicly available material, analysis of market conditions, and research into the investigation of certain Defendants by the European Commission ("EC"). After several similar complaints were filed, this Court consolidated the cases into the above-captioned action. (ECF Nos. 53, 56, 57, 94.) Following consolidation, the Court appointed Class Counsel as Interim Co-Lead Counsel on behalf of Plaintiffs and the proposed class. (ECF No. 97 at 3.) Specifically, the Court appointed the law firms of Podhurst Orseck, P.A. and Hausfeld LLP as Plaintiffs' Interim Co-Lead Class Counsel to, among other things, "direct overall case strategy and case management for the direct purchaser plaintiffs"; "make, brief, and argue pleadings, motions, and memoranda"; "negotiate with defense counsel with respect to settlement and other matters"; and "request that the Court approve settlements, if any, and fee awards." (*Id.* at 3-4.) It also appointed the law firm of Kopelwitz Ostrow to act as Liaison Counsel, as well as the following four firms to a Plaintiffs Executive Committee for the purpose of assisting Lead Counsel: Preti, Flaherty, Beliveau & Pachios LLP; Wollmuth Maher & Deutsch LLP; Steyer Lowenthal Boodrookas Alvarez & Smith, LLP; and Freed Kanner London & Millen LLC.  (*Id.* at 4-5.) In short, the Court appointed a total of seven law firms with class action and antitrust experience to prosecute this large antitrust class action against six corporate defendants.

After filing an amended complaint in August 2019, Class Counsel obtained, through contested motion practice, over 183,000 documents that Defendants had produced to the EC and

the United States Department of Justice ("DOJ"). (ECF Nos. 168, 243.) This discovery provided additional details about the Defendants and the antitrust claims. Plaintiffs added Cermaq as a Defendant in the Second Consolidated Amended Complaint ("SCAC"). This Court denied Defendants' motion to dismiss the SCAC and lifted the discovery stay. (ECF Nos. 307, 308.)

Discovery then began in earnest. In response to Plaintiffs' discovery requests, Defendants produced more than 872,000 documents—amounting to more than 62 million pages—and answered numerous interrogatories. Plaintiffs also responded to Defendants' interrogatories and document requests, producing more than 95,000 documents.

In October 2021, Plaintiffs filed their Third Consolidated Amended Complaint ("TCAC"). The TCAC added a claim under the "Rule of Reason" doctrine against all Defendants, alleging that they engaged in information exchanges that violated Sections 1 and 3 of the Sherman Act. (ECF No. 447.) In the TCAC, Plaintiffs alleged that Defendants unlawfully coordinated to fix the prices charged to direct purchasers of farm-raised Atlantic salmon and products derived therefrom, both by (1) applying a coordinated strategy to fix, raise, or stabilize spot prices of farmed Norwegian salmon through inter-competitor transactions reported to the NASDAQ Salmon Index; and (2) coordinating sales prices and exchanging commercially sensitive information to reduce competition among Defendants for salmon, thereby facilitating supra-competitive spot pricing reported by NASDAQ.

Over the last three years, Class Counsel have vigorously prosecuted Plaintiffs' claims, including successfully opposing a motion to dismiss, reviewing hundreds of thousands of documents and dozens of interrogatory responses, conducted, along with members of the Plaintiffs' Executive Committee, ten depositions of Defendants' corporate representatives, most of which required the assistance of foreign language translators, and participating in nearly 30 discovery hearings. Class Counsel also acquired Defendants' voluminous and complicated transaction data, and then worked with Dr. Tasneem Chipty of AlixPartners, Plaintiffs' damages expert, to analyze the class-wide impact and damages resulting from Defendants' alleged actions

and conduct other significant analyses of Defendants' transaction data and related NASDAQ materials.

## II.  **The Settlement**

On March 8-9, 2022, pursuant to the Court's order, (ECF No. 381), the Parties engaged in a mediation conducted by retired Chief Magistrate Judge Edward Infante (N.D. Cal.). Following extensive negotiations over two days, the Parties arrived at the rough terms of a potential global settlement. The Parties spent the next several weeks negotiating and documenting their agreement, ultimately executing the Settlement on May 25, 2022. (ECF 524.) Under the terms of the Settlement, Defendants agreed to pay $85,000,000 into the Settlement Fund in exchange for the release of claims as set forth in the Settlement.

Plaintiffs moved for preliminary approval of the Settlement and related Notice Plan on May 25, 2022. (ECF No. 524.) The Court granted preliminary approval, certifying the following settlement class (the "Class"):

> All persons and entities in the United States, their territories, and the District of Columbia who purchased farm-raised Atlantic salmon or products derived therefrom directly from one or more Defendants from April 10, 2013 until the date of Preliminary Approval. Excluded from the Settlement Class are the Court and its personnel and any Defendants and their parent, subsidiary, or affiliated companies.

(ECF No. 525 at 3.) The Settlement Notice was distributed on or before June 6, 2022, pursuant to the Court's order. (ECF No. 527.) The court-approved Notice provided that Class Counsel

> will seek an award of attorneys' fees out of the Settlement Fund, as well as reimbursement for litigation costs they advanced in pursuing the claims. The fees will compensate Class Counsel for investigating the facts, litigating the case, and negotiating and administering the Settlement. Class Counsel's attorneys' fee request will not exceed 30% percent of the Settlement Amount. Any attorneys' fees and costs awarded are subject to the Court's approval.

(ECF No. 524-4 at 58.) Plaintiffs now move the Court for a fee award of 30% of the Settlement Amount and reimbursement of $1,972,768.69 in expenses advanced by Class Counsel, an amount

that includes the cost of expert witnesses, foreign language reviewers and translators, document review vendors, and deposition-related costs.

## ARGUMENT

### I.     Class Counsel's Request For Attorneys' Fees Should Be Approved

As reflected in the court-approved Notice disseminated to Class Members, Class Counsel respectfully request a fee representing 30% of the $85,000,000 Settlement Amount, totaling $25,500,000. This fee request is consistent with District and Eleventh Circuit precedent, particularly those guidelines set forth by the Eleventh Circuit in *Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768 (11th Cir. 1991), and its progeny. The requested fee also falls below fee awards regularly approved in similar, complex antitrust class actions. For the reasons set forth below, Class Counsel's requested fee award is appropriate, fair, and reasonable and should be approved.

### A.     Class Counsel Are Entitled to Fees from the Common Fund Created by Their Efforts

When a class settlement establishes a calculable monetary benefit for class members, attorneys' fees should be awarded to class counsel pursuant to the well-established common-benefit doctrine, based on a percentage of the monetary benefit obtained. *Camden I*, 946 F.2d at 771; *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Following from the premise that those who enjoy the benefit of a lawsuit without contributing to its costs are "unjustly enriched," the common-benefit doctrine "allows a court to prevent this inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit." *Boeing*, 444 U.S. at 478; *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 392 (1970). This longstanding doctrine holds that "'a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.'"

*Cifuentes v. Regions Bank*, No. 11-cv-23455, 2014 WL 1153772, at \*7 (S.D. Fla. Mar. 20, 2014)

(quoting *Boeing*, 444 U.S. at 478); *see also Camden I*, 946 F.2d at 771 ("Attorneys in a class action

in which a common fund is created are entitled to compensation for their services from the common

fund, but the amount is subject to court approval.").

Awarding attorneys' fees to counsel acting on behalf of a class both encourages counsel to

seek redress for wrongs caused to entire classes of persons—particularly those whose claims would

not otherwise be vindicated—and deter future misconduct:

> [C]ourts . . . have acknowledged the economic reality that in order to encourage
> 'private attorney general' class actions brought to enforce . . . laws on behalf of
> persons with small individual losses, *a financial incentive is necessary to entice
> capable attorneys*, who otherwise could be paid regularly by hourly-rate clients, to
> devote their time to *complex, time-consuming cases for which they may never be
> paid*.

*Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 679, 687 (M.D. Ala. 1988) (emphases added);

*see also Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980). Given the risk,

responsibility, and effort required, reasonable compensation in line with established precedent is

necessary to ensure the availability of counsel for plaintiffs:

> If the plaintiffs' bar is not adequately compensated for its risk, responsibility, and
> effort when it is successful, then effective representation for plaintiffs in these cases
> will disappear . . . . We as members of the judiciary must be ever watchful to avoid
> being isolated from the experience of those who are actively engaged in the practice
> of law. It is difficult to evaluate the effort it takes to successfully and ethically
> prosecute a large plaintiffs' class action suit. It is an experience in which few of us
> have participated. The dimensions of the undertaking are awesome.

*Muehler v. Land O'Lakes, Inc.*, 617 F. Supp. 1370, 1375-76 (D. Minn. 1985); *see also Gevaerts v.

TD Bank*, No. 1:14-CV-20744-RLR, 2015 WL 6751061, at \*10 (S.D. Fla. Nov. 5, 2015) (holding

that the common benefit doctrine serves the goal of "removing a potential financial obstacle to a

plaintiff's pursuit of a claim on behalf of a class") (internal quotation marks omitted).

The Eleventh Circuit, therefore, requires class counsel fee awards to be based on a percentage of the common fund generated through a class action settlement. In *Camden I*—the controlling authority in the Eleventh Circuit on the issue of attorneys' fees in common-fund class-action cases—the court held that "the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case. Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I*, 946 F.2d at 774. The Eleventh Circuit recently reaffirmed this rule, holding that "*Camden I* and the percentage method remain the law in this Circuit." *In re Equifax Inc. Customer Data Security Breach Litig.*, 999 F.3d 1247, 1280 (11th Cir. 2021).

The "majority of common fund fee awards," the Eleventh Circuit has observed, "fall between 20% to 30% of the fund." *Camden I*, 946 F.2d at 774-75; *see Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1243 (11th Cir. 2011) (affirming fee award above the "25% benchmark"); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1294 (11th Cir. 1999) (directing district courts "to view [the 20% to 30%] range as a 'benchmark,' which 'may be adjusted in accordance with the individual circumstances of each case'") (quoting *Camden I*, 946 F.2d at 774-75). Thus, "[c]ourts nationwide," the Eleventh Circuit recently noted with approval, "have repeatedly awarded fees of 30 percent or higher." *In re Equifax*, 999 F.3d at 1281 (quoting *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1367 (S.D. Fla. 2011)).

Class Counsel's fee request adheres to the Eleventh Circuit's guidance, particularly given the circumstances of this litigation, as detailed below. *See Waters*, 190 F.3d at 1294 (approving fee award where the district court determined that the benchmark should be 30% and then adjusted the fee award higher based on the circumstances of the case); *Allapattah Servs., Inc.*, 454 F. Supp. 2d at 1203 (determining that "the 25% 'benchmark' should be considered a floor for a fee award

7

in this case, and that the percentage should be adjusted upward" based on the circumstances of the case).

### B.    The *Johnson* Factors Support Class Counsel's Requested Fee

In addition to setting a benchmark fee percentage between 20% and 30%, the Eleventh Circuit has instructed courts to consider the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), to determine the appropriate fee award. *Faught*, 668 F.3d at 1242.  In *Johnson*, the former Fifth Circuit identified the following twelve factors for fee awards:

> (1) the time and labor required; (2) the difficulty of the issues; (3) the skill required; (4) the preclusion of other employment by the attorney because [they] accepted the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Faught*, 668 F.3d at 1242-43 (citing *Johnson*, 488 F.2d at 717-19). As explained below, all the pertinent *Johnson* factors support Class Counsel's request.

#### 1.    Class counsel demonstrated exceptional skill and devoted significant time and labor to address the difficult issues in this complex class action.

Each of the first three *Johnson* factors bolster Class Counsel's request. Litigating and settling these difficult claims demanded particularly skillful representation as well as considerable time and labor, making this fee request reasonable. *See* Decl. of Peter Prieto and Michael P. Lehmann ¶¶ 45, 49. ("Class Counsel Decl.") Since this case began in 2019, Class Counsel worked diligently to progress the case and maximize the potential recovery for Class Members. (*Id.* ¶¶ 42, 50.) Their efforts were, by any standard, considerable, requiring flexibility, versatility, and ingenuity to advance a case against not one but six sophisticated corporate Defendants—most of whom had foreign headquarters and principal places of business—and do so amid a global

pandemic that added considerable complexity to discovery. (*Id.* ¶¶ 34-36, 50.) Class Counsel met these challenges with expansive teams of attorneys to comply with the fast-paced case schedule. (*Id.* ¶¶ 35, 50.)

In all, having devoted thousands upon thousands of hours to the matter, Class Counsel were required to undertake a truly exceptional effort to advance this complex litigation expeditiously, overcoming hurdles including complicated economic and econometric issues, dozens of discovery disputes, complex matters of antitrust law, and managing the review of millions of pages of documents. (*Id.* ¶¶ 23-24, 30-31.)

Class Counsel have, among other things,

- Conducted initial investigations into claims against Defendants to develop the facts and legal theories underlying the original complaint.

- Drafted the consolidated amended complaint, the Second Consolidated Amended Complaint, and the Third Consolidated Amended Complaint.

- Worked with Plaintiffs to develop further factual understanding of the market and respond to Defendants' discovery requests.

- Coordinated with an indirect purchaser matter that was consolidated solely for purposes of discovery, requiring negotiation of key matters not merely with Defendants but with a separate set of plaintiffs.

- Conducted research into complex issues, including antitrust law and foreign law governing discovery.

- Conducted complex international discovery made more complicated by Norwegian restrictions on discovery under the Hague Convention and an ongoing global pandemic.

- Defended against multiple motions to dismiss.

- Successfully sought leave to amend the Second Consolidated Amended Complaint to add an explicit claim under the rule of reason standard.

- Served dozens of requests for production and numerous interrogatories and conducted extensive meet and confers on both.

- Retained a select team of foreign language reviewers and oversaw the review of

9

hundreds of thousands of documents amid other case deadlines.

- Progressed and conducted discovery into issues related to class certification on an expedited schedule and, when the schedule became impracticable, twice briefed motions to extend time.

(*Id.* ¶¶5-39.)

Class Counsel were required to deploy their significant experience and knowledge of class actions and antitrust law to shepherd this litigation toward a successful resolution. (*Id.* ¶52.) The case was particularly complex because much of the evidence and relevant personnel were located outside the United States, with most of the documents at issue in the litigation also being in a relatively uncommon foreign language. (*Id.* ¶¶ 25, 50.) These circumstances imposed serious time limitations on Class Counsel that, under *Johnson*, also support Class Counsel's fee request, because it was only through Class Counsel's adept navigation of an increasingly complex litigation environment that the Class ultimately was able to secure a substantial recovery.

In evaluating the quality of representation that Class Counsel provided the Class, the Court should also consider the quality of opposing counsel, *see Camden I*, 946 F.2d at 772 n.3; *Ressler v. Jacobson*, 149 F.R.D. 561, 654 (M.D. Fla. 1992), and the skill required to triumph against the challenges opposing counsel presented over the course of this litigation. Class Counsel repeatedly overcame challenges from Defendants who were represented by experienced counsel from firms that rank among the world's most formidable and prestigious. (Class Counsel Decl. ¶ 51); *Checking Account Overdraft*, 830 F. Supp. 2d at 1348 ("Class Counsel confronted not merely a single large bank, but 'the combined forces of a substantial portion of the entire American banking industry, and with them a large contingent of some of the largest and most sophisticated law firms in the country.'"); *Walco Invs., Inc. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997) ("Given the quality of defense counsel from prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results.").

Class Counsel have devoted thousands upon thousands of hours to litigating this complex action. Their skill and ability to persevere within an accelerated schedule justify the requested fee.

### 2. The requested fee is consistent with customary fees awarded in comparable cases.

The fifth and twelfth *Johnson* factors support the fee requested because it falls within the range of fees typically awarded in this Circuit and specifically within this District—"the customary fee in the community." *Faught*, 668 F.3d at 1242-43 (citing *Johnson*, 488 F.2d at 717-19). As discussed above, myriad cases have acknowledged a benchmark fee award between 20% and 30% in this District and throughout the Eleventh Circuit. *See, e.g.*, *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1366; *Sunbeam*, 176 F. Supp. 2d at 1333-34. Indeed, fee awards at the top of or above the benchmark within this District and the Eleventh Circuit are far from uncommon. *Waters*, 190 F.3d 1291 (11th Cir. 1999) (affirming fee award of 33.33% on settlement of $40 million); *In re Disposable Contact Lens Antitrust Litig.*, 3:15-md-02626-HES-LLL, ECF No. 1258 at 5  (M.D. Fla. June 1, 2021) (awarding 33 1/3% of the anticipated net settlement fund in partial settlement of antitrust class action); *Morgan v. Pub. Storage,* 301 F. Supp. 3d 1237, 1257-58 (S.D. Fla. 2016) ("[A] fee award of 33% . . . is consistent with attorneys' fees awards in federal class actions in this Circuit . . . .").[2]

---

[2] *See also James v. JPMorgan Chase Bank, N.A.*, No. 15-cv-2424-T-23JSS, 2017 WL 2472499, at *2 (M.D. Fla. June 5, 2017) (30%); *Warren v. Cook Sales, Inc.*, No. 15-cv-0603, 2017 WL 325829, at *9 (S.D. Ala. Jan. 23, 2017) (30%); *Comeens v. HM Operating, Inc.*, No. 14-cv-00521, 2016 WL 4398412, at *4 (N.D. Ala. Aug. 18, 2016) (33⅓%); *Diakos v. HSS Sys., LLC*, No. 14-cv-61784, 2016 WL 3702698, at *7 (S.D. Fla. Feb. 5, 2016) (33⅓%); *Duque v. 130 NE 40th St., LLC*, No. 14-cv-23965, 2016 WL 7442797, at *3 (S.D. Fla. Jan. 27, 2016) (33%); *Camp v. City of Pelham*, No. 10-cv-01270, 2015 WL 12746716, at *3 (N.D. Ala. Dec. 16, 2015) (41%); *Pierre-Val v. Buccaneers Ltd. P'ship*, No. 14-cv-01182, 2015 WL 12843849, at *2 (M.D. Fla. Dec. 7, 2015) (32%); *Gevaerts v. TD Bank*, No. 14-cv-20744-RLR, 2015 WL 6751061, at *14 (S.D. Fla. Nov. 5, 2015) (30%); *Vogenberger v. ATC Fitness Cape Coral, LLC*, No. 14-cv-436-FTM-29CM, 2015 WL 1883537, at *4 (M.D. Fla. Apr. 24, 2015) (33%); *Amason v. Pantry, Inc.*, No. 09-cv-02117, 2014 WL 12600263, at *3 (N.D. Ala. July 3, 2014) (30%); *Cifuentes v. Regions Bank*, No. 11-cv-23455-FAM, 2014 WL 1153772, at *8 (S.D. Fla. Mar. 20, 2014) (30%); *In re Friedman's,*

The award sought is also consistent with the results of empirical studies of attorneys' fee awards. These studies are discussed in detail in the declaration of a distinguished expert on attorneys' fees in class actions, Professor Brian T. Fitzpatrick, submitted in support of this motion. Declaration of Brian T. Fitzpatrick ("Fitzpatrick Decl.") (Fitzpatrick Decl. ¶¶ 14-15). Professor Fitzpatrick currently serves as a professor of law and Milton R. Underwood Chair of Free Enterprise at Vanderbilt Law School. (*Id.* ¶ 1.) After graduating from Harvard Law School, he also served as a law clerk to The Honorable Diarmuid O'Scannlain on the United States Court of Appeals for the Ninth Circuit and to The Honorable Antonin Scalia on the United States Supreme Court. (*Id.*) He has published articles and books on class actions and attorneys' fees that are frequently cited by courts across the country. (*Id.* ¶ 3 n.1.)

As explained in Professor Fitzpatrick's declaration, the requested fee award is "in line with other fee awards in the Eleventh Circuit," according to both his own empirical studies and those published by other leading scholars. (*Id.* ¶¶ 14-15.) Professor Fitzpatrick found that the majority of fee awards in the Eleventh Circuit have been 30% or more. (*Id.* ¶ 14.) Likewise, the updated results of another large-scale empirical study performed by Professors Eisenberg and Miller show that the average award in the Eleventh Circuit is 30%, with a median of 33%. (*Id.* ¶ 15.) Class Counsel's requested fee, therefore, aligns with "the customary fee in the community." *Faught*, 668 F.3d at 1242-43 (citing *Johnson*, 488 F.2d at 717-19).

---

*Inc. Sec. Litig.*, No. 03-cv-3475, 2009 WL 1456698 (N.D. Ga. May 22, 2009) (30%); *Francisco v. Numismatic Guar. Corp. of Am.*, No. 06-cv-61677-Martinez, 2008 WL 649124 (S.D. Fla. 2008) (30%); *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334 (S.D. Fla. 2007) (30%).

### 3. Class Counsel achieved a successful result, especially considering the litigation risks.

The sixth, eighth, and tenth *Johnson* factors also support the requested fee. The Settlement that Class Counsel secured warrants a fee at the top of the benchmark range because it represents a substantial recovery and excellent result for the Class. Moreover, this result was achieved only after Class Counsel spent years prosecuting this complex case on a fully contingent basis, bearing all the risks of non-recovery and litigation expenses. (Class Counsel Decl. ¶ 48.) Defendants presented vigorous defenses to Plaintiffs' claims and contested Plaintiffs' efforts to secure extensions that would ensure access to and sufficient time to analyze a thorough factual record. (*Id.* ¶ 38.)

When courts assess the "undesirability" of a case, they consider, among other things, the "expense and time involved in prosecuting [the] litigation on a contingent basis, with no guarantee or high likelihood of recovery." *Waters v. Cook's Pest Control, Inc.*, No. 2:07-CV-00394-LSC, 2012 WL 2923542, at *18 (N.D. Ala. July 17, 2012). This factor is meant to ensure that counsel are rewarded "for taking on a case from which other law firms shrunk." *Sunbeam*, 176 F. Supp. 2d at 1336. The risks posed by a case must be evaluated from the point of view of plaintiffs' counsel at the time of filing, not employing hindsight. *Lindy Bros. Builders, Inc. v. Am. Radiator & Std. Sanitary Corp.*, 540 F.2d 102, 112 (3d Cir. 1976); *Walco*, 975 F. Supp. at 1473.

The risks of antitrust cases are particularly high, with numerous known obstacles to recovery. Antitrust cases are notoriously difficult to prosecute. *See Wal-Mart*, 396 F.3d at 118. They are also among the most expensive cases to litigate, requiring high-cost econometric expert work as a de facto precursor to class certification, following the Supreme Court's opinion in *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013). Moreover, they require expansive teams of attorneys to conduct discovery to prove what defendants may inevitably wish to obscure.

13

Specifically, this case presented three different types of litigation risk: proving liability, class-wide impact, and damages.

**Risks in Proving Liability**: While Plaintiffs overcame multiple motions to dismiss, they nonetheless would have faced risks in demonstrating the liability of any given Defendant and all Defendants. As noted, while investigations have begun into Defendants' conduct, no investigation has resulted in public indictments or statements of objections. Plaintiffs would thus have been required to prove each element of the alleged conspiracy and would, as a practical matter, have been required to do so through documents in foreign languages and likely without access to numerous foreign witnesses. Defendants would have argued that their conduct did not constitute price-fixing and that any conduct was justified by procompetitive justifications. Had Plaintiffs proved an overarching agreement existed, each Defendant would likely have argued that it was not a participant in that agreement. There is a risk that the Court or a jury would have credited such arguments, resulting in the dismissal of the case as a whole or of certain Defendants.

**Risks in Proving Class-Wide Impact and Damage**: To secure a recovery at trial on behalf of the Class, Class Counsel would have to overcome numerous, formidable hurdles. Plaintiffs would have to prove through expert testimony that Defendants' conduct caused a class-wide impact. While Class Counsel worked closely with an accomplished expert, Dr. Tasneem Chipty, to design an econometric model that would serve this purpose, Defendants would surely have proffered the opinions of their own highly experienced expert witnesses to counter such findings and attack Plaintiffs' model. Defendants would do so with a built-in advantage of being in a better position to understand their own complex data sets and any quirks or deficiencies that may be present within them. Either a *Daubert* challenge that succeeded in whole or in part as to Dr. Chipty's model, or effective cross-examination at trial, could result either in a victory for

14

Defendants on the issue of liability or a significantly reduced verdict. It is well understood that "the history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) (internal quotation marks omitted); *US Airways, Inc. v. Sabre Holdings Corporation*, 11-cv-2725, ECF No. 1209 (S.D.N.Y. May 25, 2022) (order for judgment) (following eleven-year litigation, entering judgment "in favor of Plaintiff and against Defendants on Count II of the Sixth Amendment Complaint in the amount of $3, which is three times the amount of the jury's award of $1. . ."). And any damages award secured at trial would surely be appealed, potentially delaying for years any compensation to Class Members.

In undertaking to litigate this risky, complex, and expensive case on a wholly contingent basis, Class Counsel assumed a significant risk of nonpayment or underpayment. (Class Counsel Decl. ¶ 47.) That risk warrants approval of the requested fee. Indeed, "'[a] contingency fee arrangement often justifies an increase in the award of attorney's fees.'" *Sunbeam*, 176 F. Supp. 2d at 1335 (quoting *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd* 899 F.2d 21 (11th Cir. 1990)). In *Behrens*, the court noted that this incentive for contingency representation "helps assure that the contingency fee arrangement endures. If this 'bonus' methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing." 118 F.R.D. at 548.

Here, Class Counsel bore these risks, overcame the obstacles, and obtained a lucrative settlement for the Class. As Professor Fitzpatrick explains, "this is an extraordinary recovery compared to the typical antitrust class action," in light of studies analyzing the average percentage

of damages recovered in antitrust settlements, as well as the unique risks in this litigation, which "are greater not lesser than usual." (Fitzpatrick Decl. ¶¶ 18-19.) "In other words, these are above-benchmark results and they support an above-benchmark fee." (*Id.* ¶ 19.)

### 4. The remaining pertinent *Johnson* factors support the requested fee.

The fourth, seventh, and ninth *Johnson* factors also warrant approval of the requested fee award. Because of the thousands upon thousands of hours of time required to litigate this case and the relatively brief period in which most of that litigation was required to be accomplished, Class Counsel have endured substantial limitations in their ability to be employed on other matters. Class Counsel made massive commitments of attorney time and invested well over a million dollars in this case. (Class Counsel Decl. ¶¶ 45-46.) These commitments were particularly substantial and intensive during the period between the opening of discovery and the then-operative class certification deadline, requiring Class Counsel to employ teams of lawyers from their own firms and a legion of other counsel to conduct discovery. (*Id.* ¶¶ 30-37.) As a result, such attorney and staff time and monetary investment was, necessarily, unavailable for other matters. (*Id.*) Class Counsel, therefore, have repeatedly turned down opportunities to take on other cases because of the significant time and financial commitments associated with this litigation. (*Id.* ¶ 49.) Class Counsel are highly respected firms with strong reputations in the class action field, as is readily demonstrated by the fact that they were appointed lead counsel through private ordering of Plaintiffs' counsel in all direct purchaser actions. (*Id.* ¶ 7.)

Accordingly, Class Counsel's fee request is firmly rooted in "the economics involved in prosecuting a class action." *Sunbeam*, 176 F. Supp. 2d at 1333. These economic realities support the requested fee reward, as do the results obtained by Class Counsel in this litigation despite the time limitations imposed, and the risk, labor, and skill required.

**II.     Class Counsel's Request For Reimbursement Of Litigation Expenses Should Be Approved.**

Class Counsel also request reimbursement of $1,972,768.69 in expenses that have been borne to date. These expenses were reasonably and necessarily incurred during the litigation. These expenses are comprised of: (1) $1,249,305.55 for expert fees;[3] (2) $280,415.02 for foreign language document reviewers; (3) $189,544.54 for document storage and e-discovery consultants, (4) $56,114.71 for case investigation costs; (5) $51,451.28 in travel costs; (6) $44,421.52 in court reporting, stenography, and deposition translators; (7) $26,516.17 in mediation fees; (8) $24,085.58 in costs relating to domestic and international service of process; (9) $18,839.47 for legal research costs; (10) $8,528.24 in court fees/costs; (11) $5,472.62 for document translations; (12) $2,460.32 in telephone and telecopier charges; (13) $862.76 in postage and parcel delivery; and (14) $14,750.91 in miscellaneous costs.[4] (Class Counsel Decl. ¶ 46.)

It is well understood that Class Counsel are "entitled to be reimbursed from the class fund for the reasonable expenses incurred" in pursuing actions on behalf of a Class. *Behrens*, 118 F.R.D. at 549. Accordingly, courts in this Circuit have routinely approved payment of reasonable and necessary litigation expenses from common funds created by the litigation. *See Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 1:04-cv-3066, 2008 WL 11234103, at *6 (N.D. Ga. Mar. 4, 2008) (approving $2.4 million for reimbursement of litigation expenses); *Swift v. BancorpSouth Bank*, No. 1:10-cv-00090, 2016 WL 11529613, at *20 (N.D. Fla. July 15, 2016) (approving

---

[3] While the total invoiced for Alix Partners' work is $1,884,073.00, the indirect purchaser plaintiffs in a parallel case and the Direct Purchaser Plaintiffs here agreed to share the costs of the data cleaning. Accordingly, the indirect purchasers agreed to pay $663,790.00 for their portion of the data cleaning. The Direct Purchaser Plaintiffs reserve all rights to seek reimbursement of costs for the full amount of $1,884,073.00 in the event that it is not possible to recover from the indirect purchaser plaintiffs their portion of these costs.

[4] If the Court wishes to review information on the costs incurred on a more granular, invoice-specific level, Class Counsel is prepared to provide such information.

17

application for reimbursement of costs that "were necessarily incurred in furtherance of the litigation of the Action and the Settlement"); *Ressler*, 149 F.R.D. at 657 (approving requested expenses as reasonable and necessary).

## **CONCLUSION**

For the foregoing reasons and those set forth in the Co-Lead Counsel Declaration, Class Counsel respectfully request that the Court grant their application for an award of attorneys' fees and reimbursement of litigation expenses.

Dated: June 9, 2022

**HAUSFELD LLP**

Michael P. Lehmann (pro hac vice)
Christopher L. Lebsock (pro hac vice)
Samantha J. Stein (pro hac vice)
600 Montgomery St. #3200
San Francisco, CA 94111
Tel: (415) 633-1908
mlehmann@hausfeld.com
clebsock@hausfeld.com
sstein@hausfeld.com

Reena A. Gambhir (pro hac vice)
Timothy S. Kearns (pro hac vice)
Jane Shin (pro hac vice)
888 16th Street, N.W., Suite 300
Washington D.C. 20006
Tel: (202) 540-7200
rgambhir@hausfeld.com
tkearns@hausfeld.com
jshin@hausfeld.com

*Interim Class Counsel for Direct Purchaser Plaintiff Class*

Respectfully submitted,

**PODHURST ORSECK, P.A.**

*/s/ Peter Prieto*
Peter Prieto, FBN 501492
John Gravante, III, FBN 617113
Matthew P. Weinshall, FBN 84783
Alissa Del Riego, FBN 99742
Christina H. Martinez, FBN 1029432
SunTrust International Center
One S.E. 3rd Ave, Suite 2300
Miami, FL 33131
Tel: (305) 358-2800
pprieto@podhurst.com
jgravante@podhurst.com
mweinshall@podhurst.com
adelriego@podhurst.com
cmartinez@podhurst.com

*Interim Class Counsel for Direct Purchaser Plaintiff Class*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 9, 2022, I electronically filed the foregoing document with the

Clerk of the Court using CM/ECF.  I also certify the foregoing document is being served this day

on all counsel of record via transmission of notice of Electronic Filing generated by CM/ECF.

By:     */s/ Peter Prieto*
          Peter Prieto