**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 19-21551-CIV-ALTONAGA/Louis**

**In re:**

**FARM-RAISED SALMON**
**AND SALMON PRODUCTS**
**ANTITRUST LITIGATION**
_____ /

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF**
**SETTLEMENT WITH ALL DEFENDANTS, CERTIFICATION OF SETTLEMENT**
**CLASS, AND INCORPORATED MEMORANDUM OF LAW**

Plaintiffs, through Co-Lead Counsel, Hausfeld LLP and Podhurst Orseck, P.A. ("Class Counsel"), respectfully move, under Rule 23 of the Federal Rules of Civil Procedure, for final approval of the Settlement with all Defendants, certification of the Settlement Class defined therein (the "Class" or the "Settlement Class"), and an award of attorneys' fees and litigation expenses.[1] A final approval hearing, as required by Rule 23(e)(2), is scheduled for Thursday, September 8, 2022, at 9 a.m.

## I. <u>INTRODUCTION</u>

Subject to this Court's approval, Plaintiffs, on behalf of the Class, have agreed to resolve all claims brought in this Action through a Settlement worth $85,000,000. This is an exceptional result for the Class stemming from years of intense, hard-fought litigation.

This sum not only provides the Class with ample monetary relief but also avoids the delay of additional litigation, which is particularly significant because antitrust cases often last for years. This resolution spares the Class both litigation risks and substantial litigation costs, preserving more funds for the Class than likely would be available later. The Settlement, in short, is fair, reasonable, and adequate. Additionally, the Class satisfies the certification requirements of Rule 23 for settlement purposes. And the Notice Program meets the requirements of Rule 23 and constitutional due process. Class Counsel accordingly request that the Court grant final approval of the Settlement, which has not received a *single* objection or request for exclusion, and certify the Class.

---

[1] **Plaintiffs** are: Euclid Fish Company; Euro USA Inc.; Schneider's Fish and Sea Food Corporation; and The Fishing Line LLC. **Defendants** are: Mowi ASA (f/k/a Marine Harvest ASA), Mowi USA, LLC (f/k/a Marine Harvest USA, LLC), Mowi Canada West, Inc. (f/k/a Marine Harvest Canada, Inc.), and Mowi Ducktrap, LLC (an assumed name of Ducktrap River of Maine, LLC); Grieg Seafood ASA, Grieg Seafood BC Ltd., Grieg Seafood North America Inc. (f/k/a Ocean Quality North America Inc.), Grieg Seafood USA Inc. (f/k/a Ocean Quality USA Inc.), and Grieg Seafood Premium Brands, Inc. (f/k/a Ocean Quality Premium Brands, Inc.); Sjór AS sued as Ocean Quality AS; SalMar ASA; Lerøy Seafood AS and Lerøy Seafood USA Inc.; and Cermaq Group AS, Cermaq US LLC, Cermaq Canada Ltd., and Cermaq Norway AS. Defendants, collectively with Plaintiffs, are referred to as "Parties." Capitalized terms not defined herein shall have the same definitions ascribed to them in the Settlement.

Finally, having not received a single objection to Class Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (ECF No. 533), Class Counsel respectfully request that the Court award the requested attorneys' fees in the amount of 30% of the Settlement Fund, and litigation expenses in the amount of $2,636,558.69.

## II.   BACKGROUND

The factual background and procedural history of the litigation have been detailed in Plaintiffs' previous filings in support of the Settlement and Plaintiffs' Motion for Attorneys' Fees, all of which are incorporated by reference here. (ECF Nos. 524 (Motion for Preliminary Approval); 524-3 (Decl. of Peter Prieto); 533 (Motion for Attorneys' Fees); 533-1 (Decl. of Peter Prieto and Michael P. Lehmann).) The preliminary approval of the Settlement, implementation of its terms, and reaction of the Settlement Class are summarized below.

### A.   Settlement Negotiations and Preliminary Approval

During years of litigation, Plaintiffs had not had any meaningful settlement discussions with any Defendant. Pursuant to this Court's order, however, the parties attended a mediation in early March of 2022 facilitated by retired United States Magistrate Judge Edward Infante (Ret.). With Judge Infante's assistance and following extensive negotiations over two days, the Parties arrived at the general terms of a potential global settlement. The Parties then engaged in substantial negotiations over the precise language of the agreement, which the Parties executed on May 25, 2022. (ECF No. 524-3.)

That same day, Plaintiffs filed their Unopposed Motion for Preliminary Approval of Settlement With All Defendants, Preliminary Certification of Settlement Class, and Approval of Class Notice, and Incorporated Memorandum of Law. (ECF No. 524.) The Court granted Plaintiffs' Motion and endorsed the proposed Notice Plan on May 26, 2022. (ECF No. 525.)

### B.   Terms of the Settlement and Implementation

The following is a summary of the material terms of the Settlement (ECF No. 524-3), and, where applicable, a discussion of how these terms have been implemented after entry of the Court's Preliminary Approval Order.

**The Settlement Class:** The Settlement Class is an opt-out class under Rule 23(b)(3) of the Federal Rules of Civil Procedure. The Settlement Class is defined as:

> All persons and entities in the United States, their territories, and the District of Columbia who purchased farm-raised Atlantic salmon or products derived therefrom from one or more Defendants from April 10, 2013 until the date of Preliminary Approval. Excluded from the Settlement Class are the Court and its personnel and any Defendants and their parent, subsidiary, or affiliated companies.

(ECF No. 524-3, ¶ 6.) Defendants' records identified roughly 800 putative Settlement Class Members.

**The Settlement Fund:** The Settlement required Defendants to deposit $85,000,000 into a non-reversionary Qualified Settlement Fund. Following issuance of the Court's Preliminary Approval Order, Defendants deposited the Settlement Fund into the Escrow Account. Class Counsel, according to the Settlement, was permitted to pay from the Settlement Fund, without further approval from Defendants or the Court, the costs and expenses reasonably and actually incurred, up to the sum of $150,000, for providing notice and the administration of the Settlement.

**The Release:** Upon the Effective Date of the Settlement, Class Members agreed to provide a release to the "Released Parties," which include the Defendants and affiliated entities and persons, of claims

> related to or arising from conduct alleged in the Complaint or which could have been asserted in the Litigation against the Released Parties, or any one of them, prior to the Effective Date, on account of, arising out of, resulting from, or related to in any respect the purchase, sale, pricing, discounting, manufacturing, offering, or distributing of farm-raised Atlantic salmon or products derived therefrom in the United States, including, without limitation, Claims arising under federal or state antitrust, unfair competition, unfair practices, price discrimination, unitary pricing, trade practice, or civil conspiracy law, including without limitation the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.*

(ECF No. 524-3, ¶ 1.r.) The release, however, carves out specific exclusions for:

> (a) Claims based on negligence, personal injury, bailment, failure to deliver lost goods, damaged or delayed goods, product defects, breach of product warranty, or breach of contract; (b) Claims based upon a Releasing Party's purchase(s) of farm-raised Atlantic salmon from the Released Parties (or any one of them) occurring

outside the United States or its territories for use or consumption outside of the United States or its territories; or (c) Claims brought under any state law for indirect purchases of farm-raised Atlantic Salmon, including, but not limited to, the Claims brought by the indirect purchasers in *Wood Mountain Fish LLC., et. al. v. Mowi ASA, et. al.*, 19-cv-22128 (S.D. Fla.), and any related indirect purchaser cases consolidated thereunder.

(ECF No. 524-3, ¶ 1.r.)

**The Notice Program and Claims Process:** The Settlement also proposed a robust notice program, which the Court approved in its Preliminary Approval Order, designed to satisfy the requirements of Rule 23 and Settlement Class Members' right to due process. JND Legal Administration was ordered to implement the Notice Program, which notified Settlement Class Members of the Settlement both by Direct Mail Notice and through a Press Release. The details of each form of notice are set forth in the Declaration of Gina Intrepido-Bowden of JND Legal Administration, previously filed with the Court (ECF No. 524-4), and the results of the notice process are detailed in the Declaration of Bronyn Heubach, submitted in support of this Motion. *See* Declaration of Bronyn Heubach ("Heubach Decl.").

Pursuant to the Notice Program, JND sent out initial notices to the approximately 1,033 putative Settlement Class Members. Heubach Decl. ¶ 3. For notices returned, JND has subsequently re-mailed to either a forwarding address that was provided or addresses that could be identified through advanced address research. As a result, 80 notices have been re-mailed. *Id.* at ¶ 5. As of July 25, 2022, JND has fielded more than 170 phone calls and 1,200 emails from putative Settlement Class Members. *Id.* at ¶¶ 5, 10.

The Class was also provided with information about the Settlement through a Settlement Website, located at https://www.salmondirectpurchasersettlement.com/, which contains relevant documents, a list of key Settlement dates, an online portal for the filing of claims, and contact information for JND, the notice and settlement administrator. On the claim filing portal, Settlement Class Members can review and verify their volume of purchases or commerce against total amounts contained in Defendants' sales and transaction data. Settlement Class Members who

believe they have purchased an amount different from what Defendants' sales data show are permitted to submit documentation to validate their purchases, subject to an audit by JND.

**Attorneys' Fees and Litigation Expenses:** Class Counsel agreed that their request for attorneys' fees would not exceed 30% of the Settlement Amount, or $25,500,000. (ECF 524-3, ¶ 2.) The Parties agreed that the Court's resolution of Class Counsel's request for attorneys' fees and expenses is not a precursor to the effectiveness of the Settlement. (ECF No. 524-3, ¶ 15.) Defendants agreed not to take a position with respect to Class Counsel's request for attorneys' fees. (ECF No. 524-3, ¶ 14.a.)

On June 9, 2022, Plaintiffs filed their Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses. (ECF No. 533.) In that Motion, Plaintiffs requested an award of 30% of the Settlement Amount or $25,500,000 and reimbursement of litigation expenses in the amount of $1,972,768.69, while reserving the right to seek an additional $663,790 for expert costs if they were unable to secure payment of such costs from counsel for plaintiffs in a related action. (ECF No. 533 at 17 n.3.) Although Plaintiffs will continue seeking to recover such costs from plaintiffs in the related action, Plaintiffs have been unable to secure their payment thus far. Decl. of Christopher L. Lebsock ¶¶ 2-4 ("Lebsock Decl."). So, Plaintiffs are seeking reimbursement of the additional $663,790 in expenses to pay the remaining invoices from Plaintiffs' experts. *Id.* If Plaintiffs succeed in recovering payment from plaintiffs in the related action for these expenses, such funds will be deposited in the Settlement escrow account for distribution to the Class. *Id.* Accordingly, Plaintiffs seek reimbursement of litigation expenses in the total amount of $2,636,558.69. No Class Member has opposed or objected to Plaintiffs' request for attorneys' fees or reimbursement of litigation expenses.

## C.   The Reaction to the Settlement

The reaction to the Settlement has been uniformly positive. In accordance with the Court's Order (ECF No. 527), any requests for exclusion from the Class, objections to the Settlement, or objections to Class Counsel's request for fees and expenses were required to be postmarked no later than July 11, 2022. As of July 22, 2022, there have been ***no*** requests for exclusion from the

Settlement, **no** objections to the Settlement, and **no** objections to Plaintiffs' motion for an award of attorneys' fees. The complete absence of objections and exclusions shows an overwhelmingly favorable response to the Settlement.

## III.   ARGUMENT

### A.   The Court Should Grant Final Approval of the Settlement

Federal Rule of Civil Procedure 23(e) requires judicial approval for the resolution of claims on a class basis. "Although class action settlements require court approval, such approval is committed to the sound discretion of the district court." *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992).[2] In exercising that discretion, courts are mindful of the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). The policy favoring settlement is especially relevant in class actions, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See*, *e.g.*, *Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex.").

Rule 23(e) provides five requirements that must be satisfied for a proposed class settlement to secure final approval:

(1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.

(2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.

(3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

(4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

---

[2] Unless otherwise noted, citations are omitted, and emphasis is added.

6

(5) Any class member may object to the proposal if it requires court approval under the subdivision (e); the objection may be withdrawn only with the court's approval.

*Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 690 (S.D. Fla. 2014) (citing Fed. R. Civ. P. 23(e)).

Each of these five requirements is readily satisfied here. The Court-approved notice program directed the best notice practicable under the circumstances to all Settlement Class Members; a final fairness hearing has been scheduled for September 8, 2022; the parties identified the only other agreement among the parties—a side letter identifying the volume of opt-out commerce at which Defendants could exercise their right to terminate the Settlement, which is now irrelevant since no class members have opted out; and there have been ***no*** objections filed against the Settlement or Plaintiffs' Request for Attorneys' Fees.

          **1.**      **The Notice Program Gave the Best Practicable Notice to Settlement Class Members and Satisfied Rule 23 and Due Process**

To exercise jurisdiction over absent Class members, a court must assure itself that such class members receive notice of any settlement that is "the best practicable, 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) (quoting *Mullane v. Central Hanover Bank & Tr. Co.*, 339 U.S. 306, 314-15 (1950)); *see* Fed. R. Civ. P. 23(c)(2)(B). Such notice "should describe the action and the plaintiffs' rights in it," as well as provide each class member "with an opportunity to remove [itself] from the class by executing and returning an 'opt out' or 'request for exclusion' form." *Shutts*, 472 U.S. at 812.

As this Court noted in its Preliminary Approval Order, the Notice Program "set forth herein constitutes the best notice that is practicable under the circumstances . . . and complies fully with the requirements of Federal Rule of Civil Procedure 23 and the due process requirements of the Constitution of the United States." (ECF No. 525 at 4.) The Notice Program has been implemented in accordance with the Court's Order. *See* Heubach Decl. ¶¶ 2-9.

As detailed in the Declaration of Bronyn Heubach, 1,114 notices were mailed to 1,033 potential Settlement Class Members as identified from Defendants' transaction records. *Id.*, ¶ 3. JND, the notice administrator, used advanced address research and re-mailing protocols for those notices that did not reach their intended recipient, ensuring that the maximum number of Settlement Class Members received direct-mail notice. *Id.*, ¶ 5. In addition, the Press Release was issued. The Settlement Website also has had more than 8,400 page views, including more than 5,000 unique visitors, and JND has received more than 170 calls and more than 1,200 emails with respect to the Settlement as of July 22, 2022. *Id.*, ¶¶ 8, 10.

This far-reaching Notice Program has ensured that the Court has personal jurisdiction over all Settlement Class Members, because they have received the notice required to satisfy constitutional due process. *See Shutts*, 472 U.S. at 811-12; *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 306 (3d Cir. 1998) ("[T]he district court obtains personal jurisdiction over the absentee class members by providing proper notice of the impending class action and providing the absentees with the opportunity to be heard or the opportunity to exclude themselves from the class."). As required, the Court-approved notice described the claims brought and "contained information reasonably necessary to make a decision to remain a class member and be bound by the final judgment." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1104-05 (5th Cir. 1977). The Direct Mail Notice sent to Settlement Class Members, among other things, described the Class, the release, the amount and proposed distribution of the Settlement Fund and informed Settlement Class Members of their right to opt out or object, as well as the procedural steps required to opt out or object. The notice further informed Settlement Class Members of the time and place of the Fairness Hearing. And the Notice explained to Settlement Class Members that they would be bound by a judgment unless they opted out, even if they did not file a claim.  The Notice additionally informed Settlement Class Members that Class Counsel would seek attorneys' fees of up to 30% of the Settlement Amount and reimbursement of litigation expenses. Lastly, the Notice informed Settlement Class Members that additional information

would be available on the Settlement Website, where copies of the Agreement, Notice, and Claim Form were made available.

In short, Settlement Class Members were provided with the best practicable notice "reasonably calculated, under [the] circumstances, to apprise them of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314.

### 2.      The Settlement Is Fair, Reasonable, and Adequate

"The Court should approve a proposed class action settlement where it is 'fair, adequate and reasonable and is not the product of collusion between the parties.'" *Saccoccio*, 297 F.R.D. at 691 (quoting *Bennett*, 737 F.2d at 986). To assess whether a settlement is fair, reasonable, and adequate, the Court must consider whether "the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Lorazepam & Clorazepate Antitrust Litig.*, MDL No. 1290, 2003 WL 22037741, at *2 (D.D.C. June 16, 2003) (quoting *Manual for Complex Litig. (Third)* § 30.42 (1995)). Thus, the Court is "not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000). Rather, the Court may rely upon the professional judgment of experienced counsel in making its assessment. *See Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir.1977)). Absent a compelling reason to substitute its judgment, such as "fraud, collusion, or the like, the district court 'should be hesitant to substitute its own judgment for that of counsel." *Id.* (quoting *Cotton*, 559 F.2d at 1330).

Rule 23(e) identifies several factors to be considered when assessing whether a proposed settlement is fair, reasonable, and adequate:

> (A) [whether] the class representatives and class counsel have adequately represented the class;
>
> (B) [whether] the proposal was negotiated at arm's length;
>
> (C) [whether] the relief provided for the class is adequate, taking into account:

>   (i) the costs, risks, and delay of trial and appeal;
>
>   (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>
>   (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>
>   (iv) any agreement required to be identified under Rule 23(e)(3); and
>
>  (D) [whether] the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e). These factors do not supplant judicially adopted factors to assess settlements, but instead seek "to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *See* Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment.

These "core concerns" emphasized in amended Rule 23, *id.*, are already encompassed within the factors that prevailing Eleventh Circuit law instructs courts to consider, namely, the absence of fraud or collusion among the parties reaching the settlement and:

>   (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F.3d at 986; *Montoya v. PNC Bank, N.A.*, No. 14-cv-20474, 2016 WL 1529902, at *8 (S.D. Fla. Apr. 13, 2016). The Settlement here readily meets the standards of fairness, reasonableness, and adequacy under both Rule 23's factors and those previously articulated in Eleventh Circuit decisions.

>  a)    **The Settlement Stems from Good-Faith, Informed, and Arm's Length Negotiations by Plaintiffs and Class Counsel That Have Adequately Represented the Class**

The first two factors identified in the amendments to Rule 23(e)(2) assess whether the Class has been adequately represented and whether the settlement was achieved through arm's length

10

negotiations. These examine "the conduct of the litigation and of the negotiations leading up to the proposed settlement." *See* Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment.

In determining at final approval whether the class has been adequately represented, the advisory committee emphasizes that the focus is on the "actual performance of counsel acting on behalf of the class." *Id.* The information considered includes "the conduct of the litigation and of the negotiations leading up to the proposed settlement," the "nature and amount of discovery . . . [which] may indicate whether counsel negotiating on behalf of the class had an adequate information base," and "the involvement of a neutral or court-affiliated mediator." *Id*. These factors overlap with the Eleventh Circuit's directive to determine whether "fraud or collusion [existed] in arriving at the settlement" and "the stage of proceedings at which the settlement was achieved." *Bennett*, 737 F.2d at 982. Here, given the involvement of a neutral mediator, former United States Magistrate Judge, Edward Infante, and the hard-fought litigation that preceded this Settlement, including extensive and hotly contested discovery and motion practice, there is no doubt that these factors favor final approval.

Even before this Settlement was achieved, Class Counsel's strenuous efforts in representing Plaintiffs and the Class have been emphasized in numerous filings before this Court. (*See, e.g.*, ECF Nos. 435-1 (declaration of Timothy S. Kearns); 485-1 (declaration of Samantha J. Stein); and 533-1 (declaration of Peter Prieto and Michael P. Lehmann).) These filings each summarize the extensive efforts that Class Counsel devoted to this litigation, especially with respect to the contested, voluminous discovery that was required. These extensive and time-consuming efforts resulted in dozens of discovery hearings before Magistrate Judge Louis, ten critically important Rule 30(b)(6) depositions of Defendants, and disputes with Defendants as to the litigation schedule. Class Counsel's vigorous advocacy against significant, sophisticated, and well-prepared opposition readily shows the lack of fraud or collusion underlying the Settlement. *See, e.g., In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1329 n.3 (S.D. Fla. 2001); *In re Motorsports Merch. Antitrust Litig.*, 112 F. Supp. 2d 1329, 1338 (N.D. Ga. 2000) ("This was not a quick settlement, and there is no suggestion of collusion."). The Settlement, including its

significant terms, also stands as further evidence of Plaintiffs' adequacy. *See Tweedie v. Waste Pro of Fla.*, 8:19-cv-1827, 2021 WL 3500844, at *6 (M.D. Fla. May 4, 2021) ("[B]y reaching a class-wide settlement of the claims in this action, Tweedie demonstrated that she is generally adequate to prosecute the action and conduct the proposed litigation.").

The use of a sophisticated mediator experienced in antitrust cases further establishes that the settlement process was at arm's length and not collusive. *See* Fed. R. Civ. P. 23(e)(2)(B) advisory committee's note to 2018 amendment ("[T]he involvement of a neutral . . . in [the parties'] negotiations may bear on whether they were conducted in a manner that would protect and further the class interests."). And because of the extensive discovery conducted, the Parties were well-informed about the facts of the case, the case's strengths and weaknesses, and the risks both sides would face absent the Settlement.[3] The circumstances of the negotiation thus support a finding of fairness. *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 661 (S.D. Fla. 2011) ("*Checking*") ("Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness.").

b)       **The Relief Provided for the Class Is Far More Than Adequate**

The Settlement also satisfies the third factor, namely, whether "the relief provided for the class is adequate" in light of several subfactors:

> (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

Fed. R. Civ. P. 23(e)(2). Each of these subfactors favors final approval of the Settlement.

The first subfactor assesses "whether the possible rewards of continued litigation with its risks and costs are outweighed by the benefits of settlement." *Strube v. Am. Equity Inv. Life Ins.*

---

[3] *See Francisco v. Numismatic Guaranty Corp. of Am.*, No. 06-61677-CIV, 2008 WL 649124, at *11 (S.D. Fla. Jan. 31, 2008) ("Class Counsel had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation" where counsel received responses to interrogatories, document requests, conducted two 30(b)(6) depositions and obtained "thousands" of pages of documentary discovery).

*Co.*, 226 F.R.D. 688, 697-98 (M.D. Fla. 2005). The Settlement averts years of highly complex, time-consuming, expensive litigation against experienced and sophisticated defense counsel. While Plaintiffs are optimistic that they would succeed at trial, that outcome remains uncertain given the well-known risks of antitrust class actions.[4] Moreover, any successful trial recovery would likely be followed by an appeal and considerable delay. Through the Settlement, however, Settlement Class Members both promptly secure substantial financial relief and avoid the risks inherent in continued litigation.

Moreover, the Settlement's creation of a non-reversionary fund is the most effective method for ensuring that the negotiated relief will be distributed to the Class, as none of the $85,000,000 will revert to the Defendants. *See Moreno v. Beacon Roofing Supply, Inc.*, No. 19CV185-GPC(LL), 2020 WL 3960481, at *5 (S.D. Cal. July 13, 2020) (holding that non-reversionary aspect of settlement supported final approval under Rule 23(e)(2)(C)(ii)). Likewise, the proposed *pro rata* distribution to the Class is further evidence that the Settlement is appropriate, and that plan should be approved because it allocates relief in a manner that is "fair, adequate, and reasonable." *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 241 (5th Cir. 1982); *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1328 n.2 (S.D. Fla. 2001). Settlement Class Members who submit a valid claim are entitled to receive payment from the Settlement Fund based on their volume of commerce with Defendants. The payment a Class Member receives will be a *pro rata* distribution based on the Class Member's volume of commerce (based either on Defendants' transaction records or an individual Class Member's transaction records, subject to audit) compared with the volume of commerce of other claimants. After all the claims are processed, JND will promptly distribute cash payments via check to Settlement Class Members. This

---

[4] *See, e.g.*, *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) ('Indeed, the history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal."); *In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d 336, 341 (E.D. Pa. 2007) ("*Auto. Refinishing*") (approving settlements in part because the "antitrust class action is arguably the most complex action to prosecute[;] [t]he legal and factual issues involved are always numerous and uncertain in outcome").

streamlined distribution process is fair, adequate, and reasonable, and often employed in similar cases.[5]

Class Counsel's requested attorneys' fee, which remains subject to this Court's approval, provides further evidence of the fairness, reasonableness, and adequacy of the Settlement. Consistent with the Notice, Class Counsel has sought an award of attorneys' fees amounting to 30% of the Settlement Fund or $25,500,000 and reimbursement of litigation expenses in the amount of $2,636,558.69. Such a proposed fee and cost award is reasonable, falling squarely within the range approved by the Eleventh Circuit, as explained in Plaintiffs' motion for an award of fees and expenses (ECF No. 533), and below. The requested fee is also unopposed, having prompted ***no*** objections from any Class Member. "A low percentage of objections points to the reasonableness of a proposed settlement and supports its approval." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005). Here, the complete absence of any objections or requests for exclusion stands as evidence that the Settlement meets the fair, reasonable, and adequate standard.[6]

### 3.    The Settlement Treats All Class Members Equitably

Lastly, the Settlement "treats class members equitably relative to each other," Fed. R. Civ. P. 23(e)(2)(D). Here, there are no differences between the scope of relief between any Settlement Class Members—no set of Settlement Class Members are singled out for either preferential or disadvantageous treatment. Rather, the Settlement treats all Settlement Class Members equitably,

---

[5] *See, e.g.*, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 14-CV-2058 JST, 2017 WL 2481782, at *5 (N.D. Cal. June 8, 2017) (distribution plan "'fairly treats class members by awarding a pro rata share' to the class members . . ."); *Four in One Co. v. S.K. Foods, L.P.*, 2:08-CV-3017 KJM EFB, 2014 WL 4078232, at *15 (E.D. Cal. Aug. 14, 2014) (approving "plan of allocation providing for a pro rata distribution of the net settlement fund based on verified claimants' volume of qualifying purchases").

[6] The only other agreement among the Parties is a supplement referenced in the Settlement that identifies the threshold percentage of qualifying commerce that must timely opt out of the Settlement for Defendants to have the option to terminate the Settlement. (ECF No. 524-3, ¶ 19.) Although it is a common provision in antitrust settlements, it is irrelevant at this stage, because no one opted out of the Settlement.

distributing settlement proceeds on a *pro rata* basis. In sum, all factors identified by the Eleventh Circuit and Rule 23(e)(2) strongly support concluding that the Settlement is fair, reasonable, and adequate.

      **B.**      **The Court Should Grant Final Certification of the Class**

For settlement purposes, Plaintiffs respectfully request that the Court certify the Class defined above and in the Agreement. "A class may be certified solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue." *Borcea v. Carnival Corp.*, 238 F.R.D. 664, 671 (S.D. Fla. 2006) (internal marks omitted).

As the Court held in its Preliminary Approval Order, the Settlement Class satisfies the applicable requirements of Rule 23(a) and of Rule 23(b)(3). The numerosity requirement is satisfied here because the Settlement Class consists of approximately 800 persons or entities from throughout the United States; joinder of hundreds of such persons is impracticable. *See* Fed. R. Civ. P. 23(a)(1); *Kilgo v. Bowman Trans.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members "from a wide geographical area"). The commonality requirement is also satisfied because there are numerous questions of law and fact stemming from Defendants' alleged course of conduct "whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Indus., Inc*., 568 F.3d 1350, 1355 (11th Cir. 2009) (internal marks omitted). For similar reasons, Plaintiffs' claims are coextensive with those of absent class members, satisfying Rule 23(a)(3)'s typicality requirement. *Williams*, 568 F.3d at 1357 ("The claim of a class representative is typical if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.").

Lastly, Plaintiffs have more than adequately represented the Class. Plaintiffs "share the same interests as absent class members, assert claims stemming from the same event that are the same or substantially similar to the rest of the class, and share the same types of alleged injuries as the rest of the class." *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-md-2800-TWT, 2020 WL 256132, at *5 (N.D. Ga. Mar. 17, 2020). Each Plaintiff has the same incentive to

seek an equitable share of the Settlement Fund as absent class members; there is no divergence between their interests. And Plaintiffs have furthered their shared interests with other Settlement Class Members by selecting well-qualified counsel, who are highly experienced and capable in the field of class-action and antitrust litigation. Class Counsel have litigated scores of such cases to resolution – through both settlement and trial – and are recognized as top authorities in their field. Plaintiffs have prosecuted the action by participating in the discovery process, subjecting themselves to substantial discovery obligations necessary to propel the case forward. Because Plaintiffs have demonstrated that their interests align with those of the Class and they have prosecuted the action to a beneficial resolution, the adequacy factor of Rule 23 has been satisfied.

Certifying the Settlement Class is appropriate under Rule 23(b)(3) because "the common legal and factual issues here predominate over individualized issues, and resolution of the common issues for millions of Class Members in a single, coordinated proceedings is superior to . . . individual lawsuits addressing the same legal and factual issues." *Checking*, 275 F.R.D. at 660. If they were to file their own individual actions, the evidence any given Class Member would use to establish their claims is evidence common to the Class, including the same class-wide evidence of Defendants' alleged agreement to fix, raise, or stabilize salmon prices and wrongful exchange of price-driving competitively sensitive information. Because questions of law and fact are common to the Class and predominate over individual issues, the predominance requirement of Rule 23(b)(3) is satisfied here.

In addition, a class action is the superior means of adjudication because of the large number of potential claims, the desirability for consistency in adjudications of these claims, the limited interest class members would have in controlling the prosecution of claims, and the economic factors that would render individual actions cost-prohibitive. *See In re Health Ins. Innovations Secs. Litig.*, No. 8:17-CV-2186-T-60SPF, 2020 WL 10486665, at *6 (M.D. Fla. Oct. 21, 2020), *report & recommendation adopted*, 2020 WL 10486666 (M.D. Fla. Nov. 19, 2020).

Because Rule 23's requirements are satisfied, the Court should certify the Settlement Class.

**C.      Class Counsel's Fee Request Should Be Granted**

Consistent with Eleventh Circuit precedent, and as indicated in the Court-approved notice disseminated to Class members, Class Counsel respectfully request a fee award of $25,500,000, which represents 30% of the $85,000,000 Settlement Amount. For the reasons set forth below and in more detail in Plaintiffs' motion for fees (ECF No. 533), the requested attorneys' fee award is appropriate, fair, and reasonable—falling squarely within the Eleventh Circuit's guidance—and should be approved.

The Eleventh Circuit instructs courts to consider the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), to determine an appropriate fee award. *See Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1242 (11th Cir. 2011). Those factors are:

> (1) the time and labor required; (2) the difficulty of the issues; (3) the skill required; (4) the preclusion of other employment by the attorney because [they] accepted the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 1242-43 (citing *Johnson*, 488 F.2d at 717-19). Here, all relevant *Johnson* factors support Class Counsel's request.

The "majority of common fund fee awards" in the Eleventh Circuit "fall between 20% to 30% of the fund," *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774-75 (11th Cir.1991), with "[c]ourts nationwide hav[ing] repeatedly awarded fees of 30 percent or higher." *In re Equifax*, 999 F.3d at 1281 (quoting *Checking*, 830 F. Supp. 2d at 1367). Class Counsel's requested fee adheres to these guidelines, *see Checking*, 830 F. Supp. 2d at 1366, and aligns with awards in similar cases. *See*, *e.g.*, *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1297 (11th Cir. 1999) (affirming fee award of 33.33% on settlement of $40 million); *In re JPMorgan Precious Metals Spoofing Litig.*, No. 1:18-cv-10356, ECF No. 114 at 3 (S.D.N.Y. July 7, 2022) (awarding 33 1/3 of $60 million settlement); *In re Disposable Contact Lens Antitrust Litig.*, 3:15-md-02626, ECF No. 1258

17

at 5 (M.D. Fla. June 1, 2021) (awarding 33 1/3% of the anticipated net settlement fund in partial settlement of antitrust class action). The requested fee is also consistent with the results of empirical studies of attorneys' fee awards, particularly those in the Eleventh Circuit, as explained by Professor Brian Fitzpatrick in support of Class Counsel's request. (ECF No. 533-2.) And the requested fee finds additional support from the absence of any objections or opt-outs following the announcement of this settlement or Plaintiffs' motion for an award of attorneys' fees. This unusual lack of opposition underscores the reasonableness of Class Counsel's requested fee.

Since 2019, Class Counsel have worked diligently to propel this case forward and maximize Settlement Class Members' potential recovery. Their efforts required not only strong legal acumen, but also flexibility and ingenuity, going against six sophisticated, foreign corporate Defendants amid the unique hurdles of a global pandemic. Class Counsel met these challenges with expansive teams of attorneys, dedicating thousands of hours to the matter. The effort and labor required to advance this complex litigation was exceptional and required Class Counsel to solve complicated econometric issues, tackle numerous discovery disputes, grapple with complex matters of antitrust law, and manage the review of millions of pages of documents that were often in foreign languages—all while combating the opposition posed by experienced, highly-skilled defense counsel. Yet, even under the pressures of an accelerated case schedule, Class Counsel achieved a significant result for Settlement Class Members.

While the risks of antitrust cases are inherently high, this case presented several types of litigation risks—proving liability, class-wide impact, and damages. In undertaking this risky, complex, and expensive case on a wholly contingent basis, Class Counsel assumed a significant risk of nonpayment or underpayment. *See Waters v. Cook's Pest Control, Inc.*, No. 2:07-cv-00394-LSC, 2012 WL 2923542, at *18 (N.D. Ala. July 17, 2012) (noting that courts consider "expense and time involved in prosecuting [the] litigation on a contingent basis, with no guarantee or high likelihood of recovery" in assessing "undesirability"). Moreover, the thousands of hours required to litigate this case and the relatively brief period in which that work needed to occur significantly limited Class Counsel's ability to be employed on other matters.

Class Counsel undertook this fast-paced, complex litigation requiring significant time, labor, skill, and experience (*Johnson* factors 1, 2, 3, 7 and 9), on a contingent basis (*Johnson* factor 6), at the expense of other opportunities (*Johnson* factor 4), and despite the risks involved (*Johnson* factor 10). Overcoming these risks and the hurdles inherent to this type of litigation, Class Counsel achieved a significant settlement for Settlement Class Members (*Johnson* factor 8), and now requests a fee in line with the customary fee in the community and other awards granted in this Circuit (*Johnson* factors 5 and 12). Accordingly, the Court should grant Class Counsel's requested fee award.

### D.   Class Counsel's Request for Reimbursement of Litigation Expenses Should Be Approved.

Class Counsel's request for reimbursement of $2,636,558.69 in expenses that have been incurred litigating this case and securing the Settlement is also reasonable and should be approved.[7]  As detailed in Plaintiffs' motion for fees and expenses (ECF No. 533 at 17), these necessary expenses consist of expert fees, costs for foreign language document reviewers, costs for document storage and e-discovery consultants, case investigation costs, travel costs, court reporting and transcript costs, mediation fees, domestic and international service of process costs, legal research costs, court fees, document translations, telephone and copier charges, and postage and parcel delivery costs.  Further demonstrating its reasonableness, no class member has objected to this reimbursement request, which is likewise consistent with prevailing law. *See Behrens v. Wometco Enter., Inc.*, 118 F.R.D. 534, 549 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990)

---

[7] As explained above, *see* page 5, *supra*, Plaintiffs initially sought reimbursement of $1,972,768.69 in litigation expenses and reserved the right to seek the remaining amount due to experts, $663,790, if such expenses could not be obtained from the plaintiffs in a related action, who agreed to share certain expert fees. (ECF No. 533 at 17 n.3.) Because Plaintiffs have not secured payment of the expert fees from the plaintiffs in the related action yet, Plaintiffs are seeking reimbursement of the additional $663,790, which will be used to pay the experts' remaining invoices. Lebsock Decl. ¶¶ 2-4. If and when plaintiffs in the related action pay the expert fees into the Escrow Account for this Action, Settlement Class Counsel will move this Court for an order authorizing its distribution in an appropriate and cost-effective manner. *Id.* ¶ 4.

("[P]laintiff's counsel is entitled to be reimbursed from the class fund for the reasonable expenses incurred in this action.").

## IV.     **CONCLUSION**

The $85,000,000 Settlement constitutes an outstanding result by any measure. This is confirmed by the support for the Settlement shown by Settlement Class Members, the absence of any Settlement Class Members requesting exclusion, and the absence of any Objections to the Settlement. The Settlement easily meets the standards of fairness, reasonableness, and adequacy embodied in Rule 23(e)(2). The Class satisfies all the requirements of 23(a) and 23(b)(3).

And Class Counsel's fee and expense request (ECF No. 533) is reasonable and, like the Settlement itself, has received no objection or opposition from any Class member. The fee request is consistent with the *Johnson* and *Camden I* factors, when considering the outstanding result, significant risks, the extremely complex legal and factual issues presented by the action, and the time, effort, and skill that were required to litigate claims of this nature to a satisfactory conclusion. And Class Counsel should be reimbursed for the reasonable litigation expenses that have been incurred.

Plaintiffs therefore respectfully request that, following the Fairness Hearing on September 8, 2022, the Court enter an Order, in accordance with the proposed Order submitted with this motion, that:

1.     Grants final approval to the Settlement;

2.     Certifies the proposed Settlement Class defined in the Settlement pursuant to Rule 23(b)(3) and 23(e) for settlement purposes only; appoints as Class Counsel the law firms of Podhurst Orseck P.A. and Hausfeld LLP; and appoints Euclid Fish Company, Euro USA Inc., Schneider's Fish and Sea Food Corporation, and The Fishing Line LLC as Class Representatives.

3.     Enters final judgment dismissing the Action with prejudice, in accordance with the proposed Order and Final Judgment submitted as an exhibit hereto.

4.     Awards Class Counsel 30% of the Settlement Fund, or $25,500,000, as attorneys' fees, and reimburses Class Counsel for litigation expenses in the amount of $2,636,558.69.

Dated: July 25, 2022

Respectfully submitted,

**PODHURST ORSECK, P.A.**

*/s/ Peter Prieto*
Peter Prieto, FBN 501492
John Gravante, III, FBN 617113
Matthew P. Weinshall, FBN 84783
Alissa Del Riego, FBN 99742
SunTrust International Center
One S.E. 3rd Ave, Suite 2300
Miami, FL 33131
Tel: (305) 358-2800
pprieto@podhurst.com
jgravante@podhurst.com
mweinshall@podhurst.com
adelriego@podhurst.com

**HAUSFELD LLP**
Michael P. Lehmann (pro hac vice)
Christopher L. Lebsock (pro hac vice)
Samantha J. Stein (pro hac vice)
600 Montgomery St. #3200
San Francisco, CA 94111
Tel: (415) 633-1908
mlehmann@hausfeld.com
clebsock@hausfeld.com
sstein@hausfeld.com

**HAUSFELD LLP**
Reena A. Gambhir (pro hac vice)
Timothy S. Kearns (pro hac vice)
Jane Shin (pro hac vice)
888 16th Street, N.W., Suite 300
Washington D.C. 20006
Tel: (202) 540-7200
rgambhir@hausfeld.com
tkearns@hausfeld.com
jshin@hausfeld.com

*Class Counsel*

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that, on July 25, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify the foregoing document is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

By: *<u>/s/ Peter Prieto</u>*
Peter Prieto